**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> vs. <br><br> ALBERTO LAREZ a/k/a Bird, *et al.*, <br><br> Defendant(s). | Case No.: 12-CR-792 YGR <br><br> **ORDER DENYING MOTION FOR TRANSFER TO ALTERNATE DETENTION FACILITY** |

On April 22, 2014, Defendant Alberto Larez filed a Motion for Transfer to Detention Facility under Rules 46(h)(1) and 47 of the Federal Rules of Criminal Procedure and set the motion on the Court's calendar for May 8, 2014, at 2:00 p.m., or as soon as possible thereafter. (Dkt. No. 398 ("Motion").) In summary, Larez submits that he:

> is housed in an AD/SEG unit, in near proximity to informants, gang drop-outs, rejects and sex offenders who by their actions and/or status provoke Mr. Larez. This has created an intolerably hostile housing situation for Mr. Larez. Mr. Larez is currently housed next to an individual who Mr. Larez knows to be an informant in a related NF case. Mr. Larez can see this individual when he comes in and out of his cell. Mr. Larez has characterized his proximity to this individual as "torture."

(Motion at 3:14–20; *see also* Declaration of Counsel in Support of Motion for Transfer at ¶¶ 2, 3.) Larez acknowledges that he is "classified as a threat to others" and that the "government has turned over a video and other materials purporting to depict Mr. Larez severely beating another

inmate."[1]  He requests that he be transferred to a facility that contains a Segregated Housing Unit ("SHU").  (Motion at 3:22–4:2.)  In bringing this motion, Larez relied principally on the United States Supreme Court opinion, *Bell v. Wolfish*, 441 U.S. 520 (1979).

The Government filed an Opposition to Defendant's Motion for Transfer to Alternate Detention Facility.  (Dkt. No. 400.)  Therein, the Government provided the Court with the statutory and administrative authority it possesses "to determine where to house its prisoners." (*Id*. at 2.)  The Government further proffered that (i) Larez was disciplined for hoarding and concealing 28 allergy pills inside a Speed Stick deodorant container (*id*. at 3), and (ii) the jail is in compliance with the Court's July 2, 2013 Order (*id*. at 4).

Larez filed a Reply Brief but did not address or refute any of the cited authorities, implicitly conceding their applicability.  (Dkt. No. 401.)  Rather, he again relied on *Bell* to support his position.  In addition, Larez did not refute the truth of the Government's proffer.

Notwithstanding the cited controlling authority supporting the Government's position, the Court has reviewed *Bell* and finds that Larez's motion lacks merit on the proffer made.  In *Bell*, the Supreme Court reversed a Circuit Court after it affirmed that certain conditions of confinement and practices at the Metropolitan Correctional Center in New York City presented constitutional concerns.  As a preliminary matter, none of the conditions or practices at issue in *Bell* concerned a transfer, but the opinion does provide a road map for district judges in evaluating conditions of confinement.[2]  The salient points of the opinion are quoted here:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process

---

[1] The Court notes that it has received a copy of the video referenced, as well as a video purporting to show defendant Henry Cervantes in a holding cell with another inmate who similarly had to be removed after suffering physical blows from Cervantes.

[2] The conditions and practices at issue concerned the number of inmates to each individual room, a "publisher-only" rule for books, the practice of conducting body-cavity searches after contact visits, the prohibition against receipt of packages of food and personal items from outside the institution, and the requirement that detainees remain outside their rooms during routine searches of the rooms by officials.  *See Bell*, 441 U.S. at 530.

> of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee [or otherwise violate the Constitution]. *Bell*, 441 U.S. at 536–37.
>
> \*\*\*
>
> Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. *Id.* at 537.
>
> \*\*\*
>
> Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment." *Id.*
>
> \*\*\*
>
> A court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *Id.* at 538.
>
> \*\*\*
>
> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. *Id*. at 539.

To analyze the issues, the Supreme Court then expounded on various grounds which may inform the decision:

3

> First, we have held that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *Id.* at 545.
>
> ***
>
> [Second,] simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. *Id.* at 545–46.
>
> ***
>
> Third, maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. *Id.* at 546.
>
> ***
>
> [And, fourth, p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Id.* at 547.

In its conclusion, the Supreme Court explicitly warned judges against micro-managing except where necessary. *Id.* at 562–63.

With respect to the issues raised here, the Court does not find that the complaints raised warrant the relief requested. The Court first notes that the factual proffers on both sides are made on information and belief and not supported with declarations from individuals with personal knowledge. Nevertheless the key proffers are not significantly challenged.

Given the security issues raised with Larez's detention, his placement in the North County Jail's AD/SEG Unit does not offend the Constitution. He is housed individually and released from his cell individually. He and others are physically secure and safe. The fact that Larez may not like others in the pod is of no consequence. The fact that the various defendants may be of a different classification similarly is speculative, but even if true, has not been shown to violate the Constitution. That Larez may have to exercise emotional patience and restraint does not constitute torture under any reasonable analysis. Further, as proffered, no other facility in the

4

Northern District of California can house Larez.  Nor is there one with a SHU.  In addition, the Court is cognizant of Larez's apparent need to have access to his defense team, underscoring the appropriateness of a local facility.  Thus, balancing the myriad and competing interests as required by the Supreme Court, the Court finds that the detention conditions provided for Larez are adequate, reasonable, and do not form a basis to grant his motion for a transfer.

**ACCORDINGLY, THE COURT ORDERS AS FOLLOWS:**

1. Larez's Motion is **DENIED**.  The hearing scheduled for May 8, 2014 is vacated.  Docket 398 shall be terminated.
2. All court appearances before this Court and Magistrate Judge Cousins shall be scheduled in a time and manner to avoid interaction with other inmates to ensure security for all defendants whether or not a party to this action and to eliminate and/or reduce any goading as referenced in Larez's motion.  Magistrate Judge Cousins shall conduct all future proceedings in the Oakland Federal Courthouse to facilitate this Order.

**IT IS SO ORDERED.**

Dated: May 7, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**