1
2
3
4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7   **UNITED STATES OF AMERICA,**              Case No.  12-cr-00792-YGR

        Plaintiff,                            **OMNIBUS ORDER RE: PRETRIAL MOTIONS**
8
                                              Re: Dkt. Nos. 555-74, 576-78, 591
9        v.

10  **HENRY CERVANTES, ET AL.,**

        Defendant.
11

12          On June 19, 2015, the Court held a hearing to address twenty-three pretrial motions, filed

13  on behalf of three defendants, namely, Henry Cervantes ("H. Cervantes"), Jaime Cervantes ("J.

14  Cervantes"), and Alberto Larez ("Larez").  In advance of the hearing, the parties filed a joint

15  statement (Dkt. No. 591) addressing the status of agreement on the issues presented in the pending

16  motions.  Sixteen motions were opposed.  Two were unopposed, but required ruling from the

17  Court regarding security-related procedures.  Four were resolved or set to be resolved by

18  stipulation.  The three defendants joined in certain motions filed by the others.  (*See* Dkt. Nos.

19  579, 582, 585.)

20          The motions were heard on June 19, 2015.  Having carefully considered the papers

21  submitted, the record in this case, and the arguments of counsel, and good cause shown, the Court

22  makes the following rulings:

23          A.  Defendants' Second Motion for a Bill of Particulars (Dkt. No. 558) is **DENIED** as to

24              Counts 5 and 6, and **GRANTED** as to Count 27.

25          B.  Defendants' Motion for Disclosure of Cooperating Sources (Dkt. No. 559) is

26              **DENIED**.

27          C.  Defendants' Motion for Order Requiring a Rule 404(b) Notice (Dkt. No. 561) is

28              **DENIED** as premature.

<div style="margin-left: 2em;">

D. Defendants' Motion to Preclude Use of Co-Defendant Plea Agreements as Substantive Evidence (Dkt. No. 562) is **GRANTED** as framed herein.

E. Defendants H. Cervantes' and Larez's Motion to Preclude Evidence from Prior RICO Case (Dkt. No. 563) is **GRANTED** as framed herein.

F. Defendants' Motion to Dismiss Indictment for Pre-Indictment Delay (Dkt. No. 565) is **DENIED**.

G. Defendants' Motion to Dismiss Count 1 for Failure to Allege RICO Elements (Dkt. No. 566) is **DENIED**.

H. Defendants' Motion to Dismiss Counts 1, 2, and 3 (Dkt. No. 567) is **DENIED**.

I. Defendants' Motions for Disclosure of Evidence (Dkt. Nos. 570, 571, 578) is **GRANTED** as framed herein.  The Court **DENIES WITHOUT PREJUDICE** that portions of the motions related to expert testimony, which is more specifically briefed in defendants' motions related to expert disclosures and admissibility (*see* Dkt. Nos. 645, 659, 664).

J. Defendants' Motions Challenging Counts as Multiplicitous (Dkt. Nos. 564, 568, 576) are **DENIED WITHOUT PREJUDICE** and defendants may raise these issues again prior to sentencing, if applicable.

K. Defendants' Motions for Severance (Dkt. Nos. 573, 574, 577) are **DENIED**.

L. Defendant Larez's Motion for Joint Meetings (Dkt. No. 555) is **GRANTED** as framed herein.

M. Defendants' Motion to Appear Without Shackles (Dkt. No. 556) is **DENIED**.

</div>

## I.  SECOND SUPERSEDING INDICTMENT

On January 8, 2013, a federal grand jury returned a Superseding Indictment against eleven defendants charging a total of twenty-seven counts.  (Dkt. No. 58.)  The Superseding Indictment stems from the alleged affairs of a racketeering enterprise known as Nuestra Familia ("NF"), which is said to operate inside and outside of prison walls.  Count 1 charged eleven defendants

United States District Court
Northern District of California

2

1   with a violation of 18 U.S.C. section 1962(d).[1]   The remaining counts alleged a pattern of

2   racketeering consisting of various state and federal offenses, including murder, robbery, narcotics

3   trafficking, extortion affecting interstate commerce, witness tampering and obstruction of justice,

4   and conspiracy to commit the same, among others detailed therein.  Among these, Count 2 alleged

5   a violation of Title 18 U.S.C. section 1959, commonly known as a violent crime in aid of

6   racketeering or "VICAR," sub-section (a)(5).

7        On January 7, 2015, the government filed a Second Superseding Indictment.  (Dkt. No.

8   355 ("SSI").)  The SSI largely mirrors the Superseding Indictment, except that it: (1) accuses only

9   a subset of the earlier listed defendants due to intervening plea agreements; (2) drops certain

10  charges that had only been asserted against those defendants who had entered pleas (Counts 17

11  and 25-27 in the Superseding Indictment); and (3) adds Counts 24 (Murder in Aid of Racketeering

12  of Victim 5, against Larez), 25 (Use/Possession of Firearm in Furtherance of Crime of Violence,

13  against Larez), 26 (Use of a Firearm in Furtherance of Crime of Violence Causing Death of

14  Victim 5, against Larez), and 27 (Drug Conspiracy, against H. Cervantes and Larez).

15  **II.   OPPOSED MOTIONS**

16     **A.   Second Motion for Bill of Particulars (Dkt. No. 558)**

17        Defendants[2] move for a bill of particulars sufficient to give them notice of the charges

18  against them, to prepare an adequate defense, and to assert their Fifth Amendment rights against

19  double jeopardy.  Specifically, defendants seek additional notice with respect to: (1) Counts 5 and

20  6 for VICAR murder on the element of a purpose "to gain entrance to, or to maintain, or to

21  increase his position in the enterprise;" and (2) Count 27 for conspiracy to distribute 500 grams or

22  more of methamphetamine during the period from January 2011 to August 2012.

23        As the Court previously outlined in an order denying defendants' prior request for a bill of

24

25      _____

26      [1] Section 1962 is commonly known as the Racketeer Influenced and Corrupt Organizations
    Act, or "RICO."  Sub-section (d) specifically prohibits any person from conspiring to violate
    RICO.  *See* 18 U.S.C. § 1962(d).

27      [2] H. Cervantes filed the motion and was joined by J. Cervantes (Dkt. No. 579) and Larez
    (Dkt. No. 585).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

particulars (Dkt. No. 180), Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars." A motion for a bill of particulars is appropriate where a defendant requires clarification to prepare a defense. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). Such motions are within a trial court's discretion and are "designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *Id.*; *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). In deciding whether a bill of particulars is warranted, the district court is vested with "very broad discretion in ruling upon requests for such bills." *Will v. United States*, 389 U.S. 90, 99 (1967).

The Ninth Circuit has instructed that, to decide whether to order a bill of particulars, "a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054. "A defendant is not entitled to know all the [e]vidence the government intends to produce." *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979). The purposes of a bill are served where the indictment itself or other disclosures "provide[ ] sufficient details of the charges," and if the government "provides full discovery to the defense." *Mitchell*, 744 F.2d at 705. The government is not required in conspiracy cases to "disclose even all the overt acts in furtherance of the conspiracy." *Giese*, 597 F.2d. at 1180 (citing *United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976)); *see also United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975).

### 1.   Counts 5 and 6 (VICAR Murders)

In the government's prior brief in opposition to defendants' first motion for bill of particulars, the government provided a summary of the evidence it intends to present as to the VICAR murder counts. (*See* Dkt. No. 259.) In that opposition, the government stated that defendant H. Cervantes "conducted his affairs in accordance with the *Nuestra Familia* (NF) 'Fourteen Bonds'" and that he "killed the victims because of what he believed they did to his sister, a family member of a NF carnal." (*Id.* at 6.) The government disclosed that "it is in possession of a written statement by a cooperating witness that one of the defendant's purposes in

4

committing the murders at issue was to maintain his stature within *Nuestra Familia*." (*Id.* at 7.) In addition, the government stated that it would rely on:

> 1.  expert testimony on the "Fourteen Bonds;"
> 2.  multiple cooperating witnesses' testimony about the prevalence of the "Fourteen Bonds" and Defendant H. Cervantes' adherence thereto;
> 3.  evidence that, immediately after committing the murders, Defendant H. Cervantes turned to fellow NF members to clean up the crime scene in order to send a message to other NF members that he took his leadership role within NF seriously and those who did not respect him or his family members would be punished.

(*Id.*)

The Court finds that the above disclosures of the contours of the evidence the government intends to offer are sufficient to provide defendant H. Cervantes notice of the charges against him, to prepare an adequate defense, and to assert his Fifth Amendment right against double jeopardy. While the SSI does not provide the level of detail disclosed elsewhere, it need not.  The government's disclosures in the prior opposition brief provide enough specific information to give defendant H. Cervantes notice to allow him to prepare his defense.  Although the charge requires proof that defendant's purpose in committing the crime of violence "was to gain entrance to, or to maintain, or to increase his position in the enterprise," the government's statements are sufficient to put defendant H. Cervantes on notice of the government's theory on that element.  *See United States v. Banks*, 506 F.3d 756, 761, 766 (9th Cir. 2007) *amended,* 514 F.3d 959 (9th Cir. 2008) (requiring proof that "one of the defendant's general purposes or dominant purposes was to enhance his status or that the violent act was committed 'as an integral aspect' of gang membership" is consistent with the VICAR statute's scope).  The motion for a bill of particulars as to Counts 5 and 6 is therefore **DENIED**.

### 2.  Count 27 (Conspiracy to Distribute Methamphetamine)

Defendants also move for a bill of particulars as to Count 27.  Count 27 of the SSI alleges that H. Cervantes, Larez, and Karl Gray conspired to distribute 500 grams or more of methamphetamine beginning in January 2011 until at least August 2012.  Defendant H. Cervantes states that he was given verbal notice that the government intends to show his participation through a phone conversation between himself and another person not named in the indictment.

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant H. Cervantes argues that discovery in the case so far has indicated that other defendants charged in the conspiracy count were involved in various specific drug deals.  Thus, defendant H. Cervantes contends that the government should be required to specify which of a "number of transactions that could be said to involve some evidence of drug transactions and conspiratorial activity" (Dkt. No. 558 at 15) are the subject of Count 27.

The Court agrees that a further level of specificity is required and notes that the bill of particulars need not account for all of the government's evidence.  As stated in the SSI, and reiterated by the government at the hearing on this motion, the conspiracy alleged in Count 27 involves multiple deliveries adding up to 500 grams, as to which the government contends there are several witnesses.  However, the government could not confirm even a ballpark figure for the number of transactions at issue.  While the Court acknowledges that the government is not required in conspiracy cases to "disclose even all the overt acts in furtherance of the conspiracy," and certainly not the "'when where and how' of every act in furtherance of the conspiracy," *Giese*, 597 F.2d. at 1180-81, the defendants should be on notice of the transactions which, in total, add up to 500 grams.

Accordingly, the motion as to Count 27 is **GRANTED**.  The government is ordered to disclose, in a bill of particulars, sufficient information to identify the transactions from January 2011 and continuing to at least on or about August 2012 for which defendants are being prosecuted with respect to Count 27.  The bill of particulars shall be filed by no later than **August 24, 2015**.

### B. Motion for Disclosure of Cooperating Sources (Dkt. No. 559)

Defendants[3] move for disclosure of specified and unspecified informants and cooperating sources and witnesses and related information.  (Dkt. No. 559.)  As defendants acknowledge, the parties previously negotiated and, upon review and good cause showing, the Court ordered deadlines for the government to provide all non-*Jencks Brady* information (with exceptions) by August 21, 2015, and unredacted witness/victim names and a final witness list by October 2, 2015.

---

[3] *See* footnote 2, *supra*.

(Dkt. Nos. 461, 545.)  Those exceptions are as follows:

> 1. Materials addressing the individuals specified in the Government's *ex parte* submission shall be produced in accordance with the final protective order.[4]
>
> 2. All non-Jencks *Brady* information relating to any specific government civilian witness shall be disclosed to defense counsel **7 CALENDAR DAYS** before trial.  All non-Jencks *Brady* information for witnesses the Government eventually elects not to call must be disclosed as soon as the Government makes the election and, in all events, at least **7 CALENDAR DAYS** before the Government rests its case-in-chief.

(Dkt. Nos. 461, 545.)  The defense also acknowledges that it has sought cooperator information previously and that those requests were likewise denied.  Defendants nonetheless reassert their motion for disclosure of the names of all informants, sources or cooperators "together with all narrative statements, descriptions, and information that these persons have provided."  (Dkt. No. 559 at 4.)

Defendants' overbroad request is **DENIED**, again.  No reason has been provided to advance the Court's prior scheduling orders.  The Court will entertain a motion for sanctions if the defense files another groundless motion in this regard.

In addition, defendants seek disclosure of two particular persons—Shane Bowman and Sade Douglas—who they contend are potential witnesses, based on information from police reports and trial testimony in another case.  As to both witnesses, the defense argues that their recorded statements should be turned over sooner than the current deadlines because the information already disclosed indicates that both witnesses may have information particularly pertinent to H. Cervantes' intended mental condition defense.  Further, defendants contend that deferring release of that information to the defense expert could result in prejudice to defendants or needless delay.  Thus, defendants argue that, in the absence of a continuing need to withhold discovery about witnesses whose identities are known, the Court should allow discovery

---

[4] The only protective order was issued by Magistrate Judge Cousins on December 6, 2013 at Docket Number 340.

procedures that will minimize last minute issues in the preparation of their defense.

Defendants have not met their burden to show that the government should be compelled to disclose whether Bowman and Douglas will be witnesses and to turn over any statements at this juncture.  The Court acknowledges the basic principle that where disclosure of an individual's identity or the contents of his or her statement is relevant and helpful to the defense or is essential to a fair determination of the case, the shield on an informer's identity must give way.  *Roviaro v. United States*, 353 U.S. 53, 61 (1957).  A court must balance the public's interest in protecting the flow of information about informants against a defendant's right to prepare a defense.  *Id*. at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  *Id.*  The Ninth Circuit has held that, to be entitled to the names of possible witnesses, a defendant must make a specific showing that discovery is material to the preparation of the defense and reasonable in light of the circumstances.  *See United States v. Richter,* 488 F.2d 170, 175 (9th Cir. 1973).

While defendants have provided a more particularized reason as to why they want to know if these two individuals are on the government's witness list, defendants still have not made a specific showing that discovery of their identity as witnesses and statements would be material to the preparation of their defense generally or defendant H. Cervantes' mental condition defense specifically.  At the hearing, the defense argued that Douglas was with H. Cervantes on the day of the alleged murders, and that Bowman had contact with H. Cervantes at the time of the alleged murders.  H. Cervantes then assumes that information from these individuals may assist his expert with his mental health defense.  For example, H. Cervantes has since filed a Notice of Intent to Introduce Expert Evidence Related to a Mental Condition Defense Bearing on the Issue of Guilt (Dkt. No. 652)[5] and indicates therein that any report from the expert will not be "full" since it relies "in part on the breadth of information provided by witnesses."

While this is more of a nexus than is offered in the motion itself, the defense still must

_____

[5] The Court notes that neither J. Cervantes nor Larez assert this defense.

United States District Court
Northern District of California

show that the disclosure and discovery would be material to preparation of this defense.  On the current state of the record, the most that can be surmised is that the disclosure *may* be *relevant*. Relevance and materiality are distinct.  Even assuming the defense has accurately identified two possible cooperators, it then gives short-shrift to safety concerns previously raised by the government.  Given the state of the record, and having re-reviewed the *ex parte* submissions on this issue, the Court is not persuaded that the safety concerns previously raised have been alleviated simply because the defense has more reason to believe the two identified persons might be called by the government to testify.  That said, after the defense makes its Rule 16 disclosures on October 2, 2015, it may file its report with the Court and request the Court conduct an *in camera* review of any cooperator evidence to determine whether it may be material to the expert opinion.  With a more fulsome record, the Court can then reevaluate whether any disclosure deadlines should be advanced.

The defense also argues more generally that the Court should set a firm deadline by which the government should provide all cooperator-related discovery, with the exception of real *Jencks* material, and should set the *Jencks* disclosure as early as possible, given the number of cooperators in this case.  Deadlines for non-*Jencks Brady* material have been set in this case for August 21, 2015.  The defense has provided the Court with no basis to assume that the government will not comply therewith.  Nor has the defense identified what it means by the phrase "as early as possible."

Therefore, the Court **ORDERS** defendants to file a joint statement by **August 7, 2015** indicating when *Jencks* disclosures have occurred in other similar cases tried in this District. Thereafter, the parties shall meet and confer regarding an appropriate deadline here and shall file a joint statement regarding the same by **August 24, 2015**.

The motion for Disclosure is otherwise **DENIED**.

### C. Motion for Order Requiring a Rule 404(b) Notice (Dkt. No. 561)

Defendants[6] move for the timely disclosure of Federal Rule of Evidence 404(b) evidence,

---

[6] H. Cervantes filed the motion, joined by J. Cervantes (Dkt. No. 579) and Larez (Dkt. No. 585).

United States District Court
Northern District of California

1  but in no event less than 90 days before trial (or October 6, 2015).  (Dkt. No. 561.)  At its core, the

2  motion raises a possible disagreement over whether certain evidence should be classified and

3  considered under Rule 404(b) (the defendants' current perspective) or whether it is substantive

4  evidence of the underlying conspiracy charges (the government's current perspective).  At the

5  Court's hearing on the motion, the government requested additional time to review the specifics of

6  the issue and update the Court.  As an example, the defense refers to the government's notice

7  regarding a 2008 prison riot incident, which the government intends to use in its case-in-chief.

8  (Dkt. No. 257.)  As of the date of this Order, the government has not filed any supplemental status

9  report.

10        Pursuant to this Court's prior order and the parties' agreement, Rule 404(b) disclosures are

11  due by August 21, 2015.  (Dkt. No. 461 at 3:5-11, revised at Dkt. No. 545 at 2.)  Pursuant thereto,

12  the government is required to comply fully with all requirements of Local Rule 16-1(c).  (*Id*. at

13  3:6-11.)  That Order essentially reiterated subsections (3) and (4) of said rule:

> The Government must disclose a summary of: (i) any evidence of
> other crimes, wrongs, or acts that it intends to offer under Federal
> Rule of Evidence 404(b), and which is supported by documentary
> evidence or witness statements, and (ii) any coconspirator's
> statement the Government intends to offer under Federal Rule of
> Evidence 801(d)(2)(E). These disclosures must be set forth in
> sufficient detail that the Court may rule on the admissibility of the
> statement.

19  (*Id*. at 3.)  In addition, the government's final witness and exhibit lists are due on October 2, 2015.

20  Thus, the evidence upon which the substantive claims will be based is due at least 90 days before

21  trial, which is within the scope of the relief requested.

22        Defendants acknowledge that the issue is one of case management.  The main authority on

23  which they rely is not particularly apt, as the Rule 404(b) discussion therein did not relate to

24  conspiracy charges.  *See United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (*per

25  curiam*).  The Court is now aware of the potential for disagreement and will address the issues, to

26  the extent any manifest, at subsequent trial readiness conferences.  In this regard, by **August 24,**

27  **2015**, the government shall file an updated status report regarding the nature of the disclosures

28  made to the defense.  However, as the government's trial evidence is due by October 2, 2015, the

10

issue may become moot.  Accordingly, the motion is **DENIED** as premature.

### D. Motion to Preclude Use of Codefendant Plea Agreements as Substantive Evidence (Dkt. No. 562)

Defendants[7] move the Court for an order that no substantive evidence of guilt will derive from codefendants' plea agreements.  (Dkt. No. 562.)  They contend that Ninth Circuit law prohibits the use of plea agreements for the purpose of providing substantive evidence of guilt. The government does not disagree that Ninth Circuit law places some limits on the use of guilty pleas.

Generally, codefendants' guilty pleas may not be offered as substantive evidence of the guilt of those on trial.  *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) (citing *Baker v. United States*, 393 F.2d 604, 914 (9th Cir. 1968)).  Evidence of guilty pleas may be used, however: (1) when there is a "permissible purpose such as establishing witness credibility," and (2) if the trial court's jury instructions "adequately explain to the jury the purpose for which the evidence could be used."  *Id*. at 1005.  In *Halbert*, the Ninth Circuit held the first prong satisfied where the prosecutor "carefully limited" his questions about the guilty pleas, "did no more than elicit the fact that guilty pleas were entered," and the inquiry was "clearly relevant as evidence bearing on the witness' credibility."  *Id*.

One way of establishing witness credibility is by giving the jury a "total connection" view of the witness's involvement.  *Id*.

> [T]he trier of fact should know the witness' total connection to the defendant or to the event; such information may not have been learned from a reading of the indictment or in the opening statements of counsel.  Thus, . . . a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant.  The fact a witness has formally admitted personal responsibility enhances the circumstances adding up to that witness' believability.

*Id*.  Therefore, disclosure of the extent to which a witness was involved in the accused conduct, and thus obtained "firsthand knowledge" of the events at issue, may also support a permissible

---

[7] *See* footnote 6, *supra*.

purpose of establishing the witness's credibility or "believability."  However, a line of questioning which instead aims to implicate the defendant as guilty merely because his purported co-conspirator pled guilty is impermissible.

Here, the government contends that the plea agreements should be admitted because they "illustrate the witness's connections with the affiliated members."  (Dkt. No. 609 at 3.)  As noted, a question may be legitimate where the "purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant."  *Halbert*, 640 F.2d at 1005.  Nevertheless, illustrating a witness's "connections with affiliated members" carries with it the possibility of transferring guilt from the former codefendant to the defendant on trial.  Thus, the Court cautions the government to tailor carefully its questioning regarding guilty pleas, such that they are used exclusively for proper purposes.  To the extent the motion seeks to ensure that "limitations will be placed on the government's ability to use guilty pleas as any part of the government's case-in-chief, except for permissible purposes," the motion is **GRANTED**.  Defendants may object at trial should the government seek to introduce such evidence impermissibly.  Moreover, either party may propose appropriate jury instructions to address such evidence, should it be introduced.

### E. Motion to Preclude Evidence from Prior RICO Case (Dkt. No. 563)

Defendants H. Cervantes and Larez[8] move to preclude the introduction at trial of evidence relating to any alleged RICO conspiracy or related activity which predate their 2004 guilty pleas in an earlier RICO case, *United States v. Rubalcaba, et al.*, Case No. 00-CR-654-CRB ("*Rubalcaba*").  (Dkt. No. 563.)  They argue that introduction of such evidence would violate the Fifth Amendment's Due Process and Double Jeopardy Clauses.  (*Id*. at 2.)  Specifically, they contend they should not be "subject to trial on matters that were necessarily encompassed as a result of the [earlier] prosecution" resulting in their guilty pleas.  (*Id*.)  The government opposes the motion.  (Dkt. No. 603.)

---

[8] H. Cervantes filed the motion and Larez joined (Dkt. No. 585).  While J. Cervantes also initially joined in the motion (Dkt. No. 579), he withdrew the joinder on the record at the hearing in light of the fact that he was not a defendant in the earlier case that is the subject of this motion, and therefore does not share the other defendants' double jeopardy concerns.

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants argue that the *Rubalcaba* indictment and the SSI both "set forth the same history of the Nuestra Familia and the same general contours of the racketeering conspiracy as the conspiracy charged here," but the "charged overt acts are different, as are persons involved in the conspiracy." (Dkt. No. 622.)  They argue that using any evidence from prior to the 2004 guilty pleas would violate double jeopardy.  They also point to the Court's July 9, 2013 Order, which denied defendant Larez's motion to dismiss but noted "[t]he Government is limited to proof of alleged conduct from a starting date of on or about December 2003." (Dkt. No. 180.)  That order was issued in response to the government's concession, in opposing that motion, that "[a]bsent a Second Superseding Indictment that somehow expands or changes the date, the government intends to prove evidence of the defendants' conduct from on or about December 2003 onward." (Dkt. No. 136 at 21 (noting, however, that it intended to demonstrate defendant Gray's involvement starting in late 2003 while he was in custody).)

The government has since retreated from its earlier assurances.  First, in a brief filed in September 2013 (*before* the SSI was filed in January 2014) the government noted it "absolutely intends to introduce evidence demonstrating that the defendant joined Nuestra Familia in the 1990's and that Nuestra Familia existed well before the year 2003[, including] witnesses, documents, and other evidence from well before the year 2003, all of which will prove that Nuestra Familia existed as far back as the 1960's and that the defendant joined, participated in, and was a member or associate of that gang through the 1990's." (Dkt. No. 259 at 2-3.)  Then, in opposing the instant motion, the government similarly asserted that it "will rely on witnesses, documents, and other evidence from well before 2003, proving that *Nuestra Familia* existed as far back as the 1960s [and that] Defendants joined, participated in, and were members or associates of *Nuestra Familia* as early as the 1990s." (Dkt. No. 603 at 6.)

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395-96 (1995).  Jeopardy can attach upon the court's acceptance of

13

a plea agreement.  *United States v. Smith*, 912 F.2d 322, 324 (9th Cir. 1990).

"The protections of the Double Jeopardy Clause have been understood, among other things, as protections against multiple prosecutions for the same offense."  *United States v. Blount*, 34 F.3d 865, 867 (9th Cir. 1994) ("Double jeopardy thus is not generally implicated in situations where a second trial will not result.").  In determining whether two charges are the "same offense" triggering double jeopardy, or are actually two separate offenses, courts use the definition set forth in *Blockburger v. United States*:  "the test to be applied . . . is whether each provision requires proof of a fact which the other does not."  284 U.S. 299, 304 (1932).  "Where each offense requires proof of at least one unique element, there are two offenses, but where all the elements of one crime are included in the definition of another crime, the two charges represent the 'same offense' under the Double Jeopardy Clause."  *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004).  Conversely, double jeopardy does not protect against prosecution for two different offenses.  *See Custer v. Hill*, 378 F.3d 968, 972-73 (9th Cir. 2004) (dismissal of case for one act of sodomy did not bar prosecution for other acts of sodomy against same victim on earlier dates that were not part of a single criminal episode; state court had rejected argument that time was not a material element of a sodomy charge under state law).  "Well-settled Supreme Court precedent provides that a criminal defendant may not be retried for a crime following an acquittal or conviction on a lesser included or greater inclusive offense."  *Wilson*, 355 F.3d at 1154.

A prosecution violates the Double Jeopardy Clause if the government divides a single conspiracy into multiple prosecutions.  *See United States v. Elgersma*, 979 F.2d 750, 754 (9th Cir. 1992).  The Court considers five factors to determine whether two conspiracy counts charge the same offense and put the defendant twice in jeopardy: "(1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as coconspirators; (4) the overt acts alleged to have been committed; and (5) the statutes alleged to have been violated."  *United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997) (citing *United States v. Guzman*, 852 F.2d 1117, 1120 (9th Cir. 1988)); *see, e.g.*, *United States v. Montgomery*, 150 F.3d 983, 990-91 (9th Cir. 1998) (applying the *Stoddard* test and concluding that separate counts of conspiracy to manufacture methamphetamine and

United States District Court
Northern District of California

1    conspiracy to distribute methamphetamine under 21 U.S.C. section 846 do not violate the Double

2    Jeopardy Clause).  The Court addresses each factor in turn.

3           First, with respect to the time periods, the Third Superseding Indictment in *Rubalcaba* set

4    forth the history of NF and alleged the commission of overt acts "[f]rom in or about and between

5    1981 and June 2001, both dates being approximate and inclusive."  *Rubalcaba*, Dkt. No. 152.  In

6    his plea agreement dated September 27, 2004, H. Cervantes agreed:

> *that at times charged in Count 1* of the Third Superseding
> Indictment, and specifically during April and May 2001, I was a
> member of the Nuestra Familia criminal enterprise.  I agreed that
> some members of the NF criminal enterprise would commit two or
> more racketeering acts in furtherance of the conspiracy including
> drug dealing and other illicit means by which NF members earned
> money and supported the organization.

*Rubalcaba*, Dkt. No. 1514 at 5:27-6:5 (emphasis supplied).  Larez's plea agreement contained the

same language, less the specific time reference.  *Rubalcaba*, Dkt. No. 1517 at 5:27-6:5.[9]

           Here, the government again alleges a similar history of NF (SSI ¶¶ 1-11) but the overt acts

alleged, insofar as specific dates are mentioned, are said to have occurred much later, with specific

references to events in 2011 and 2012.  The SSI also describes accused conduct "[b]eginning on a

date unknown to the Grand Jury but since at least December 2003 and continuing up through and

including the present."  (*See, e.g.*, SSI ¶ 17.)  To the extent the SSI is read as wholly open-ended

as to the starting date, it might reach back to the conduct which was the subject of the defendants'

prior plea agreements—and therefore present double jeopardy concerns.

           Second, as to the places where the alleged conspiracies occurred, the extent of any overlap

is not readily apparent on the face of the indictments other than their occurring at a minimum in

the Northern District of California.  This factor is not dispositive to the Court's analysis.

           Third, with respect to the persons charged, H. Cervantes and Larez were both charged in

*Rubalcaba* (among twenty-two codefendants) and are both charged here (among nine new

codefendants).

---

        [9] The Court notes that each defendant also entered his plea on the date of the agreement.
*Rubalcaba*, Dkt. Nos. 1523, 1525.

United States District Court
Northern District of California

United States District Court
Northern District of California

Fourth, with respect to the overt acts alleged, defendants H. Cervantes and Larez previously admitted that "during [their] membership with the NF, members and associates of the NF enterprise committed numerous drug deals through and on behalf of the NF." *Rubalcaba*, Dkt. Nos. 1514 at 6:6-7, 1517 at 6:6-7.  H. Cervantes admitted additionally that "[p]ortions of the proceeds from [the] drug deals were sent to various incarcerated NF members including [him]self, pursuant to NF rules." *Rubalcaba*, Dkt. No. 1514 at 6.  Both defendants confirmed their participation in two more specific overt acts: namely sales of methamphetamine to government informants, one, from Armando Heredia on April 22, 2001 and, two, from Robert Rose on May 14, 2001.  *Rubalcaba*, Dkt. Nos. 1514 at 6, 1517 at 6.

Finally, both indictments allege violations of 18 U.S.C. 1962(d) against both defendants, albeit with different overt acts.  Similarly, for H. Cervantes, both indictments allege violations of 18 U.S.C. sections 1959(a)(5) and (a)(1), albeit with different victims.  Otherwise, the remaining allegations do not overlap.

Comparing the indictments, there is commonality in terms of the historical nature of NF. Notably, in both of these 2004 plea agreements, the "government agree[d] not to file or seek any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned Third Superseding Indictment." *Rubalcaba*, Dkt. Nos. 1514 at 9:7-10, 1517 at 9:4-6.  The context of the first indictment reasonably includes those actions relative to the historical past but logically could not subsume the future.

Given the circumstances, the Court agrees with the defense that double jeopardy is implicated with respect to the racketeering conspiracy connected to the defendants' membership in NF "[f]rom in or about and between 1981 and June 2001."  Thus, the government "must be limited in bracketing the evidence that it will seek to introduce in this case."  (Dkt. No. 563 at 7.) Accordingly, in light of those concerns and the government's prior agreement, the Court **GRANTS** the motion and limits evidence to events and circumstances subsequent to September 27, 2004. To the extent the structure or purpose of NF continued to exist post-September 2004 in a manner similar to that of pre-September 2004, evidence from the later period is not excluded under this ruling.

United States District Court
Northern District of California

**F. Motion to Dismiss Indictment for Pre-Indictment Delay (Dkt. No. 565)**

Defendants[10] move to dismiss the indictment for pre-indictment delay.  (Dkt. No. 565.) Defendants argue that the delay between the alleged murders and the resulting federal indictment amounts to a violation of their rights under the Fifth and Sixth Amendments.  Defendants also ask the Court to exercise its discretion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48 ("Rule 48") as a result of the government's delay.  Defendants maintain that the government improperly used the Alameda County District Attorney as an instrument to assist its (the federal government's) own deliberate and unwarranted delay for approximately sixteen months, and that this delay potentially created prejudice against defendants.

Defendants seek relief on four related grounds: (1) successive prosecutions by the state and federal governments of defendant H. Cervantes are impermissible because the state prosecution was a sham under the so-called "*Bartkus*" exception;[11] (2) the government's delay in seeking a federal indictment violated defendants' right to due process under the Fifth Amendment; (3) the same delay violated defendants' right to a speedy trial under the Sixth Amendment; and (4) the indictment should be dismissed under Rule 48 for prosecutorial delay.  The Court disagrees and addresses each argument in turn.

First, defendant argues that the government should not be allowed to pursue charges against H. Cervantes on the heels of the state court proceedings because of double jeopardy concerns.  Essentially, defendant attempts to have the Court apply an exception (*Bartkus*) to an exception (sequential prosecutions by dual sovereigns) to a constitutional protection (against double jeopardy under the Fifth Amendment) that does not apply in the first instance.  As the government correctly notes, jeopardy never attached in the state proceedings because the state

---

[10] Defendant H. Cervantes filed the motion, joined by J. Cervantes and Larez.  (*See* Dkt. Nos. 579, 585, respectively).

[11] *Bartkus v. Illinois*, 359 U.S. 121, 139 (1959).  Consistent with *Bartkus*, the Ninth Circuit has adopted a narrow exception when the second prosecution is "merely pursued as a sham on behalf of the sovereign first to prosecute."  *United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990).

1    charges were dismissed against defendant H. Cervantes.  *See Gardner v. Griggs*, 541 F.2d 851

2    (9th Cir. 1976) (a defendant arraigned twice and subject to two scheduled preliminary hearings

3    does not raise issues of double jeopardy).  Defendant's Fifth Amendment protection against

4    double jeopardy is not implicated.  The *Bartkus* exception does not apply.

5           Next, defendants argue that the government's pre-indictment delay amounts to a violation

6    of their right to due process under the Fifth Amendment.  To prevail on a Fifth Amendment due

7    process claim for pre-indictment delay, defendants must satisfy a two-part test: "(1) the defendant

8    must prove actual, non-speculative prejudice from the delay; and (2) the length of delay, when

9    balanced against the reason for the delay, must offend those 'fundamental conceptions of justice

10   which lie at the base of our civil and political institutions.'"  *United States v. Huntley*, 976 F.2d

11   1287, 1290 (9th Cir. 1992) (quoting *United States v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir.

12   1992)).  The Court must first consider whether defendants have shown actual prejudice, which is

13   necessary to make "the due process claim concrete and ripe for adjudication," but not sufficient to

14   establish the due process violation.  *Id.* (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

15   Nowhere in defendants' motion, or in counsel's declaration filed in support thereof, do defendants

16   demonstrate any actual prejudice from the alleged pre-indictment delay.  Asserting that "a variety

17   of evidence was dissipated, lost, not collected, not preserved, and generally made unavailable"

18   (Dkt. No. 565-1 at ¶ 38) is not sufficient unless the defendant can also show "that the evidence

19   was lost due to the delay and also the way that evidence would have helped in their defense

20   against the government charges."  *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977).  The

21   declaration by defense counsel with respect to lost evidence is admittedly speculative.  (*See* Dkt.

22   No. 565-1 at ¶ 31.)  Defendants have not asserted any actual prejudice.  (*See* Dkt. No. 623 at 4:13-

23   15.)[12]  Thus, defendants do not present a concrete claim that pre-indictment delay violated their

24   right to due process.

25           Third, defendants' contention that the pre-indictment delay violates their right to a speedy

26

27        _____
          [12] The Court notes that the evidence inspection was ordered to occur on June 12, 2015 and

28   argument on these motions occurred on June 19, 2015 with no additional proffer of prejudice.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    trial under the Sixth Amendment is similarly unavailing.  The Ninth Circuit's decision in *United*

2    *States v. Cordova*, 537 F.2d 1073 (9th Cir. 1976), is directly on point.  In that case, the defendant

3    argued that a delay of fourteen months between his arrest on state charges and the date of his

4    federal indictment violated his Sixth Amendment right to a speedy trial.  *Id.* at 1075-76.  The

5    Ninth Circuit explained that his arrest by "state officers [was] irrelevant to the issue" of a speedy

6    trial on the federal charges before them.  *Id.*  Rather, the defendant's "Sixth Amendment rights

7    were not activated until [the date the federal prosecution commenced]."  *Id.*  Thus, the *Cordova*

8    defendant did not have a cognizable claim based on the Sixth Amendment's speedy trial clause.

9    *Id.*  Here, defendants' motion to dismiss on Sixth Amendment grounds likewise relies on delay

10   predating the federal indictment, and so must fail.

11       Lastly, defendants have not shown that "extreme circumstances" are present such that

12   dismissal is warranted under Rule 48.  *United States v. Huntley*, 976 F.2d 1287, 1291 (9th Cir.

13   1992) (quoting *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737 (9th Cir. 1989)).

14   Dismissal as a sanction under Rule 48 is severe and "requires findings of prosecutorial misconduct

15   and actual prejudice to the accused."  *Huntley*, 976 F.2d at 1292.  Defendants have presented

16   evidence of neither.  Relief under Rule 48 is plainly not justified under these circumstances.

17       For these reasons, defendants' motion to dismiss for pre-indictment delay is **DENIED**.

18       **G. Motion to Dismiss Count 1 for Failure to Allege RICO Elements (Dkt. No. 566)**

19       At issue in defendants'[13] motion to dismiss Count 1 is whether the government has alleged

20   the necessary elements of 18 U.S.C. section 1962(d), racketeering conspiracy, in the SSI.  (Dkt.

21   No. 566.)  Defendants maintain that Count 1, as alleged, is not sufficiently distinguishable from

22   the pattern of criminal activity the government has presented as a self-sustaining charge.  Second,

23   defendants contend the indictment fails to distinguish the conspirators and their role from the

24   amorphous and unformed enterprise alleged in Count 1.

25

26

27       _____

         [13] Defendant H. Cervantes filed the motion, joined by J. Cervantes and Larez.  (*See* Dkt.
28   Nos. 579, 585, respectively).

### 1. Legal Standard

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient to withstand a defendant's motion to dismiss "if it contains the elements of the charged offense in sufficient detail: (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation omitted); *see also United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (quoting *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995)).  "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *Awad*, 551 F.3d at 935 (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)); *see also United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991); *United States v. Morlan*, 756 F.2d 1442, 1444 (9th Cir. 1985).

"In ruling on a pretrial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "The indictment must be 'read as a whole' and construed according to common sense." *Echavarria-Olarte v. Reno*, 35 F.3d 395, 397 (9th Cir. 1994) (internal citations omitted).  The government need only allege the essential facts necessary to apprise the defendant of the crime charged and need *not* specify the theories or evidence upon which it will rely to prove those facts.  *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993).  Although an indictment that tracks the language of the statute is generally sufficient, "implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995).  "An indictment's failure to 'recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment.'" *United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001) (quoting *United States v. Du Bo*, 186 F.3d1177, 1179 (9th Cir.

1   1999)).

2                          **2. Analysis**

3          Defendants principally attack those allegations relating to the existence of an enterprise.

4   For example, they maintain that the government has failed to allege sufficiently the details of the

5   enterprise, how it constitutes an "association in fact enterprise," any facts concerning the operation

6   or management of the enterprise, or the "contours" of the enterprise.  The Court disagrees.

7          The elements of a racketeering charge are as follows:  "(1) the conduct (2) of an enterprise

8   (3) through a pattern of racketeering activity."  *Salinas v. United States*, 522 U.S. 52, 62 (1997).

9   An "enterprise" is defined as "any . . . group of individuals associated in fact."  18 U.S.C. §

10  1961(4).  An association-in-fact enterprise under RICO does not require any particular

11  organizational structure, separate or otherwise.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th

12  Cir. 2007) (citations omitted).

13         An association-in-fact enterprise under RICO is simply "a group of persons associated

14  together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*,

15  452 U.S. 576, 583 (1981).  "To establish the existence of such an enterprise, a plaintiff must

16  provide both "evidence of an ongoing organization, formal or informal," and "evidence that the

17  various associates function as a continuing unit."  *Odom*, 486 F.3d at 552 (citing *Turkette*, 452

18  U.S. at 583).  "[A]n association-in-fact enterprise must have at least three structural features: a

19  purpose, relationships among those associated with the enterprise, and longevity sufficient to

20  permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938,

21  946 (2009).

22         The Court finds these requirements met in the SSI.  As to the common purpose element,

23  the SSI alleges that NF has several purposes:  to preserve its power, territory, reputation, and

24  profits, and to enrich its members and protect them by keeping victims and others in fear of NF.

25  Further, NF has the purpose of protecting its members by effectively obstructing the efforts of law

26  enforcement.

27         In addition, the indictment contains sufficient allegations regarding the relationships

28  among those associated with the enterprise.  An association-in-fact enterprise "need not have a

*United States District Court*
*Northern District of California*

21

hierarchical structure or a chain of command." *Boyle*, 556 U.S. at 948.  The detailed allegations

concerning the relationships among group members in the SSI meet the standard.  The indictment

includes allegations concerning the separate gang structures, such as "Nuestra Raza" (known as

"NR"), which was created in response to Secure Housing Unit ("SHU") programs that limited

NF's numbers and influence within the prison system.  (SSI ¶ 6.)  Further allegations include

details about how NR members became "foot soldiers" for NF, and provided a recruiting pool by

preparing inmates for NF membership.  Members occupied roles such as "lieutenants,"

"*carnales*," and "regimental commanders."  (*See id.* at ¶¶ 7, 8.)  Allegations such as these amply

set forth the relationships between members of the enterprise.

Finally, the enterprise must "function as a continuing unit and remain in existence long

enough to pursue a course of conduct."  *Boyle*, 556 U.S. at 948.  Again, the SSI meets this

standard.  The SSI alleges that NF has been in existence for a lengthy period.

Rather than confront what is set forth in the SSI, defendants argue as if such allegations are

missing entirely.  The Court finds such allegations are both present and meet the pleading

standard.

The defendants further assert that the nature of the NF enterprise as alleged is no different

than the activity that forms the basis for the government's case.  The argument does not persuade.

The enterprise and the activity forming the basis for the government's claimed conspiracy, as

alleged, are distinct.  As the Ninth Circuit stated in *Odom*, the requirement that an enterprise be

"an entity separate and apart from the pattern of activity in which it engages" does not require that

the enterprise have some separate existence or structure.  *See Odom,* 486 F.3d at 551.  "To require

that an associated-in-fact enterprise have a structure beyond that necessary to carry out its

racketeering activities"—that is, a legitimate purpose in addition to its unlawful one—"would be

to require precisely what the [Supreme] Court in *Turkette* held that RICO does not require."  *Id.*

Finally, defendants argue that the enterprise as alleged is vague because it may consist of

too uncertain a swath of individuals:  both members and non-members of NF, or potentially even

members of other association-in-fact enterprises.  (Dkt. No. 625 at 4.)  Defendants rely upon a

faulty reading of the SSI.  The Court does not find the SSI vague on this point.  The SSI alleges

1    that NF is comprised of "relatively few full members" and, beyond that, there are members of the

2    NF street gangs and associates of NF.  It alleges that the defendants "acted individually, with each

3    other, and also with non-member NF associates in the commission of racketeering activities and

4    other criminal conduct."  (SSI ¶ 16.)  The membership of the association-in-fact enterprise is

5    delineated sufficiently.

6           The motion to dismiss is **DENIED**.

7           **H. Motion to Dismiss Counts 1, 2, and 3 (Dkt. No. 567)**

8           Defendants[14] move to dismiss Counts 1, 2, and 3 for failure to provide a sufficient

9    timeframe and other required notice.  (Dkt. No. 567.)  The government opposes the motion.  (Dkt.

10   No. 608.)  The applicable legal standard is set forth in Section II.G, *supra*.

11          Defendants argue Count 1 should be dismissed because it addresses a conspiracy that

12   began at least in December 2003 (in light of the Court's July 9, 2013 Order limiting the

13   government to proof of conduct after that date) and "continuing up through and including the

14   present, in the Northern District of California and elsewhere . . . ."  (SSI ¶ 17.)  The Court

15   previously rejected this argument as to the Superseding Indictment, finding it "not open-ended on

16   both sides of a temporal spectrum" due to the noted limitation.  (Dkt. No. 180 at 5 ("These

17   allegations are sufficient for purposes of withstanding a motion to dismiss and need not be more

18   specific.").)  In light of the separate order herein on the double jeopardy motion (Dkt. No. 563),

19   further limiting the government to proof of conduct starting after September 27, 2004, the Court

20   sees no reason to depart from its earlier ruling on this point.

21          The legal authority cited by the defendants in support of dismissal fails to persuade.

22   "[U]ncertainty regarding a conspiracy's beginning and ending dates does not render an

23   indictment fatally defective so long as overt acts alleged in the indictment adequately limit the

24   time frame of the conspiracy."  *United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010).  The

25   Court previously noted the Superseding Indictment "included many specific dates" (*id*.) which are

26   still included in the relevant counts of the SSI.

27   

─────────────────────

28          [14] *See* footnote 13, *supra*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Additionally, defendants argue Counts 2 and 3 should be dismissed because they

2  purportedly include "even more vague" allegations, since they incorporate by reference allegations

3  from Count 1 and various provisions of California state law, and fail to define the "exact

4  conspirators; where the conspiracy is alleged to have been formed; how any given individual is

5  alleged to have become a member of the conspiracy; and what overt acts might shape its

6  contours." (Dkt. No. 567 at 2-3.) Defendants did not raise this purported deficiency in connection

7  with the Superseding Indictment, which included the same relevant language as the SSI.

8  Moreover, the SSI continues to include a number of specific dates and incidents, such as the

9  alleged September 9, 2011 killings of two individuals near Coolidge Avenue in Oakland (SSI ¶

10  12), August 27, 2011 armed robbery of a gas station near Red Bluff (SSI ¶ 14), September 10,

11  2011 burning of an apartment in Oakland, and January 10, 2012 home invasion robbery in

12  Livermore, among others. "[T]here is no requirement in conspiracy cases that the government

13  disclose even all the overt acts in furtherance of the conspiracy." *Giese*, 597 at 1180; *see also*

14  *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he Government is not required to

15  furnish the name of all other co-conspirators in a bill of particulars."). Thus, the Court also finds

16  the pleading of these counts sufficient.

17    In light of the foregoing, the motion to dismiss Counts 1, 2, and 3 is **DENIED**.

18    **I. Motions for Disclosure of Evidence (Dkt. Nos. 570, 571, 578)**

19    Defendants[15] move the Court for an order that the government timely disclose information:

20  (1) whether it intends to introduce specific evidence obtained from a pole camera in use pursuant

21  to court orders outside of 1759 Seminary Avenue, Oakland, California, as permitted by Federal

22  Rules of Criminal Procedure 12(b)(4)(B) and 16; (2) whether it intends to introduce evidence from

23  a pole camera outside of 1759 Seminary Avenue, Oakland, California that was *not* acquired

24  pursuant to a warrant authorization; and (3) whether it has in its possession, and/or intends to

25  introduce pole camera images showing H. Cervantes at any time on the day or night of September

26  9-10, 2011. (Dkt. No. 570.) The motion was occasioned by the defense's observation that the

27  ─────────────────

28    [15] *See* footnote 13, *supra*.

footage produced in discovery has gaps, particularly in the days surrounding the murders.

At the June 19, 2015 hearing, the government indicated that it was unaware of the gaps surrounding those dates, and is now investigating the same. Defendants agreed that, so long as they are given suitable notice about what the government intends to introduce, and the government is looking into the gap issue, the issue could be considered resolved. The October 2, 2015 deadline for disclosure of exhibits, previously set by the Court, was agreeable to address these issues. Thus, the Court **GRANTS** the motion to the extent that disclosure of the specific portions of the videos must be made by **October 2, 2015**.

Relatedly, defendants[16] move the Court for an order requiring the government to disclose timely the telephone conversations and text messages that will be offered against them at trial. (Dkt. Nos. 571, 578.) Defendants represent that the discovery from the government of such information has been a "dump" of various messages, data, phone numbers, and other phone-related information.

Again, to the extent the motions seek confirmation that the particular records to be introduced into evidence have been identified, that must be done by no later than **October 2, 2015**, under the Court's current schedule. As defendants indicated on the record that this timing was acceptable, this portion of the motions will be **DENIED** as moot.

To the extent the motions seek disclosure of an expert on the use of coded language in text messages or phone calls, those issues are more directly before the Court on the parties' separate briefing regarding the sufficiency of the expert disclosures made on June 8, 2015, and the motions to exclude such experts. (*See* Dkt. Nos. 645, 659, 664 (currently set for hearing August 26, 2015).) Thus, the Court **DENIES WITHOUT PREJUDICE** the preliminary motion made here and will resolve the expert-related issues in connection with those pending motions.

**J. Motions Challenging Counts as Multiplicitous (Dkt. Nos. 564, 568, 576)**

Three pending motions argue certain counts in the SSI are multiplicitous.[17] First,

---

[16] *See* footnote 13, *supra*.

[17] The Court notes that resolution of this issue was rendered unnecessarily complex due to the filing of overlapping motions and a lack of clarity as to the scope and specific issues of

United States District Court
Northern District of California

defendants[18] moved for a pretrial determination that the current indictment includes redundant, multiplicitous conspiracy counts that will necessarily result in superfluous convictions without sentencing ramifications.  (Dkt. No. 564).  Second, defendants[19] moved to dismiss Count 3 due to multiplicity.  (Dkt. No. 568.)  Third, Larez similarly filed a motion to dismiss Counts 2 and 3 as multiplicitous (Dkt. No. 576), joined by the other two defendants.  The government filed a consolidated opposition brief addressing all three motions.  (Dkt. No. 607.)

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009) (citing *United States v. Garlick*, 240 F.3d 789, 793-94 (9th Cir. 2001)); *see also United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005) ("An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions.").  The applicable test to determine whether two counts encompass the same offense is to ask "whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998).  The Ninth Circuit has held that a RICO conspiracy and a predicate act may be charged successively; this is also true in the case of a separate charge for conspiracy to commit the RICO charge's predicate offense.  *See United States v. Luong*, 393 F.3d 913, 915 (9th Cir. 2004); *United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995).

The first motion is focused on Counts 1 (Racketeering Conspiracy), 2 (Conspiracy to Commit Murder in Aid of Racketeering), 3 (Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering), and 27 (Conspiracy to Distribute Controlled Substance—Methamphetamine).  The first motion argues certain of those counts present double jeopardy

concern raised by each motion.

[18] H. Cervantes filed the motion, joined by J. Cervantes (Dkt. No. 579) and Larez (Dkt. No. 585).

[19] *See* footnote 18, *supra*.

1    concerns or otherwise risk double punishment where they are premised upon the same set of facts,

2    particularly those allegations relating to murder in Counts 1 and 2 and the substantive murder

3    charges in Counts 5 and 6.  Defendants acknowledge that a similar motion filed by defense

4    counsel in an unrelated case, *United States v. Cerna*, No. 08-CR-0730, 2010 WL 1459444 at *4-5

5    (N.D. Cal. Apr. 9, 2010), was denied.  In *Cerna*, citing the Ninth Circuit's *Luong* decision, the

6    court rejected the argument that the RICO conspiracy charge was multiplicitous with counts for

7    conspiracy to commit murder in aid of racketeering and conspiracy to commit assault with a

8    dangerous weapon in aid of racketeering.  *Id*. at *5 (finding "the elements of [the] predicate

9    conspiracy offense[s] . . . distinct from the overarching RICO conspiracy").

10        The Court similarly notes that Count 1 requires a finding of an agreement to participate in

11   the affairs of the enterprise through a pattern of racketeering activity involving two or more

12   racketeering acts.  *See Salinas v. United States*, 522 U.S. 52, 62 (1997).  By contrast, the VICAR

13   counts, including Counts 2, 3, 5 and 6, do not require an agreement to commit two or more

14   racketeering acts, and include the additional elements that the crime at issue is violent and that the

15   defendant acted with the purpose of promoting his position within the organization.  *See United

16   States v. Banks*, 514 F.3d 959, 964 (9th Cir. 2008).  As for Count 27, "[t]he essential elements of a

17   drug conspiracy under 21 U.S.C. § 846 are an agreement to commit the unlawful act of possessing

18   with intent to distribute a controlled substance, knowing of the conspiracy's objectives and

19   intending to help further them."  *United States v. Rodriguez-Lopez*, 14 F. App'x 854, 858 (9th Cir.

20   2001).  Thus, Count 27 does not include the "enterprise" element of Count 1, and Count 1 does not

21   include as a necessary element any agreement or intent regarding possession of a controlled

22   substance.

23        The second motion argues Counts 2 (Conspiracy to Commit Murder in Aid of

24   Racketeering) and 3 (Conspiracy to Commit Assault with a Dangerous Weapon in Aid of

25   Racketeering) are "essentially redundant, and charge sufficiently related conduct that they should

26   be deemed multiplicitous."  (Dkt. No. 568 at 2.)  The third motion similarly argues that Counts 2

27   and 3 are multiplicitous subsets of Count 1: "Each of the three counts is alleged to have occurred

28   in the same time period, and involves the same defendants."  (Dkt. No. 576 at 2.)  Here, the

United States District Court
Northern District of California

United States District Court
Northern District of California

defendants' arguments appear to focus on their view that Count 3 is, in effect, a lesser included offense in relation to Count 2.

The proper time to address concerns of double punishment in connection with a lesser included offense is prior to sentencing. "Prosecutors should not be discouraged from charging defendants with greater and lesser included offenses in separate counts under the same indictment." *United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) ("Indeed, if they fail to try the lesser and greater included offenses together in one trial, they may not, consistently with the protections of the Double Jeopardy Clause, later try the defendant for the related offense in a subsequent trial under a separate indictment.").

Furthermore, the defendants' reliance on *Braverman v. United States*, 371 U.S. 49 (1942), is misplaced since that case is limited to the situation in which multiple counts arise under a single statute. *See Albernaz v. United States*, 450 U.S. 333, 339 (1981) (noting the limits of *Braverman*).

In light of the foregoing, the Court **DENIES** these three motions **WITHOUT PREJUDICE** to the defendants raising these issues again prior to sentencing, if applicable.

### K. Motions Seeking Severance (Dkt. Nos. 573, 574, 577)

Defendants H. Cervantes and Larez have filed several motions for severance of offenses and severance of codefendants. The basis for these motions, in general, is that joinder of defendants and offenses here is sufficiently prejudicial to warrant severance. H. Cervantes maintains that severance is warranted in his case for two main reasons: (1) his co-defendants were charged with crimes committed while he was incarcerated as to which he is not charged and could have played no part; and (2) he seeks to offer a defense for the VICAR murder that is at odds with the government's theory of conspiracy liability. (Dkt. No. 573.)[20] He further argues that Counts 5-11 should be severed from the trial so that he may present his individual defense as to these charges. (Dkt. No. 574.)[21] Larez maintains that severance of Counts 5-11, or alternatively

---

[20] In addition to filing his own motion, Larez joined in H. Cervantes' motion. (Dkt. No. 585.)

[21] *See* footnote 20, *supra*.

1    severance from his co-defendants, is warranted.  (Dkt. No. 577.)[22]

2           The Court first reviews the relevant legal standards on joinder of defendants and offenses

3    and motions to sever, and then considers the specific theories offered by H. Cervantes and Larez in

4    turn.

5                   **1.    Legal Standard**

6                           **a.   Joinder of Offenses**

7           Rule 8(a) provides that:

8                   The indictment or information may charge a defendant in
9                   separate counts with 2 or more offenses if the offenses
                    charged—whether felonies or misdemeanors or both—are of the
                    same or similar character, or are based on the same act or
10                  transaction, or are connected with or constitute parts of a
                    common scheme or plan.
11

12   Fed. R. Crim. P. 8.  Rule 8(a) has been "broadly construed in favor of initial joinder."  *United*

13   *States v. Jawara*, 474, F.3d 565, 573 (9th Cir. 2007).  In general, the basis for joinder should be

14   apparent from the indictment, although when determining whether joinder is valid under Rule 8's

15   "same or similar character" test, the Court is free to consider other factors such as "the elements of

16   the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary

17   overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the

18   victims."  *Id*. at 578.

19                          **b.   Joinder of Defendants**

20          Under Rule 8(b), "[t]he indictment or information may charge 2 or more defendants if they

21   are alleged to have participated in the same act or transaction, or in the same series of acts or

22   transactions, constituting an offense or offenses."  When defendants are indicted together, the

23   federal system evinces a preference for joint trials.  *See Zafiro v. United States,* 506 U.S. 534, 537

24   (1993); *see also United States v. Lane,* 474 U.S. 438, 449 (1986) (recognizing that joint trials

25   "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid

26   delays in bringing those accused of crime to trial") (quoting *Bruton v. United States,* 391 U.S. 123,

27   ───────────────────

28          [22] H. Cervantes joined in this motion to the extent it applies to him.  (Dkt. No. 582.)

United States District Court
Northern District of California

134 (1968)).  Only where joinder would create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" must the Court grant severance.  *Zafiro,* 506 U.S. at 539.  Neither a joint trial with more culpable codefendants nor an improved possibility of acquittal in a separate trial is sufficient by itself to warrant severance.  *United States v. Fernandez,* 388 F.3d 1199, 1241 (9th Cir. 2004) (citing *United States v. Baker,* 10 F.3d 1374, 1388 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby,* 225 F.3d 1053 (9th Cir. 2000)).

Nonetheless, despite the propriety of joinder under Rule 8(b), a court may order severance if it finds sufficient prejudice exists to one or more of the defendants.  Thus, Rule 14 provides:

> If the joinder of . . . defendants . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Four factors are relevant in evaluating a request for severance of defendants: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.  *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) ("The first two factors are the most important to this inquiry.").  A joint trial is "appropriate where co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials."  *Id*. at 1242.

In light of the legal frameworks under Rules 8 and 14, the Court now turns to the merits of the instant motions.

United States District Court
Northern District of California

### 2.   Analysis

#### a.   H. Cervantes' Motion to Sever His Case from Codefendants (Dkt. 573)

H. Cervantes argues that a severance is warranted due to serious potential prejudice. Specifically, he argues that joinder will impinge his ability to present a defense insofar as: (1) he was incarcerated while certain events, charged against his codefendants only, took place (the later murder); (2) he intends to offer a specific and individualized defense relating to the murders for which he is charged (i.e., that the double murder he is alleged to have committed was in defense of and motivated entirely by his attempt to avenge the harms done to his sister, not in support of NF); and (3) statements of his codefendants may implicate him.

On the first issue, the Court finds that it is of no moment that H. Cervantes was incarcerated while certain acts charged against his codefendants occurred. The allegations relating to the NF RICO conspiracy transcend prison walls; the operation is alleged to exist both inside and outside the prison. Moreover, a charge of RICO conspiracy permits admission of certain conduct and acts not related simply to the acts personally charged against H. Cervantes, to support the government's theory that a RICO enterprise existed. Such evidence may be admissible against H. Cervantes to prove a RICO element, and also admissible against his co-defendants as probative of that conduct and crimes charged against them individually. The inquiry is not so complex such that jurors would necessarily be misled. To the extent H. Cervantes maintains that his incarceration functions as a total bar to any culpability, such an argument is plainly contradicted by the government's theory. These issues go to the weight of the evidence and the jury may consider them.

Likewise, the fact that H. Cervantes maintains an individualized defense to the Coolidge Avenue double murders on September 9, 2011, does not present so complex a theory that reasonable, average jurors would have difficulty understanding how such evidence bears on their ultimate verdict. Critically, defendants have not shown that these defenses are necessarily mutually antagonistic. Given the Court's authority and responsibility to provide timely, frequent, and accurate instructions, the Court is confident that H. Cervantes' individualized defense will be fairly presented to the jury. This includes his ability to aid in his own defense through the

31

United States District Court
Northern District of California

1   submission of his own trial testimony.  To that end, the Court is willing to entertain a specific

2   proposal from H. Cervantes regarding the opportunity to offer such testimony by limiting the

3   scope of both direct and cross-examination to Counts 5 and 6.  He may choose to make a decision

4   in that regard at a later date.

5       Finally, H. Cervantes has argued that statements of his codefendants might be so

6   prejudicial as to warrant severance.  As of the time of this briefing, no proffer has been made as to

7   all potential statements.  Given the strength of the reasons for non-severance, a motion based on an

8   ill-defined, hypothetical situation does not warrant severance.

9           **b.  Defendants' Motions to Sever Counts 5-11 (Dkt. Nos. 574, 577)**

10      Defendants' next motions generally relate to severance of the counts relating to the

11  Coolidge Avenue murders.  H. Cervantes argues that such counts are distinct from the overarching

12  alleged enterprise activity.  (Dkt. No. 574 at 6.)  As set forth above, "joinder is the rule rather than

13  the exception."  *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).  Joinder of

14  offenses is allowed under Rule 8(a) when the offenses charged "are of the same or similar

15  character or are based on the same act or transaction or on two or more acts or transactions

16  connected together or constituting parts of a common scheme or plan."  *Id.* at 953-54.

17      The indictment charges H. Cervantes with agreeing that he and others would commit

18  murders on behalf of NF (Count 2), and that they would commit assault with a dangerous weapon

19  on behalf of NF (Count 3).  H. Cervantes is also charged with the Coolidge Avenue murders in

20  Counts 5 and 6, which the SSI presents as acts undertaken in conjunction with the agreements at

21  issue in Counts 2 and 3.  Specifically, the SSI posits that the Coolidge Avenue murders were

22  undertaken to further the tenet of NF that where a family member of an NF *carnal* is mistreated,

23  retaliation is expected.  The government further alleges that retaliation in this manner serves to

24  reinforce fear of NF and generate credibility for the organization's *carnales*.

25      The link between the Coolidge Avenue murder counts and the government's overarching

26  theory is evident.  Given the nature of the RICO conduct charged here, the Court further finds a

27  sufficient link between the Coolidge Avenue murders and the murder for which Larez is charged,

28  making joinder appropriate.  Because the murders are alleged to have been committed in

furtherance of NF, there is a sufficient nexus between these acts, and their common purpose as alleged is substantial. *See United States v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011) ("Racketeering acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'") (citation omitted); *United States v. Banks*, 514 F.3d 959, 970 (9th Cir. 2008) (holding that VICAR requires not simply "incidental" purpose, but "substantial" purpose of maintaining or increasing position in an enterprise). The Coolidge Avenue murders alleged against H. Cervantes share the "same or similar character" as those charged against Larez. As alleged in the SSI, they also share the same or similar purposes of being carried out, related to NF's goals. The Court finds the SSI provides sufficient justification for joinder of these counts.

Again, with respect to H. Cervantes' argument that he seeks to present an individualized defense, the Court is not persuaded that his defense is so nuanced that a jury will have difficulty appraising the import and weight of any evidence offered in support thereof. As set forth above, the Court will entertain a specific request to allow H. Cervantes to testify as to the limited scope of his defense to Counts 5 and 6. Moreover, the Court is aware of H. Cervantes' concern that testimony of this limited scope may invite the jury to wonder why he maintains innocence on those charges but not others. The Court will also consider specific curative instructions to remedy this concern.

Likewise, Larez argues that Counts 5 through 11 charge crimes not connected to furthering the aims of NF and are therefore unduly prejudicial, requiring severance under Rule 14. In the alternative, Larez requests severance on the basis that a joint trial with H. Cervantes and J. Cervantes on those counts would impermissibly prejudice him by including in the trial evidence of crimes he is not charged with committing.

Based on the facts presented, the Court finds little support for Larez's claim of undue prejudice. Larez ignores the impact of the RICO conspiracy charged in Count 1. A joint trial is "particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate

United States District Court
Northern District of California

trials." *Fernandez*, 388 F.3d 1199, 1242.  That there may be spillover prejudice in such instances from the murders conducted by other members of the alleged enterprise is not a sufficient reason to sever, for such evidence is relevant as to all engaged in the racketeering enterprise:

> [P]roof of [RICO] elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts.  Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

*Fernandez*, 388 F.3d. at 1242 (citing *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992)). The criminal conduct of others is properly admissible against a defendant in a RICO conspiracy, so long as the other criminal conduct is a part of the criminal enterprise.  Although Larez maintains that the Coolidge Ave murders are not part of the conspiracy, because H. Cervantes was purportedly avenging his sister, the SSI posits a nexus and an identity of purposes as to the two charged offenses: to support the goals of NF.

Accordingly, defendants' motions for severance are **DENIED**.

### III.     UNOPPOSED MOTIONS REQUIRING RULINGS

#### A.     Motion for Joint Meetings (Dkt. No. 555)

Larez[23] brings a motion for joint meetings between all remaining defendants and their counsel pursuant to Federal Rule of Criminal Procedure 47 so that they may consult regarding their joint defense of the conspiracy charges in this case.  Specifically, he requests joint periodic meetings be scheduled and permitted in the courthouse before or after hearings.  As noted on the record at the June 19, 2015 hearing, the Court hereby **GRANTS** the motion insofar as the meetings shall occur in the courtroom and at reasonable times in accordance with the Court's schedule, and that defendants remain shackled and separated at all times.

#### B.     Motion that Defendants Appear Without Shackles (Dkt. No. 556)

Defendants[24] filed a motion to appear without shackles at trial.  They argue shackles are

---

[23] J. Cervantes joined in the motion.  (Dkt. No. 579.)

[24] H. Cervantes filed the motion, joined by J. Cervantes (Dkt. No. 579) and Larez (Dkt. No. 585).

unnecessary and that "no factual basis" permits their use in this case.  The Court disagrees.

It is certainly true that the Sixth and Fourteenth Amendments assure criminal defendants the right to be present in a courtroom and to a fair trial.  *See Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985).  While a defendant has the right to appear before the jury free of shackles or other restraints, this right is not absolute.  *See id.*  The trial court has discretion to use shackles or other security measures where circumstances dictate.  *See id.*  Shackling is proper where there is a serious threat of escape or danger to those in and around the courtroom.  *See id.* at 1485.

Based on its assessment of the circumstances here, the Court hereby **DENIES** the motion.  The U.S. Marshals reasonably recommend the defendants remain shackled throughout trial.  The Court has seen video evidence of defendants H. Cervantes and Larez beating other inmates in the holding tank.  Given that history and the defendants' alleged positions within the NF organization, the Court is faced with significant security concerns.  Thus, in light of the unique circumstances of this case, including the nature of the accused conduct in the indictment, and the recommendation of the U.S. Marshals, the Court finds such security measures necessary.  However, so as not to prejudice the defendants, the shackles will be employed in a manner concealed from the jury, and defendants shall be seated and secured by the time the jury enters the courtroom.

Further, as requested, the Court is considering whether sufficient security measures can be employed in the Oakland Courthouse to try the case here rather than in the secured courtroom in San Francisco.

## IV.   MOTIONS RESOLVED BY STIPULATION (DKT. NOS. 557, 569, 572, 560)

Four motions were resolved by stipulation.[25]  (Dkt. No. 591 at 2.)  First, as to the motion for daily transcripts (Dkt. No. 557), the parties agreed to share the costs of daily transcripts equally among themselves.  Second, as to the motion for a date to set deadlines for filing a notice regarding mental state defense (Dkt. No. 569), the parties indicated they will file a separate stipulation setting forth an agreed upon date.  Third, as to the motion to extend time to challenge

---

[25] Each of these motions were filed by H. Cervantes and joined by J. Cervantes.  (Dkt. No. 579.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the Grand Jury cross-section (Dkt. No. 572), the parties also indicated they will file a separate

2   stipulation setting forth an agreed upon date.  Finally, as to the *Henthorn* motion for exculpatory

3   and impeaching material (Dkt. No. 560), the government agreed to abide by its discovery

4   obligations on the dates set forth in the Scheduling Order.

5   **V.      CONCLUSION**

6           For the foregoing reasons, the Court **ORDERS** as follows:

7           A.  Defendants' Second Motion for a Bill of Particulars (Dkt. No. 558) is **DENIED** as to

8                Counts 5 and 6, and **GRANTED** as to Count 27.  The bill of particulars shall be filed

9                by no later than **August 24, 2015**.

10          B.  Defendants' Motion for Disclosure of Cooperating Sources (Dkt. No. 559) is

11               **DENIED**.  With respect to the request for a deadline for *Jencks* disclosures, by

12               **August 7, 2015**, defendants shall file a joint statement indicating when *Jencks*

13               disclosures have occurred in other similar cases tried in this District.  Thereafter,

14               the parties shall meet and confer regarding an appropriate deadline here and shall

15               file a joint statement regarding the same by **August 24, 2015**.

16          C.  Defendants' Motion for Order Requiring a Rule 404(b) Notice (Dkt. No. 561) is

17               **DENIED** as premature.

18          D.  Defendants' Motion to Preclude Use of Co-Defendant Plea Agreements as

19               Substantive Evidence (Dkt. No. 562) is **GRANTED** as framed herein.

20          E.  Defendants H. Cervantes' and Larez's Motion to Preclude Evidence from Prior

21               RICO Case (Dkt. No. 563) is **GRANTED** as framed herein.

22          F.  Defendants' Motion to Dismiss Indictment for Pre-Indictment Delay (Dkt. No.

23               565) is **DENIED**.

24          G.  Defendants' Motion to Dismiss Count 1 for Failure to Allege RICO Elements (Dkt.

25               No. 566) is **DENIED**.

26          H.  Defendants' Motion to Dismiss Counts 1, 2, and 3 (Dkt. No. 567) is **DENIED**.

27          I.  Defendants' Motions for Disclosure of Evidence (Dkt. Nos. 570, 571, 578) is

28               **GRANTED** as framed herein.  Disclosure of the specific portions of the videos to be

used as evidence and confirmation that the particular records to be introduced into evidence have been identified must be made by **October 2, 2015**. The Court **DENIES WITHOUT PREJUDICE** that portions of the motions related to expert testimony, which is more specifically briefed in defendants' motions related to expert disclosures and admissibility (*see* Dkt. Nos. 645, 659, 664).

J. Defendants' Motions Challenging Counts as Multiplicitous (Dkt. Nos. 564, 568, 576) are **DENIED WITHOUT PREJUDICE** and defendants may raise these issues again prior to sentencing, if applicable.

K. Defendants' Motions for Severance (Dkt. Nos. 573, 574, 577) are **DENIED**.

L. Defendant Larez's Motion for Joint Meetings (Dkt. No. 555) is **GRANTED**; the meetings shall occur in the courtroom at reasonable times in accordance with the Court's schedule, and defendants shall remain shackled and separated at all times.

M. Defendants' Motion to Appear Without Shackles (Dkt. No. 556) is **DENIED**.

This Order terminates Docket Numbers 555-74, 576-78.

**IT IS SO ORDERED.**

Dated: July 31, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**