UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**HENRY CERVANTES ET AL.,**<br><br>Defendant. | Case No.  12-cr-00792-YGR<br><br>**PRETRIAL ORDER NO. 7 REGARDING MOTIONS IN LIMINE AND MOTIONS FOR SEVERANCE FROM ANDREW CERVANTES** |

Pending now before the Court are another round of severance motions (Docket Nos. 815, 820) and twenty-eight motions *in limine*, four filed by the government (Docket Nos. 848–51), nineteen filed by Henry Cervantes ("H. Cervantes") (Docket Nos. 829–47, 876), and five filed by Alberto Larez ("Larez") (Docket Nos. 823–27).  In addition, on December 31, 2015, H. Cervantes filed a Notice requesting confirmation of the trial date, given the urgency of issuing appropriate trial subpoenas and the need to update the Honorable Judge Geoffrey W. Crawford of the District of Vermont.

Joseph Alioto appeared on behalf of the government.  John Philipsborn appeared on behalf of H. Cervantes, Brian Getz appeared on behalf of Larez, Randy Sue Pollock appeared on behalf of Jaime Cervantes ("J. Cervantes"), and K. Alexandra McClure appeared on behalf of Andrew Cervantes ("A. Cervantes").  All defendants were present and in custody.

Based on the submissions of the parties, oral argument, and Good Cause showing, the Court makes the following Orders.

As a threshold matter, a motion *in limine* refers "to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  "Although the Federal Rules do not explicitly

United States District Court
Northern District of California

authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Id.* n.4. The Court set forth a meet-and-confer process to occur before filing these motions. The Court required that any unresolved motions be filed by noon on January 5, 2016.

Here, many filed motions did not identify any particular evidence on which the Court could issue appropriate rulings. Rather, the motions were used as an unauthorized means to brief potential trial issues. As set forth herein, these motions are summarily denied as premature and seeking advisory opinions. Further, as discussed at the hearing, the Court is not willing to try this case twice: once through a pretrial process, so that the defense can preview all the evidence as in a civil case and then offer objections, and a second time before a jury. Nor can the Court summarily grant the overbroad motions made. Notwithstanding the foregoing, the Court has ordered certain pretrial filings to assist with the clarification of what evidence will be used in the trial.

Other motions sought jury instructions. Jury instructions were not proper subjects for the scheduled motions *in limine*, and should be raised in the context of the Court's scheduled hearing on jury instructions and in compliance with this Court's order regarding such requests. *See* Pretrial Order No. 4 ¶ B.4.iv. That said, the Court will reserve ruling on these particular motions, as set forth below. By February 25, 2016, the defendants shall file the text of proposed instructions relating to these motions. The government may file competing versions by March 3, 2016. No further legal briefing on these motions is authorized.

I.   **Motions *in limine***

    A. **Defendants' Overlapping Motions**

       1. **Docket Nos. 824 and 829: Motions to Exclude Gruesome/Repetitive Photographs**

H. Cervantes seeks an order requiring that the government, before trial, submit photographs to the Court and defense that it intends to introduce at trial, so as to permit the defense to seek to exclude particular photographs or videos under Rules 104, 401, and 403. (*See* Docket No. 829.) Larez also raises relevancy and Rule 403 concerns, arguing that the photographs show merely facts that are undisputed and subject to stipulations by the defense, for instance, that

United States District Court
Northern District of California

1  the victims were killed and that their bodies were stabbed and burned.  (*See* Docket No. 824 at 2–

2  3.)  The government responds that it reserves the right to introduce photographs as relevant (1) to

3  "demonstrate the entire crime scene to the jury;" (2) to demonstrate positions of the bodies of the

4  decedents when they were found; and (3) with regard to autopsy photographs, to demonstrate

5  "entry and exit gunshot wounds, stabbing wounds, burn wounds, and all other types of visible

6  trauma to the body, and any other relevant aspect of a wound such as soot, stippling, shoring, etc."

7  (Docket No. 855 at 2).

8  **Ruling:**  The motions are **GRANTED IN PART AND DENIED IN PART**.  At the hearing, the parties

9  agreed to meet and confer regarding a process by which any photographs the government seeks to

10  admit over defense objections are submitted to the Court with sufficient time to resolve any

11  disputes during the course of the trial.  At a minimum, the Court will need to review the materials

12  the day before they are offered.  The Court **ORDERS** the parties to file their agreement on such a

13  process, or the result of the meet and confer, in writing prior to the next scheduled hearing.  In

14  addition, the Court again directs the parties to the Court's Standing Order in Criminal Cases

15  regarding any exhibits sought to be used in opening statements.

16            2.  **Docket Nos. 823 and 830: Motions for Preliminary Jury Instruction

17                 Regarding Legality of Membership in a Gang and that Gang Membership
               is Not the Equivalent of Being Guilty of Any Crime Charged in this Case**

18          H. Cervantes seeks an instruction that mere membership in a gang is not necessarily illegal

19  and does not necessarily constitute a criminal conspiracy.  Larez makes a similar motion for such

20  an instruction "at the outset of the case."  (*See* Docket No. 823.)

21  **Ruling:**  The Court **RESERVES** ruling on the content and timing of jury instructions, and **ORDERS**

22  the parties to provide proposed instructions in accordance with paragraph 6, *supra*.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

B.  **H. Cervantes's Separate Motions**

1.  **Docket No. 831: Motion To Exclude Evidence of Acts or Statements Prior to H. Cervantes's Proven Entry into any Charged Conspiracy; also Covering Acts or Statements Made Prior to Proof of any Conspiracy Charged**

**Ruling:**  The Court RESERVES ruling on this motion, as discussed at the hearing.  The Court ORDERS the government to file its articulation of the conspiracies charged in this case by January 29, 2016.

2.  **Docket No. 832: Motion to Exclude or Limit Evidence of Alleged Conspiratorial Acts or Substantive Crimes Committed by Others as Irrelevant to H. Cervantes for Any Charge After His Arrest in September 2011**

**Ruling:**  The Court RESERVES ruling on this motion, as discussed at the hearing.  The Court ORDERS the government to file its articulation of the conspiracies charged in this case by January 29, 2016.

3.  **Docket No. 833: Motion to Require that Government Identify the Conspiracy; Motion to Exclude Co-Conspirator Statement Evidence that Does Not Meet the Requirements of Federal Rule Of Evidence 801(d)(2)(E); Motion for Ruling on Admissibility of Proffered Conspirator Statements in Advance of Trial**

**Ruling:**  The Court RESERVES ruling on this motion, as discussed at the hearing.  The Court ORDERS the government to file its articulation of the conspiracies charged in this case by January 29, 2016.

4.  **Docket No. 834: Motion to Exclude Statements Made to Law Enforcement Officers or to Cooperators Working with Law Enforcement Purporting to Summarize or Characterize Statements Made by H. Cervantes that Cannot Fit the Category of Non-Hearsay Conspirator Statements**

H. Cervantes acknowledges that he does not have all witness statements yet, but seeks to "to exclude evidence relayed by a witness or cooperator to a law enforcement officer, or relayed to a cooperator, that purports to contain or summarize a statement by Henry Cervantes."  (Docket No. 834 at 1.)  H. Cervantes also "seeks to exclude testimony from a witness that involves the witness characterizing or purporting to testify about a conversation with a person who in turn was relaying to the source/witness what Henry Cervantes, or some other individual, told him."  (*Id.* at

2.)  Finally, he "seeks to exclude any statement attributed to him by any informant, or cooperator, who cannot be cross-examined where it is clear that the operative (a) reported the statements, or provided them, to law enforcement officers knowing they would be used, and (b) where the operative was clearly acting as a surrogate for law enforcement officers."  (*Id.* at 3.)  The government responds that it only intends to admit evidence admissible under the Federal Rules of Evidence and the Constitution, including *Crawford v. Washington*, 541 U.S. 36 (2003).  (*See* Docket No. 857 at 2.)

**Ruling:**  This motion is **DENIED WITHOUT PREJUDICE** as overbroad and ambiguous, given that H. Cervantes has not identified particular statements to exclude.  Any subsequent motion on this basis shall (I) attach a copy of the witness statement received and (II) identify the date of receipt.

5. **Docket Nos. 835 and 850: Motion to Preclude Use of the Fact of Coconspirator or Former Codefendant Guilty Pleas as Admissible to Prove Any Charge in this Case; Motion For Instruction and Admonishment regarding Testimony by a Cooperator Who Has Pled Guilty, and Government's Motion regarding Admissibility of Cooperation Agreements**

H. Cervantes first "seeks to ensure that plea agreements, their contents, change of plea colloquies, statements made to probation officers as part of plea agreements, cooperation agreements predicated on plea agreements, [and] cooperation agreements standing alone are not used by the jury as substantive evidence of the existence of a conspiracy, or of the status of any of the defendants in this case as a conspirator . . . ."  (Docket No. 835 at 2.)  Second, H. Cervantes seeks appropriate jury instructions either before or during the testimony of a witness who has pleaded guilty.  (*See id.* at 2–3.)  The government states that it will not introduce the "factual bases from plea agreements" to prove the charges in this case, and that it will not seek improperly to "bolster the truthfulness of a witness's testimony on direct examination."  (Docket No. 850 at 2.)  The government, however, seeks to admit plea and cooperation agreements "if and when the defendants attack the credibility of any cooperating witness."  (Docket No. 850 at 2.)  In addition, the government opposes instructing the jury as requested by H. Cervantes until after the close of evidence.  (*See id.* at 2–3.)

**Ruling:**  H. Cervantes's motion (Docket No. 835) is **GRANTED IN PART AND DENIED IN PART**.

United States District Court
Northern District of California

The government's motion (Docket No. 850) is **DENIED WITHOUT PREJUDICE**.

First, the Court reiterates that it has granted a motion regarding limitations on the government's use of guilty pleas during its case-in-chief.  (*See* Docket No. 687 at 11–12.)[1]

Second, the Court **RESERVES** ruling on whether particular plea agreements would be admissible, and—if they would be—how and to what extent.  "A trial court should be alert to the problem of vouching before admitting a plea agreement containing a promise to testify truthfully. The court should consider the phrasing and content of the promise to ascertain its implications and decide whether an instruction to the jury would dispel any improper suggestions."  *United States v. Roberts*, 618 F.2d 530, 536 (9th Cir. 1980); *see also United States v. Dominguez*, No. 12-cr-00834-EMC, Docket No. 138 at 8–10 (N.D. Cal. February 4, 2014) (collecting cases).  "Although . . . plea agreements are admissible on the issue of bias, they are not to be used as a basis for supporting the truthfulness of [a] witness' testimony."  *United States v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir. 1982).  "[A] reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain."  *United States v. Monroe*, 943 F.2d 1007, 1013 (9th Cir. 1991).  Still, when considering whether to admit evidence of bias or "evidence

---

[1] The prior order states, in part:
Here, the government contends that the plea agreements should be admitted because they "illustrate the witness's connections with the affiliated members." (Dkt. No. 609 at 3.)  As noted, a question may be legitimate where the "purpose is to support the reasonableness of the witness's claim to firsthand knowledge because of admitted participation in the very conduct which is relevant."  *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981).  Nevertheless, illustrating a witness's "connections with affiliated members" carries with it the possibility of transferring guilt from the former codefendant to the defendant on trial.  Thus, the Court cautions the government to tailor carefully its questioning regarding guilty pleas, such that they are used exclusively for proper purposes.  To the extent the motion seeks to ensure that "limitations will be placed on the government's ability to use guilty pleas as any part of the government's case-in-chief, except for permissible purposes," the motion is GRANTED.  Defendants may object at trial should the government seek to introduce such evidence impermissibly.  Moreover, either party may propose appropriate jury instructions to address such evidence, should it be introduced.
(Docket No. 687 at 11–12.)

United States District Court
Northern District of California

offered to rehabilitate a witness who has been impeached for bias," *Roberts*, 618 F.2d at 536, the Court "must weigh the probative value of the evidence against its prejudicial impact and against the possibility the jury will use the evidence improperly," *id.*

Third, the Court **DENIES WITHOUT PREJUDICE** the motions as premature in their requests relating to jury instructions.  Regarding jury instructions, the *Brooklier* court noted approvingly that "whenever the plea agreement was mentioned during the trial, the court cautioned the jury that the agreement requiring the witness to testify truthfully did not mean that the testimony was in fact truthful.  The court also told the jury that the government could not vouch for the truth of the testimony and that the jurors were the sole and exclusive judges of the credibility of all witnesses." *Brooklier*, 685 F.2d at 1218–19.  *Cf. United States v. Halbert*, 640 F.2d 1000, 1006 (9th Cir. 1981) ("The most effective practice would be to instruct the jury [regarding the use of a guilty plea] when the evidence of the plea is admitted, and again in final instructions.").  The parties shall file proposed instructions per paragraph 6, *supra*.

To ensure that the proper balance is struck, the government is **ORDERED** to address the issue of the specific nature and scope of any use of any plea agreement no later than the business day preceding the testimony at issue.

### 6. **Docket No. 836: Motion to Prohibit Any Law Enforcement Officer, Including Proposed Experts, to Testify about the Truthfulness of Statements Given By a Source, Witness, or Informant**

In this motion, H. Cervantes seeks to exclude testimony from law enforcement witnesses that would tend to show that another individual, regardless of that individual's affiliation with law enforcement, is credible, "bolstering the credibility of a source, witness, cooperator, informant, or other law enforcement officer."  (Docket No. 836 at 2–4 (citing *United States v. Sanchez-Lima*, 161 F.3d 545 (9th Cir. 1998).)   H. Cervantes cites examples in discovery materials in which officers express opinions about witnesses' truthfulness.  The government argues that the cases H. Cervantes cites "preclude witnesses from offering their opinions about the truthfulness of other witnesses who previously testified at the same trial."  (Docket No. 858 at 2.)  The government states that it will not seek such opinions from witnesses in this case.  (*Id.*)  The government,

United States District Court
Northern District of California

7

however, distinguishes asking an expert to explain "why he believed a source or why he did not believe another." (*Id.*)

**Ruling:**  The Court RESERVES ruling on this issue.  The Court confirms recent receipt of the government's updated gang expert report delineating what opinions the government will seek to admit as expert testimony, as ordered at the hearing, and will address this motion in that context.

> 7. **Docket No. 837: Motion to Exclude Testimony of Cooperating Witnesses Who Have Received Payment and Other Consideration; in the alternative, Motion for Specific Instruction about the Testimony of Such**

H. Cervantes moves for the Court to preclude any witness who has received consideration in exchange for cooperation or testimony from testifying and to "exclude the testimony of witnesses who have received multiple forms of consideration from the Government, including payments." (Docket No. 837 at 9.)  In the alternative, H. Cervantes moves for the Court to find Equal Protection, Due Process, and Eighth Amendment violations because of the imbalance by which the government, but not the defense, can offer such consideration. (*See id.*)  H. Cervantes also alleges that such payments constitute violations of 18 U.S.C. § 201(c)(2). (*Id.* at 2.)  And H. Cervantes notes that the government has provided to him information about payments to witnesses, and argues that the "the consideration and assistance 'packages' provided to the sensitive witnesses expose the systemic imbalance between the prosecution and defense in certain sorts of cases." (*Id.* at 6.)

**Ruling:**  The motion is DENIED, as inconsistent with Ninth Circuit law.  *See United States v. Ihnatenko*, 482 F.3d 1097, 1100 (9th Cir. 2007); *United States v. Feng*, 277 F.3d 1151, 1153–54 (9th Cir. 2002); *United States v. Flores*, 172 F.3d 695, 699–700 (9th Cir. 1999); *United States v. Smith*, 196 F. 3d 1034, 1039–40 (9th Cir. 1999); Docket No. 862 at 2.  With regard to jury instructions, the motion is DENIED WITHOUT PREJUDICE, as premature.

> 8. **Docket No. 838: Motion to Exclude Evidence of Noticed Rule 404(b) Evidence and Motion to Exclude Such Evidence under Rule 404(b) and Rule 403**

H. Cervantes seeks to exclude multiple forms of evidence under Rule 404(b), Rule 401, and Rule 403.  The motion addresses evidence of two incidents involving H. Cervantes and seven

8

incidents not involving H. Cervantes.

**Ruling:**  The Court **RESERVES** ruling on this motion, as discussed at the hearing.  The Court **ORDERS** the government to file its articulation of the conspiracies charged in this case by January 29, 2016.  H. Cervantes and the government shall meet and confer regarding this motion.  The parties shall be prepared to discuss this motion at the next hearing.  The Court **AUTHORIZES** the submission of documents referenced in the motion in the form of chambers courtesy copies.

### 9.  Docket No. 840: Motion to Exclude Specified Evidence as Not Relevant, as Hearsay, or under Rule 403

H. Cervantes identifies fourteen categories of evidence for exclusion, or for jury instructions on limited uses of such evidence.  (*See* Docket No. 840 at 1–4.)

**Ruling:**  The Court **RESERVES** ruling on this motion, as discussed at the hearing.  The parties shall meet and confer regarding this motion.  The parties shall be prepared to address any unresolved dispute at the next hearing.  The Court **AUTHORIZES** the submission of documents referenced in the motion in the form of chambers courtesy copies.

### 10.  Docket Nos. 841 and 848: Motion regarding Defenses Permitted Under RICO, RICO Conspiracy, and VICAR, and Government's Motion to Preclude Diminished Capacity Defense

H. Cervantes seeks "to flag issues that are likely to be discussed at some length during the course of the trial of this case."  (Docket No. 841 at 5.)  He seeks for the Court to set out "a decision making structure which will permit the defense to develop defenses that are permitted given the nature of the charges in this case."  (*Id.* at 1.)  The government refers to its Motion No. 1 (Docket No. 848) and argues that H. Cervantes must "make a pretrial proffer setting forth a prima facie case for any defense he intends to use at trial."  (*See* Docket No. 852 at 1–2.)  The government, second, does not dispute specifically that the Ninth Circuit recognizes defenses of voluntary intoxication and diminished capacity, but argues that H. Cervantes has not yet provided sufficient factual proffers to present those defenses in this case.  (*Id.* at 2.)  In addition, the government raises discovery issues, and states that H. Cervantes has not clarified whether he will argue a single "voluntary intoxication and diminished capacity" defense or two separate defenses.  (*See* Docket No. 848 at 1–3.)

**Ruling:**  As discussed at the hearing, the Court **RESERVES** ruling on these motions and **SETS** the following schedule.  The government has filed a supplemental brief to its Motion No. 1 and H. Cervantes's Motion No. 12.  H. Cervantes has responded to the government's filing regarding whether the Court should preclude the defenses as a matter of law and regarding the process for the Court to follow regarding the defenses to the extent he disagrees with the government.  In addition, H. Cervantes has filed courtesy copies in chambers of relevant expert reports.  The parties shall meet and confer regarding disclosure of information potentially relevant to the defense under a heightened protective order.  The parties shall email the Court by January 29, 2016 regarding the result of that meet-and-confer.

### 11. **Docket No. 842: Motion to Preclude Impeachment by Any Criminal Conviction or Criminal Case under Rule 609**

H. Cervantes seeks to preclude, in case he elects to testify, admission of evidence of prior felony convictions, including a 2004 racketeering conspiracy conviction, a 1986 petty theft conviction, a 1986 burglary conviction, and a 1988 assault conviction.  H. Cervantes explains that the Court has "already ruled that it is limiting collateral use of information connected with Mr. Cervantes's 2004 conviction, and it stands to reason that the Court will use a similar calculus in excluding as impeachment his conviction from 2004."  (Docket No. 842 at 2.)  The government seeks for the Court to defer ruling on the motion "until the Court has heard the defendant's testimony on direct, in the event the defendant elects to testify."  (Docket No. 865 at 2.)  The government also notes that H. Cervantes was released from confinement in relation to the conviction on April 16, 2010, within ten years of the trial date in this case, and, thus, warranting application of Fed. R. Evid. 609(a)(1)(b).  (Docket No. 865 at 1–2.)

"When impeaching the testimony of a criminal defendant, Rule 609(a)(1) provides in pertinent part, 'evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.'"  *United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000).  Five factors "guide the . . . decision whether to admit evidence under Rule 609(a)(1): 1. the impeachment value of the prior crime[;] 2. the point in

time of the conviction and the witness' subsequent history[;] 3. the similarity between the past crime and the charged crime[;] 4. the importance of the defendant's testimony[;] 5. the centrality of the credibility." *Id.*  "The correct procedure is for a district judge to ensure that the record reflects a consideration of the five [factors to be applied], as well as a weighing of the probative value of the conviction being offered against its prejudicial effect." *Id.*  Rule 609(b), however, applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."   For such convictions, the "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

**Ruling:**  The Court **GRANTS** the motion as unopposed as to the 1986 petty theft conviction.  By one week after the date on which this order issues, the government shall file a notice clarifying its position with respect to the 1986 burglary and 1988 assault matters.  The Court **RESERVES** ruling on the admissibility of the 2004 conviction.  H. Cervantes does not dispute that he was convicted in 2004 under 18 U.S.C. § 1962(c) & (d), sentenced to one hundred twenty months imprisonment, and completed that sentence on April 16, 2010.  (*See* Docket No. 865 at 1–2.)  Thus, Rule 609(a)(1) would apply to that conviction.

### 12. **Docket No. 843: Motion to Limit Cross-Examination of H. Cervantes to the Scope of his Direct Examination**

H. Cervantes uses this motion to seek for the Court to "rule in advance that it will impose the strict limitations contemplated by the United States Supreme Court on the breadth of cross-examination to which Mr. Cervantes can be exposed."  (Docket No. 843 at 1.)

**Ruling:** This motion is **DENIED WITHOUT PREJUDICE** as premature.   The Court recognizes that if a defendant in a criminal case "takes the stand and testifies in his own defense his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination." *Brown v. United States*, 356 U.S. 148, 154–55 (1958).  Also, "[i]t is well founded that when a defendant waives his Fifth

United States District Court
Northern District of California

United States District Court
Northern District of California

Amendment right against self-incrimination by voluntarily providing testimony in his own defense, he does so only on the matters raised by his own testimony on direct examination." *United States v. Williams*, 731 F. Supp. 2d 1012, 1018 (D. Haw. 2010). "The witness . . . determines the area of disclosure and therefore of inquiry." *Brown*, 356 U.S. at 155; *see also Williams*, 731 F. Supp. 2d at 1019 (noting lack of cited case law "holding that a defendant's decision to raise a mental status defense opens the door to allow the prosecution to assert diagnoses or defects other than to rebut those specifically placed at issue by the defendant"). To the extent that further clarity is requested, H. Cervantes shall file under seal a proffer of the scope of the testimony to be offered and the categories of concern regarding the scope of cross-examination. Otherwise, the Court is left with being diligent during the course of the cross-examination to making a decision as the examination proceeds.

13. **Docket No. 844: Motion for Order that Government Provide Advance Notice of Witnesses to be Called and Incidents to be Covered During a Trial Week**

H. Cervantes seeks "weekly witness lists, itemizing the witnesses contemplated on a day by day basis for the following week." (Docket No. 844 at 2.) "The government has agreed with the defendant to provide a list of each week[']s witnesses on the preceding Friday by email, however the parties understand that the list may be subject to change for a number of reasons, including the unavailability of a witness[]." (Docket No. 866 at 1–2.)

**Ruling:** The Court **GRANTS** the motion, and **ORDERS** the parties to submit their agreement in writing no later than February 3, 2016.

14. **Docket No. 876: Motion regarding Additional Objections, Motions *in limine*, And Case Related Motions Based On Discovery Related Delays**

H. Cervantes "seeks to expand the scope of the Court's permission to file motions that are warranted based on information that is newly disclosed, or grounds for motions that could only reasonably be discovered based on late-arriving discovery." (Docket No. 876 at 2.)

**Ruling:** As discussed at the hearing, this motion is **GRANTED IN PART.** Given the overbroad nature of the briefing thus far, and the reality that additional issues may require briefing, the Court may allow such filings. However, the parties are not authorized to file additional motions without

the Court's authorization unless previously set forth by a scheduling order.

### 15. **Docket No. 845: Motion to Exclude Any Reference to Stabbing Attributed to Skip Villanueva, Either as Substantive Evidence of Guilt or as Evidence of Expertise**

H. Cervantes seeks to exclude evidence of a stabbing that occurred in the mid-2000s and did not involve the defendants in this case, arguing that it is irrelevant under Rules 401/402 or should be excluded under Rule 403. (*See* Docket No. 845 at 2.) The government responds that one alleged Nuestra Familia member stabbing another alleged Nuestra Familia member for violating Nuestra Familia rules is relevant to proving the agreement alleged in Counts One and Two. (Docket No. 868 at 2.) The government also argues that a limiting instruction could address any unfair prejudice. (*See id.* at 4.)

**Ruling:** As discussed at the hearing, the Court **RESERVES** ruling on this motion, pending the government's filing of its articulation of the conspiracies alleged in this case.

### 16. **Docket No. 846: Motion to Exclude Jail Writings Concerning Alleged Nuestra Familia History, Constitution, Notes, Messages, Rosters As Inadmissible or As Subject to Exclusion Under Fed. R. Evid. 403**

H. Cervantes identifies multiple types of statements and argues that they "are: not relevant, hearsay, not conspirator statements amounting to non-hearsay, and otherwise not admissible given the defense's objection that these often unattributed and undated statements will substantially mislead jurors about their significance within the meaning of F.R.E. 403." (Docket No. 846 at 2 (footnote omitted).) The government responds by arguing that the statement types "are relevant and admissible under the hearsay rule because such writings fall into one or more of the following categories: (i) non-hearsay statements of co-conspirators, (ii) adopted admissions, (iii) admissions of a party opponent, (iv) non-assertions, (v) records kept in the regular course of business, or (vi) statements not offered to prove the truth of the matter asserted." (Docket No. 869 at 3.)

**Ruling:** As discussed at the hearing, the Court **RESERVES** ruling on this motion. The Court reiterates that the government must comply with Pretrial Order No. 6 regarding its identification of exhibits, and the order above that the government file its articulation of the conspiracies alleged in this case.

13

17. **Docket No. 847:  Motion To Foreclose Mention of Arrangements, Requests, Joint Meetings, or Other Mechanisms Used to Facilitate Case Preparation and Discovery Review under the Joint Defense Privilege**

H. Cervantes seeks that the Court order that no party reference at trial "the periodic requests for attorney-client meetings, and for a common housing situation to permit case preparation . . . ."  (Docket No. 847 at 4.)  The government seeks for the Court to reserve ruling on this issue until during trial, and "opposes any blanket pretrial decision to foreclose any reference to the arrangements for the joint defense preparation."  (Docket No. 870 at 1.)

**Ruling:**  The motion is **GRANTED** as unopposed regarding any attorney-client communications, and the Court **ORDERS** that the parties not make any reference that might bear on the arrangements the Court has made to facilitate the defendants' review of the evidence in this case without seeking advance approval from the Court.  In light of the government's allegations that the conspiracy continues even with the incarceration, a blanket prohibition would not be appropriate.  However, the Court is aware that the manner in which the evidence may be raised may warrant further discussion.

C. **Larez's Separate Motions**

1. **Docket No. 825: Motion to Exclude Evidence of Lock-up Beating**

Larez moves to exclude evidence of an incident that occurred on January 15, 2014 in a U.S. Marshal's lock-up cell, relying on Rule 404(b), and argues that the evidence also should be excluded under Rule 403 because it would be cumulative, if relevant, and unfairly prejudicial. (*See* Docket No. 825 at 2.)  The government responds that Rule 404(b) is inapplicable because Count One charges a racketeering conspiracy in violation of 18 U.S.C. § 1962(d), and that the evidence constitutes direct proof of that offense.  (*See* Docket No. 890 at 2–3.)  In addition, the government asserts that the evidence is relevant because it relates to an attack on an individual for dropping out of the Norteño gang.  (*See id.* at 2–4.)  At the hearing, Larez read from the U.S. Marshal's report about the incident that the victim in the incident requested to be placed in the same cell as Larez before the incident.  Pursuant to the Court's instruction, Larez submitted the U.S. Marshal's incident report (NF-023914 to NF-23919), which the Court has considered.

14

**Ruling:**  Even if the government is correct regarding its overall theory as to Rule 404(b) evidence in racketeering cases, no evidentiary basis has been proffered for the evidence at issue. Neither "Anthony Ocampo," who was in the cell block with Larez, nor Deputy U.S. Marshall Boyden, with whom Larez discussed the issue and presumably admitted the motive for his conduct, is on the Witness List, and, therefore, neither can testify as to the events which occurred. Accordingly, the motion is **GRANTED**.

### 2.   **Docket No. 826: Motion to Prevent Jury Prejudice regarding Shackling and Handling of Defendants**

Larez seeks "for the Court to order further assurances to prevent prejudice to defendant Larez, namely to assure that the jury will neither see nor hear defendants' shackles, and order the Marshals to not hover around or otherwise pay undue attention to defendants so as to prevent the jury from forming the impression that the defendants are dangerous."  (Docket No. 826 at 3.) "The government understands this matter to have been previously litigated and resolved and defers to the Court on the motion."  (Docket No. 874 at 1–2.)

**Ruling:**  The motion is **DENIED AS MOOT**.  The Court reiterates that it will take precautions to prevent any prejudice to the defendants as they and U.S. Marshals appear before the jury.

### 3.   **Docket No. 827: Motion to Exclude Evidence of Red Bluff Assault**

Larez seeks to exclude evidence of an assault and stabbing allegedly committed in July 2011 by a codefendant and former codefendant.  Larez argues that the incident is not charged in the Third Superseding Indictment or inextricably intertwined with the offenses charged therein for Rule 404(b) purposes, and that the evidence would be cumulative of other evidence and unfairly show bad character or propensity for Rule 403 purposes, given that Larez is not alleged to have perpetrated the assault.  (Docket No. 827 at 2–3.)  The government responds that it intends to introduce evidence of the incident to prove Count Three, along with evidence that Larez played a role in the incident.  (Docket No. 889 at 2–3.)

**Ruling:**  As stated at the hearing, the motion is **TENTATIVELY DENIED.**  The Court will address it more fully once the government files its articulation of the conspiracies charged in this case. Separately, and with respect to Larez's Rule 403 objection to exclude "all evidence of a stabbing

which occurred in Red Bluff in July 11," (Docket No. 827 at 1), the motion is **DENIED WITHOUT PREJUDICE** as premature.  Larez does not identify the evidence he seeks to exclude under Rule 403, including photographs, such that the Court could weigh probative value and unfair prejudice. *See United States v. McElmurry*, 776 F.3d 1061, 1067 (9th Cir. 2015) ("A district court cannot properly exercise its discretion to decide whether the probative value of evidence objected to under Rule 403 outweighs the risk of unfair prejudice without examining the evidence.").  As with the motion regarding "gruesome photographs," the Court is not in a position to rule on the request.

D. **Government's Separate Motions**

1. **Docket No. 849: Motion regarding Jury Questionnaire**

**Ruling:**  The Court **RESERVES** ruling on this motion.  As set out in Pretrial Order No. 6, the Court will address jury questionnaire issues in connection with the next hearing.  (*See* Docket No. 797 at 4.)

2. **Docket No. 851: Motion for Pinkerton Instruction**

**Ruling:**  This motion is **DENIED WITHOUT PREJUDICE**, as premature at this time.  The Court **ORDERS** the parties to provide proposed instructions in accordance with paragraph 6, *supra*.

II.    **Docket No. 819: A. Cervantes's Motion to Strike Surplusage from the Indictment**

As discussed at the hearing, the Court **ORDERS** counsel for A. Cervantes to read the briefs, transcript, and order relating to his codefendants' motions to strike surplusage from the prior indictment before the next hearing.

III.    **Motions to Sever**

H. Cervantes moves for severance from A. Cervantes or, in the alternative, rulings on the admissibility of any oral or written statements of A. Cervantes, or related evidence in any joint trial (Docket No. 815).[2]  Larez joins in H. Cervantes's motion and makes additional arguments in seeking severance (Docket No. 820).  The Court previously denied motions for severance filed by H. Cervantes and Larez, but issued that order before the government filed the Third Superseding

---

[2] J. Cervantes joins in this motion (Docket No. 818).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Indictment and joined A. Cervantes.  (*See* Docket No. 687 at 28–34.)  After that indictment issued,

2  the Court denied A. Cervantes's motion for severance, but addressed only joinder from the

3  perspective of A. Cervantes at that time.  (*See* Docket No. 781.)  In November, the defense

4  identified the potential for motions related to *Bruton*[3] issues that might arise as a result of the

5  joinder of A. Cervantes, and the Court authorized the parties to file motions, if the issue

6  materialized and was therefore appropriate.  (*See* Docket No. 796 at 2.)

7       Having considered the papers submitted and the record in this case, the Court

8  **DENIES** both H. Cervantes (Docket No. 815) and Larez's (Docket No. 820) motions for

9  severance from A. Cervantes.  The Court **DENIES WITHOUT PREJUDICE** H. Cervantes's

10  motion to the extent it seeks Rule 104 relevancy determinations regarding the admissibility

11  of evidence linked to A. Cervantes.  As H. Cervantes acknowledges, the motion is

12  duplicative of a motion *in limine*, Docket No. 846, which the Court addresses above and on

13  which the Court reserves ruling.

14       A.     **Legal Standard**

15       The Court previously addressed the applicable standard.  Thus: under Rule 8(b), "[t]he

16  indictment or information may charge 2 or more defendants if they are alleged to have participated

17  in the same act or transaction, or in the same series of acts or transactions, constituting an offense

18  or offenses."  Fed. R. Cr. P. 8(b).  When defendants are indicted together, the federal system

19  evinces a preference for joint trials.  *See Zafiro v. United States*, 506 U.S. 534, 537 (1993).

20  Nonetheless, despite the propriety of joinder under Rule 8(b), a court may order severance if it

21  finds sufficient prejudice exists to one or more of the defendants.  Thus, Rule 14 provides:

22                If the joinder of . . . defendants . . . for trial appears to prejudice a defendant or the
              government, the court may order separate trials of counts, sever the defendants'

23                trials, or provide any other relief that justice requires.

24  Fed. R. Cr. P. 14(a).  Only where joinder would create "a serious risk that a joint trial would

25  compromise a specific trial right of one of the defendants, or prevent the jury from making a

26  reliable judgment about guilt or innocence" must the Court grant severance.  *Zafiro*, 506 U.S. at

27  _____

28       [3] *Bruton v. United States*, 391 U.S. 123 (1968).

539.  "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant."  *Id.*  Four factors are relevant in evaluating a request for severance of defendants:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) *modified*, 425 F.3d 1248 (9th Cir. 2005).  "The first two factors are the most important in this inquiry."  *Id.*

### B.    Analysis

#### 1.    H. Cervantes's Motion

By way of background, the Court notes that two statements allegedly made by A. Cervantes in 2002 to a Bureau of Prisons employee, John Feeney, fall outside the Court's limitation of this case to evidence and circumstances subsequent to September 27, 2004. (*See* Docket No. 687 at 16; Docket No. 781 at 10 n.11.)  At a hearing on December 4, 2015, the government stated that it would not seek to admit these two statements in its case-in-chief.  H. Cervantes seeks "clarification" regarding when the government may seek to admit the statements, given that the government reserved its right to introduce the statements outside its case-in-chief.  (*See* Docket No. 815, H. Cervantes's Memorandum at 2.)  The Court declines to rule on the hypothetical occurrence of the government seeking to violate this Court's prior order placing limitations on the evidence to be admitted.  If, hypothetically, A. Cervantes testified and made statements directly contrary to those at issue, use of the hypothetical evidence would be appropriate.

H. Cervantes next repeats the argument that his ability to testify effectively is diminished by the joinder of codefendants, including A. Cervantes.  This argument does not relate to *Bruton*.  The Court reiterates its ruling in denying H. Cervantes's prior motion to sever that the Court will consider H. Cervantes's proposals regarding limitation of the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    scope of direct and cross-examination as to Counts Five and Six and appropriate jury

2    instructions.  (*See* Docket No. 687 at 31–33.)

3           Although H. Cervantes admits that he does not argue a "traditional and clear

4    *Bruton* basis for severance," (H. Cervantes's Memorandum at 5),[4] he argues that "there is

5    prejudicial pour-over" (*id.*).  *See Zafiro*, 506 U.S. at 539.  In denying H. Cervantes's prior

6    motion for severance, the Court noted that, at that time, "no proffer ha[d] been made as to

7    all potential statements."  (Docket No. 687 at 32.)  The Court reasoned that this fact,

8    combined with the reasons justifying a joint trial, warranted denying that motion.  (*See id.*)

9    H. Cervantes now focuses on the joinder of A. Cervantes and the following types of

10   evidence that the government might seek to introduce:

11          written material allegedly obtained from Andrew Cervantes's cell, or constructive
           possession; writings and statements attributed to Andrew Cervantes allegedly
12          related to the overarching conspiracy charged in Count 1, some of which either pre-
           date the permitted conspiracy, or others of which post-date Henry Cervantes's
13          arrest in this matter which would not be admissible against Mr. Cervantes in a
           separate trial; statements allegedly made by Andrew Cervantes as reflected in
14          recorded phone calls and digests as well as "decoding" of phone calls, a number of
           which are not pertinent to any conspiracy involving the forenamed conspirators.
15
     (H. Cervantes's Memorandum at 7.)  H. Cervantes stresses that statements A. Cervantes
16
     allegedly made to Feeney, before the time period to which the Court has limited the
17
     evidence in this case would not be subject to cross-examination if admitted as admissions
18
     by A. Cervantes or as a basis for Feeney's proffered expert opinions.  Nor could H.
19
     Cervantes cross-examine either A. Cervantes or Larez regarding statements allegedly made
20
     between them that reference H. Cervantes.  (*See* H. Cervantes's Memorandum at 4–5.)
21
            H. Cervantes, however, seems to assume that all such evidence would be
22
     admissible against A. Cervantes and otherwise inadmissible against H. Cervantes.  Yet as
23
     with A. Cervantes's prior motion to sever, H. Cervantes has not sufficiently identified such
24
     evidence and for what reason it would not be admissible against H. Cervantes to warrant
25
     severance.  (*See* Docket No. 781 at 6.)  The Court continues to understand this case as
26

27          _____

28          [4] Still, the government's opposition addresses whether the statements allegedly made in
     2002 raise a *Bruton* issue.  (*See* Docket No. 886 at 3–6.)

United States District Court
Northern District of California

1    involving—and as requiring that the government meet its burden of proof regarding—an

2    overarching racketeering conspiracy allegation against the four remaining defendants, and

3    multiple distinct occurrences, cutting against finding a sufficient risk of disparity or

4    "prejudicial pour-over" at this stage.  *See* Docket No. 781 at 5; *United States v. Martinez*,

5    657 F.3d 811, 819–20 (9th Cir. 2011).  For instance, the government states that it will seek

6    to admit certain phone calls and letters associated with A. Cervantes under Federal Rule of

7    Evidence 801(d)(2)(E).  (*See* Docket No. 886 at 3, 6 n.2.)  Also, the Court has yet to rule

8    on the admissibility of each piece of (written or verbal) evidence attributed to A. Cervantes

9    or other defendants "to prove the existence of the enterprise [alleged]," (Docket No. 886 at

10   9), or the admissibility of proffered gang expert testimony, as discussed below with regard

11   to Larez's motion.  H. Cervantes has not identified a sufficient risk of prejudice, especially

12   in this context, to warrant severance by pointing to the totality of the evidence attributed to

13   A. Cervantes at this time.

14          H. Cervantes raises additional concerns none of which persuade.  He argues that the

15   government's introduction of "days of tape-playing testimony and interpretation of phone

16   calls" and "pages of prison writings" with which H. Cervantes was not involved would

17   prevent the Court from determining that "the jury may reasonably be expected to collate

18   and appraise the individual evidence against each defendant . . . [,]" *Fernandez*, 388 F.3d

19   at 1240.  (*See* H. Cervantes's Memorandum at 6–7.)  He contends that the government will

20   seek to admit statements attributed to A. Cervantes, but made after H. Cervantes was

21   incarcerated and, thus, irrelevant to H. Cervantes.  (*See id.* at 2.)  The Ninth Circuit has

22   "recognized that a great disparity in the amount of evidence introduced against joined

23   defendants may, in some cases, be grounds for severance."  *United States v. Douglass*, 780

24   F.2d 1472, 1479 (9th Cir. 1986); *see United States v. Diaz*, 2014 WL 1308601, at *4 (D.

25   Nev. 2014).  "In assessing the prejudicial effect of a joint trial, the primary consideration is

26   whether 'the jury can reasonably be expected to compartmentalize the evidence as it relates

27   to separate defendants, in view of its volume and the limited admissibility of some of the

28   evidence.'"  *Douglass*, 780 F.2d at 1479 (quoting *United States v. Escalante*, 637 F.2d

1197, 1201 (9th Cir. 1980)).  The Court recognizes that the risk of prejudice is "heightened" "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability," *Zafiro*, 506 U.S. at 539, but a court often may "cure" a risk of prejudice and ensure a fair trial of each defendant through alternatives to severance, including limiting instructions and the exclusion of evidence, *see id.* Accordingly, the Court remains confident that the nature of the charges and the evidence in this case are such that the jury will be able to compartmentalize the evidence introduced against each defendant.

As H. Cervantes notes, his argument implicates the Court's duty to instruct the jury diligently throughout trial regarding the limited purposes for which each piece of evidence may be considered.  *See Fernandez*, 388 F.3d at 1241.  The Court reiterates that it will instruct the jury in an appropriate manner.

Finally, the Court finds that the remaining *Fernandez* factors do not justify severance.  No defendant has shown that the nature of the evidence and legal concepts, although complex in that they involve RICO and VICAR, will push the case beyond the jurors' ability to understand this case and its task.  *See id.* at 1243–44.  And, as with the concern about prejudicial pour-over discussed above, the Court does not find that H. Cervantes has made a sufficiently concrete showing that joinder risks compromising a specific trial right or that the jury will not be able to decide guilt or innocence reliably.  *See id.* at 1244–46.

### 2.  **Larez's Motion**

Larez joins H. Cervantes's motion, but files a separate motion to focus on the government's August 17 expert disclosure relating to Feeney's interpretation of coded communications and intention of introducing at trial alleged communications relating to A. Cervantes that refer to Larez.  (*See* Docket No. 820.)  Larez includes as such communications materials allegedly obtained from A. Cervantes's cell, statements by A. Cervantes, and writings attributed to A. Cervantes.  First, in contrast to H. Cervantes, Larez argues that joinder of A. Cervantes presents *Bruton* issues to the extent the government seeks to introduce alleged

communications from A. Cervantes that implicate Larez, but that were not made in furtherance of the charged conspiracy.  Larez argues that "many" such communications produced to the defense are inadmissible as statements not in furtherance of the conspiracy.  (*See* Docket No. 820 at 2.) Yet Larez does not identify specific statements in his motion.  In line with the discussion above, the Court may exclude specific statements as necessary at trial, but finds insufficient basis to grant Larez's motion for severance.

Next, Larez argues that joinder presents *Bruton* and *Zafiro* issues because, for statements admitted at trial through proffered expert Feeney, Larez will not be able to cross-examine A. Cervantes as to what A. Cervantes meant by particular statements.  Larez cites the example in which Feeney will seek to testify that A. Cervantes used the name "Rosa" to mean Larez and that A. Cervantes instructed Larez to engage in criminal activity using innocuous, allegedly coded, words.  (*See* Docket No. 820 at 3.)  Larez does not identify other specific statements of concern. The Court notes that it has not yet ruled on the admissibility of Feeney's testimony as expert testimony.  However, one general rule is set forth in *United States v. Vera*, 770 F.3d 1232, 1237–39 (9th Cir. 2014) ("[A]n expert exceeds the bounds of permissible expert testimony and violates a defendant's Confrontation Clause rights when he 'is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation.'"  (quoting *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013)).

As a final matter, Larez does not argue that the statements of which he is concerned were testimonial or that *Bruton* should apply to non-testimonial statements.  *Cf. Landry v. Arnold*, No. 14-CV-03570-JST, 2015 WL 9311915, at *8 (N.D. Cal. 2015) ("After *Crawford*, a court must address the question of whether a statement is testimonial before it can proceed with a *Bruton* analysis.").  Even assuming that *Bruton* applies, Larez does not point to a statement that is "facially incriminating," *see Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  Whether Feeney properly could make inferential links for the jury is separate from the question of whether to grant Larez's motion for severance.  Thus, Larez's motion fails to make a sufficiently concrete showing to warrant severance.

22

IV.     **Conclusion**

This Order terminates Docket Nos. 815, 820, 824, 825, 826, 829, 834, 837, 843, 844, and 876.

**IT IS SO ORDERED.**

Dated: January 28, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**