IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. CR 12-792 YGR |
| Plaintiff, | **PRETRIAL ORDER NO. 8 REGARDING RULE 16 DISCOVERY AND TREATMENT OR EXCLUSION OF PROFFERED GANG EXPERT TESTIMONY** |
| v. | |
| **HENRY CERVANTES, ET AL.,** | |
| Defendants. | |

Pending are a series of motions relating to the government's proffered "gang expert" testimony from Anthony Garrow ("Garrow"), Dan Livingston ("Livingston"), and John Feeney ("Feeney"). Alberto Larez ("Larez") moves for discovery pursuant to Federal Rule of Criminal Procedure 16 and to limit or exclude the proffered testimony, and requests a *Daubert* hearing (Docket Nos. 659, 666).[1] Henry Cervantes ("H. Cervantes") moves for a finding that (1) the government's disclosures fail to meet Federal Rule of Criminal Procedure 16; and (2) admission of certain testimony would (i) violate Federal Rules of Evidence 702, 403, 704(b), and 404(b), and *Crawford v. Washington*, 541 U.S. 36 (2004); (ii) raise dual percipient and expert witness role issues; and (iii) invade the province of the jury (Docket No. 663).[2] In the alternative, H. Cervantes seeks an evidentiary hearing (Docket No. 663).

The Court previously granted the defendants' motions as to Rule 16 disclosures, ordered that the government revise its disclosures to identify what opinions it seeks to admit and the bases for each, and stayed briefing on the motions until further order from the Court. (Docket No. 680 at 3, 5.) After the government provided a second gang expert disclosure on August 17, 2015, the Court permitted the defendants to file supplemental briefing on their motions. H. Cervantes filed a

---

[1] H. Cervantes joins in Larez's motion and memorandum, Docket No. 673, as does Jaime Cervantes ("J. Cervantes"), Docket No. 672.

[2] Larez, Docket No. 671, and J. Cervantes, Docket No. 672, join in this motion.

notice of expansion of his prior motion and further objections. (Docket No. 730.) The government filed a consolidated opposition. (Docket No. 785.) H. Cervantes (Docket No. 793) and Larez (Docket No. 795) each filed a reply. The government later filed a "numbered list of proffered opinions of its gang experts." (Docket No. 894.)

Based on the submissions of the parties, oral argument, and Good Cause showing, the Court **GRANTS IN PART AND DENIES IN PART** the motions of H. Cervantes (Docket Nos. 663, 730) and Larez (Docket Nos. 659, 666). In light of the discussion below, the Court declines to order that a pretrial evidentiary hearing be held.

I. **Discussion**

A. **Rule 16 Disclosures**

The Court addressed the applicable standard in its prior order. Thus: Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure requires the government to give defendants a "written summary of any testimony" of an expert witness the government intends to introduce in its case-in-chief during trial under Federal Rules of Evidence 702, 703, or 705. The government's summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). A district court may order expert disclosures from the government that are "complete, comprehensive, accurate, and tailored to the issues on which the expert is expected to testify," and can also exercise its discretion to direct the government to "identify the documents or information that the expert reviewed in preparing his or her report . . . ." *United States v. W.R. Grace*, 526 F.3d 499, 503–16 (quotation marks omitted). As other courts have noted, the Advisory Committee Note to the 1993 Amendment of Rule 16 indicated "that the bases and reasons must be sufficient to allow counsel to frame a *Daubert* motion (or other motion in limine), to prepare for cross examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, 2010 WL 2347406, at *1 (N.D. Cal. 2010) (quotation marks omitted). "The comment also stated, however, that where a witness is so 'generic' and routine (such as a DEA laboratory chemist) that the testimony will be largely predictable, a shorthand summary of the witness's qualifications and testimony may be adequate." *Id.* Thus, Rule 16 requires that the government summarize each specific opinion to be offered

2

1 along with the basis for it. *Id.* at \*8. The Court reviews the disclosures as to each of the three
2 experts.

### i. **Garrow and Livingston**

4 The Court finds that the government's disclosures relating to Garrow and Livingston's
5 testimony about gang colors, gang symbols, gang terminology, means of communication, and
6 interstate commerce in relation to gangs suffice under Rule 16. The Court in separate sections
7 below excludes other types of proffered opinions on the basis of substantive concerns.

8 The government's disclosure as to Garrow revealed: Garrow spent "17 years of experience
9 investigating and monitoring the *Nuestra Familia*," including his duties (i) as a Bureau of Prisons
10 officer between 1998 and 2000, (ii) at USP Pollock from roughly 2004 through 2008, and (iii) as a
11 Supervisory Intelligence Officer in Washington, D.C. between 2008 and the present. (*See* 8/17/15
12 Disclosure at 2.) He participated on a team that monitored phone calls and mail associated with
13 certain *Nuestra Familia* members between 2010 and the date of Larez's arrest in this case. (*See*
14 *id.*) He has "conducted hundreds of interviews" with both "enemies of *Nuestra Familia*" and
15 members of *Nuestra Familia*, seen members' tattoos, and searched members' prison cells. (*See id.*)
16 In addition, Garrow links some proffered opinions to these interviews and the *Nuestra Familia*
17 Constitution. For instance, Garrow's disclosure states: "Based largely on its rules and hierarchy,
18 Mr. Garrow will also opine that . . . . In addition to his experience, Mr. Garrow bases his opinions
19 on interviews with members of *Nuestra Familia*, gang drop outs, and informants, as well as
20 specific events he has seen unfold." (*Id.* at 4.) And to the extent the disclosure refers to opinions
21 without express links to specific bases, e.g., when providing details about *Nuestra Familia* colors,
22 graffiti, and terminology, the Court understands such opinions to be based on this experience since
23 1998. (*See id.* at 4–5.) Thus, the Court finds that the new disclosure complies with the Court's
24 prior order by identifying at the outset of the disclosure Garrow's experiences in relation to colors,
25 symbols, terminology, and means of communication of gangs. (*See id.* at 4–5.)[3]

---

[3] H. Cervantes's reply states the government's disclosures now "[m]ay [s]uffice" to the extent they relate to opinions about coded communication, means of communication, and other types of permissible gang expert testimony. (*See* Docket No. 793 at 7.)

3

Similarly, the disclosure for Livingston's opinions about colors, symbols, terminology, means of communication, and interstate commerce in relation to gangs complies with the Court's prior order. The government's first disclosure stated: "The basis for Mr. Livingston's testimony comes from his training, experience and years of observing gang members, talking to current and former gang members, and learning about many of the facets of gang members' lives," and included a two-page "Summary Expertise" describing his police work related to *Nuestra Familia* and an investigation of *Nuestra Familia* "street regiments." The second disclosure again provides Livingston's experience investigating *Nuestra Familia* since 2004, which appears in the "Summary Expertise" document. (*See* 8/17/15 Disclosure at 5.) Although he does not expressly link his experience to his specific opinions of symbols, terminology, and colors, he does reference his experience and observations generally. (*See id.* at 7.) Regarding an opinion about drug sales and interstate commerce, he cites his prior investigations. (*See id.* at 6.) Accordingly, and separate from substantive concerns addressed below, the Court finds that the new disclosure complies with the Court's prior order by identifying Livingston's experiences relating to colors, symbols, terminology, means of communication, and interstate commerce in relation to gangs.

Separately, however, H. Cervantes argues that the government's disclosures are insufficient regarding testimony from Garrow about *Norteño* street gangs. (*See* Docket No. 793 at 7–8.) The Court agrees. Aside from noting his involvement in an investigation of Sheldon Villanueva, Garrow's disclosure does not describe his experience in relation to "*Norteño* street gangs," and, thus, is inadequate in relation to such opinions. By contrast, Livingston's disclosure indicates that he has investigated street gangs, including *Nuestra Familia* "street regiments." (*See* Livingston "Summary Expertise" at 1.)

In sum, the Court finds that Garrow and Livingston's disclosures regarding gang colors, gang symbols, gang terminology, means of communication, and interstate commerce in relation to gangs meet Rule 16's requirements, with the exception of Garrow's in relation to *Norteño* street gangs and subject to the substantive issues the Court addresses below.

ii. **Feeney**

H. Cervantes and Larez object to the government's Rule 16(a)(1)(G) disclosures regarding Feeney's opinions about coding. The Court finds that the government's updated disclosure suffices for Rule 16, and complies with its prior order. (*See* Docket No. 680 at 2–3.)

Feeney bases his translations and interpretations on his responsibilities at the Bureau of Prisons for eight years, including those requiring that he monitor telephone and written communications among alleged members of *Nuestra Familia*. (*See* 8/17/15 Disclosure at 7.) In its second disclosure, the government has provided tables containing dates and times of calls, specific words or phrases in code form, Feeney's translations, and the bases for many of Feeney's translations. In addition, the government provided call logs with statements made during calls and explanatory statements from Feeney. As of August 17, 2015, the government had transcribed in this format "approximately one-third of the calls," and indicated that it would continue to provide transcriptions as it completed them. (8/17/15 Disclosure at 8.)

Larez challenges the bases that include Feeney's experience or "hundreds of hours of listening" as too general or unexplained. (*See* Docket No. 795 at 4–6.) Similarly, H. Cervantes challenges the specificity with which Feeney describes his process for arriving at certain translations and that Feeney infers meaning without acknowledging that some meanings and codes change over time. (*See* Docket No. 730 at 4–5.) H. Cervantes also asserts that Feeney's reference to finding "decoding keys" in Andrew Cervantes's cell is unexplained. (*See id.* at 6–7.)

The Court previously ordered that the government supplement its disclosures to identify each proffered opinion and its particular bases, citing examples from *Cerna*, 2010 WL 2347406, and *United States v. Flores*, No. 12-cr-119, Docket No. 1085. (*See* Docket No. 680.) The government has done so in a manner that suffices for the defendants to prepare relevant motions and for cross-examination, and to allow for a potential rebuttal expert to address the proffered testimony. *See Cerna*, 2010 WL 2347406, at *1. Accordingly, the reiteration of Rule 16 objections is overruled, and the Court **DENIES** the motions as to Rule 16.

B. **Categories of "Gang Expert" Testimony and Admissibility Thereof**

"In federal courts, the admission of expert testimony is governed by Federal Rule of Evidence 702, as elucidated by the Supreme Court in *Daubert*." *Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 432 (9th Cir. 2012). Federal Rule of Evidence 702 allows expert testimony only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 permits experts to testify if their testimony is: (1) "based on sufficient facts or data," (2) "the product of reliable principles and methods," and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.* In determining whether an expert's testimony meets the standards of Rule 702, the court acts as a "gatekeep[er]" that "ensur[es] that [the] expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148–49 (1999). In addition, expert testimony that is "otherwise admissible may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994) (citing *Daubert*, 509 U.S. at 595).

Here, the government essentially proffers four categories of "gang expert" testimony, in summary: (i) gang symbols and means of communication, (ii) gang coding, (iii) *Nuestra Familia* history, and (iv) *Nuestra Familia* structure, rules, and operations. The Court addresses each, bearing in mind the expert testimony rubric. In *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), the Ninth Circuit explained how to assess the admissibility of gang expert opinion testimony in the context of testimony to impeach a witness:[4] "The *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or

---

[4] There, "the 'gang' evidence was not proffered to prove a substantive element of a crime . . . [,]" but rather for "impeachment for bias or coercion, not as proof of intent, or of the facilitation, advice, aid, promotion, encouragement or instigation needed to establish aiding and abetting." *Id.* at 1172.

theory behind it." *Id.* at 1169 (footnote omitted). "[A]dmissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under [Rule] 104(a)[:]" namely, whether (i) the opinion "is based on scientific, technical, or other specialized knowledge;" (ii) the opinion "would assist the trier of fact in understanding the evidence or determining a fact in issue;" (iii) the expert "has appropriate qualifications . . . ;" (iv) the expert's testimony "is relevant and reliable;" (v) the expert's "methodology or technique . . . 'fits' the conclusions;" and (vi) Rule 403 requires exclusion. *Id.* at 1168.

> i. **Category 1: Opinions on gang colors, gang symbols, gang terminology, means of communication, and interstate commerce in relation to gangs**

"[J]ust as an anthropologist might be equipped by education and fieldwork to testify to the cultural mores of a particular social group, law enforcement officers may be equipped by experience and training to speak to the operation, symbols, jargon, and internal structure of criminal organizations." *United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008) (citation omitted). "Yet despite the utility of, and need for, expertise of this sort, its use must be limited to those issues where sociological knowledge is appropriate." *United States v. Cazares*, 788 F.3d 956, 977–78 (9th Cir. 2015) (quoting *Mejia*, 545 F.3d at 190); *see United States v. Garcia*, 793 F.3d 1194, 1213 (10th Cir. 2015). Also, "the Advisory Committee Notes [to Rule 702] refer to the traditional common law rule that expert testimony is called for when the 'untrained layman' would be unable intelligently to determine 'the particular issue' in the absence of guidance from an expert." *Mejia*, 545 F.3d at 189 (quoting Fed. R. Evid. 702 Advisory Committee Note).

Here, permissible opinions of this sort in the government's numbered gang expert report are: Numbers 1, the second sentence of 3, 11, 31, 32, 36 (to the extent the opinion matches Number 37, i.e., excluding the phrase "refers to members of the gangs associated with the Mexican Mafia"), 37, 50 (to the extent it makes no reference to *Nuestra Familia*), 51–54, 56–60, 78, 83–85, and 90 (to the extent it makes no reference to *Nuestra Familia*).[5] Opinions about the meaning of different

---

[5] As noted above, to the extent Garrow would seek to provide these types of opinions regarding *Norteño* street gangs, the government fails to link such opinions to a qualification relating to these gangs.

7

symbols associated with gang membership and the general means of communication among gang members could assist the factfinder in understanding the organization of gangs generally, and appear to stem from a synthesis of information from each officer's training and investigation experience. *See Cazares*, 788 F.3d at 977–78; *Mejia*, 545 F.3d at 190–91. Similarly, Opinion Number 11 about the California prison system appears based on Garrow's specialized knowledge and experience as a Department of Corrections and Rehabilitation officer, and could assist the jury in understanding relevant California prison housing arrangements in relation to gangs. Finally, Opinion Number 78, regarding the potential for drug sales to impact interstate commerce (on the basis of Livingston's prior investigations) is similar to testimony regarding certain facts about firearms in relation to interstate commerce. *See United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991), *as amended* (Oct. 1, 1991) ("[A]lthough expert testimony may not be *necessary* to establish the location of the manufacturer, it is permissible as part of an expert's testimony on the ultimate issue—whether the gun travelled in interstate commerce."). Thus the motions to exclude are **DENIED** as to opinions in this category.

The Court, however, **GRANTS** the motions to the extent they seek to limit language in the government's disclosures about "violently attacking" and "kill[ing]" others as unfairly prejudicial. In *United States v. Martinez*, 2015 WL 269794 (N.D. Cal. 2015), Judge Alsup limited a gang expert's testimony to "gangs' activities generally, but" did not permit the expert to "use words like 'violent' or 'violent street gang.'" *Id.* at *2. "That phrase is too argumentative and the violence should be proven up with direct evidence, not police opinion." *Id.* The Court agrees. The government is ordered to instruct its experts not to use such characterizations.

        ii.  **Category 2: Opinions on "Coding"**

Opinions regarding the meaning of coded words, as a general matter, may be admissible under Rule 702. "Drug jargon is well established as an appropriate subject for expert testimony and investigating officers may testify as drug jargon experts who interpret the meaning of code words used in recorded calls." *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014). "Officers may testify about their interpretations of 'commonly used drug jargon' based solely on their training and experience." *Id.* (quoting *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir.

8

1979)); *see also Bailey*, 607 F.2d at 240 ("The agent's testimony was therefore restricted to interpretation of commonly used drug jargon, and did not constitute an interpretation of the meaning of the telephone conversations themselves."). "To interpret the meaning of coded language encountered for the first time in the specific investigation at issue, however, an officer's qualifications, including his experience with narcotics investigations and intercepted communications, are relevant but not alone sufficient to satisfy Federal Rule of Evidence 702." *Id.* "Rather, Rule 702 requires district courts to assure that an expert's *methods* for interpreting the new terminology are both reliable and adequately explained." *Id.* "'[V]ague and generalized' explanations are not sufficient; rather, the officer must explain how he *applies* his 'knowledge to interpret particular words and phrases used in particular conversations.'" *Id.* (quoting *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)); *see also Hermanek*, 289 F.3d at 1094 ("Broderick failed to explain in any detail the knowledge, investigatory facts and evidence he was drawing from."). In *United States v. Decoud*, 456 F.3d 996 (9th Cir. 2006), the court affirmed the admission of expert testimony regarding coded terms the expert had not heard before that case; the expert had explained how he "based his interpretation of such words on three factors: (1) his training and experience; (2) each word in the context of the specific phone call; and (3) each phone call in the context of other phone calls that he understood." *Id.* at 1013; *see also id.* at 1014 n.6 ("For example, the expert gave a lengthy explanation of how he interpreted 'diznerty' based on his understanding of a common speaking style . . . [that adds 'e' or 'ez' to words.]").

Notwithstanding the foregoing, the Ninth Circuit has recognized that a witness sometimes shifts from expert to lay witness testimony when the witness "ceased to apply his specialized knowledge of drug jargon and the drug trade and began to interpret ambiguous statements based on his general knowledge of the investigation." *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007); *see also United States v. Gadson*, 763 F.3d 1189, 1210 (9th Cir. 2014) (describing testimony about a nickname as "investigation-specific opinion testimony . . ."); *Freeman*, 498 F.3d at 903 (noting that "a case agent testifying as an expert may lead to juror confusion because '[s]ome jurors will find it difficult to discern whether the witness is relying properly on his general experience and reliable methodology, or improperly on what he has learned of the case'" (citation

9

1  omitted)). A witness risks no longer testifying as an expert in coding when "testif[ying] about the
2  meaning of conversations in general, beyond the interpretation of code words." *Mejia*, 545 F.3d at
3  192 (quoting *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2002)). The risk might arise
4  when "'interpret[ing] ambiguous slang terms' based on knowledge gained through involvement in
5  the case, rather than by reference to the 'fixed meaning' of those terms 'either within the narcotics
6  world or within this particular conspiracy.'" *Mejia*, 545 F.3d at 193 (quoting *Duakgjini*, 326 F.3d
7  at 55).

8  That said, "a law enforcement officer involved in the investigation may offer lay opinions
9  about the meaning of intercepted phone calls, but those opinions are subject to the requirements of
10 Federal Rule of Evidence 701." *Vera*, 770 F.3d at 1242. Such testimony must be "'(a) rationally
11 based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to
12 determining a fact in issue; and (c) not based on scientific, technical, or other specialized
13 knowledge within the scope of Rule 702.'" *Id.* (quoting Fed. R. Evid. 701). "Accordingly, an
14 officer may not testify based on speculation, rely on hearsay, or interpret unambiguous, clear
15 statements. But he may interpret 'ambiguous conversations based upon his direct knowledge of the
16 investigation,' including his 'direct perception of several hours of intercepted conversations . . . and
17 other facts he learned during the investigation.'" *Id.* at 1242–43 (citations omitted).

18 Here, the government has provided information from each phone call, including coded
19 words, Feeney's interpretations, and "Additional Bas[e]s if available or as necessary." (*See*
20 *generally* 8/17/15 Disclosure, Ex. A.) The government did not address Feeney's specific proposed
21 opinions in its numbered expert opinion filing. (*See* Docket No. 894 at 10, No. 91 ("Mr. Feeney
22 will opine on the translation of coded words . . . as indicated in the United States' expert
23 disclosures.'").) H. Cervantes and Larez object generally to his methodology, although they cite
24 some specific examples of repeated bases, e.g., the repetition of "'[b]ased on 1,000s of hours of
25 phone calls monitored, as well as mail reviewed,'" (*see* Docket No. 795 at 4–5). The Court
26 declines to hold a pretrial hearing as to Feeney's proposed opinions, and finds that the
27 government's expert disclosures generally set out Feeney's investigation of *Nuestra Familia* for
28

10

more than eight years, his review of practices he associates with *Nuestra Familia*, the context of phone calls, and the context and contents of other communications, e.g., phone calls and writings.

However, based on the Court's review of the disclosures on coding, the Court finds that the government has conflated expert and lay opinion testimony. The government must comply with governing law for each translation it seeks to admit. In light of the applicable legal standard and the need to separate expert from lay witness testimony, the Court **ORDERS** the government to file no later than March 7, 2016, a document that (i) numbers each opinion from its "itemized translation of coded words" and "log of phone calls" it will seek to admit, and (ii) identifies each as expert testimony or lay witness testimony. The parties shall meet and confer before the March 18, 2016 pretrial conference and shall be prepared to discuss at that conference whether further litigation on this topic will be required.

Separately, Larez argues that "clear statements" appearing in the call logs should not be subject to expert analysis because those statements either mean what they say clearly or that opinion about them would be speculative and should be left to the factfinder. "[T]he interpretation of *clear* statements is not permissible, and is barred by the helpfulness requirement of both Fed. R. Evid. 701 and Fed. R. Evid. 702." *Freeman*, 498 F.3d at 905 (quoting *United States v. Dicker*, 853 F.2d 1103, 1109 (3d Cir. 1988)); *see also Vera*, 770 F.3d at 1235 (emphasizing that "lay opinions may not be supported by speculation or hearsay, or interpret unambiguous clear statements . . ."). But Larez goes too far in conflating clarity on the face of the text with clarity in light of an independently reliable expert methodology demonstrating that a word in fact is an established coded term. Feeney may provide translations on the basis of knowledge, experience, and a reliable methodology that demonstrates a meaning for coded language not otherwise apparent when reviewing the text of the logs.[6]

---

[6] To the extent Larez objects to Feeney's testimony under Rule 403, the Court understands this objection to rely on the same bases as Larez's arguments on the testimony's reliability, addressed above. (*See* Docket No. 666 at 12–13.)

11

1    In sum, the Court **DENIES** the motions to exclude testimony from Feeney, as framed,
2 without prejudice to the possibility of specific objections to specific opinions to be addressed in
3 relation to the government's updated filing.

        iii.    **Category 3: Opinions on the "History" of *Nuestra Familia***

5    The government offers Garrow to testify about the history of *Nuestra Familia*, but fails to
6 demonstrate how his testimony would be reliable for purposes of Rule 702. Where an "officer
7 expert strays beyond the bounds of appropriately 'expert' matters, that officer becomes, rather than
8 a sociologist describing the inner workings of a closed community, a chronicler of the recent past
9 whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt."
10 *Cazares*, 788 F.3d at 977–78 (quoting *Mejia*, 545 F.3d at 190 (quotation marks omitted)).

11    Here, although Garrow has investigated *Nuestra Familia* for seventeen years, the
12 government does not demonstrate that Garrow could opine reliably about the history of *Nuestra*
13 *Familia* dating back to the 1960s. Garrow only began "studying" *Nuestra Familia* in 1998 as a
14 Bureau of Prisons officer. (8/17/15 Disclosure at 2.) He offers to recite the alleged history of
15 *Nuestra Familia* without explaining how he collected this historical information, cross-referenced
16 his sources, considered information that might disprove his prior assumptions, and reached his own
17 independent conclusions which could be cross-examined. *See Linde v. Arab Bank, PLC*, 922 F.
18 Supp. 2d 316, 322–23 (E.D.N.Y. 2013). The government's disclosures suggest that Garrow is
19 more a "chronicler" of a past than an independent expert as contemplated under the federal rules
20 for this kind of opinion. *Cf. Cazares*, 788 F.3d at 977–78. That the "past" dates back to the 1960s
21 raises additional concerns about potentially remote information. *Cf. Hankey*, 203 F.3d at 1169–70.

22    In sum, Garrow's proffered opinions regarding the "history" of *Nuestra Familia* are
23 inadmissible under Rule 702. Accordingly, he is precluded from opining as to paragraph Numbers
24 2, the first sentence of 3, 4–10, and 12–15 in Docket No. 894.

       iv. **Category 4: Opinions regarding *Nuestra Familia* hierarchy, its rules, expectations of its members, its alliances and rivalries, identities, and occurrences**

In the final category, the government offers proposed expert opinions on the specifics of the alleged criminal organization charged and at the heart of this case, thus raising concerns under Rules 702, 703, 403, 704(b), and *Crawford*. For the reasons below, the motions are **GRANTED** so as to exclude Opinion Numbers 16–30, 33–35, 36 (to the extent it states, "refers to members of the gangs associated with the Mexican Mafia," as explained *supra* section I.B.i.), 38–49, 55, 61–77, 79–82, and 86–89.

While "[e]xpert witnesses may rely on inadmissible hearsay in forming their opinions, [it is appropriate] so long as it is of a type reasonably relied upon by experts in their field." *Cazares*, 788 F.3d at 977 (citing Fed. R. Evid. 703; *Hankey*, 203 F.3d at 1169). Under Rule 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.[7] Notwithstanding the foregoing, the Court must be vigilant in ensuring compliance with *Crawford*.[8] The Ninth Circuit has explained that "there is generally no *Crawford* problem when an expert 'appli[es] his training and experience to the sources before him and reach[es] an independent judgment.'" *Vera*, 770 F.3d at 1237 (quoting *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013)). "But an expert exceeds the bounds of permissible expert testimony and violates a defendant's Confrontation Clause rights when he 'is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered

---

[7] "[T]o the extent that inadmissible evidence is reasonably relied upon by an expert, a limiting instruction typically is needed to limit the use of that evidence." *Cazares*, 788 F.3d at 978.

[8] "The Supreme Court held in *Crawford v. Washington*, 541 U.S. 36 (2004), that a defendant's Confrontation Clause rights are violated by the admission of 'testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination.'" *Vera*, 770 F.3d at 1237 (quoting *Crawford*, 541 U.S. at 53–54).

opinion sheds light on some specialized factual situation.'" *Id.* (quoting *Gomez*, 725 F.3d at 1129). "Accordingly, the key question for determining whether an expert has complied with *Crawford* is the same as for evaluating expert opinion generally: whether the expert has developed his opinion by 'applying his extensive experience and a reliable methodology.'" *Id.* at 1237–38 (quoting *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir.2003)); *see also id.* at 1239 (noting that "nothing in [the expert's] testimony suggest[ed] that he was directly repeating what someone else told him . . . during this or any other investigation").

The truth-finding function of a trial is not at risk "if '[t]he jury [is] every bit as qualified to analyze' a piece of mundane evidence as the purported expert," and in that circumstance, "the expert provides no added value on which to be cross-examined," *Garcia*, 793 F.3d at 1212 (quoting *United States v. Benson*, 941 F.2d 598, 605 (7th Cir. 1991)). *Cf. Cerna*, 2010 WL 2347406, at *5 ("Juries are good at sorting out the facts, deciding, for example, what, if any structure resides within a particular gang. Juries would ordinarily rely on fact witnesses, such as cooperating witnesses and undercover officers, to supply the facts. They do not need police opinions to do this.").

Here, the government's disclosures for this category appear to be solely repeating written or spoken hearsay, or testimonial hearsay. The Court finds that the experts are not providing their own considered opinions in a way that would assist the factfinder because each officer seeks to opine about specific *Nuestra Familia* duties, expectations, discipline, retaliation, and the like without distinguishing among his sources or explaining his reasoning with sufficient specificity. *Cf. Vera*, 770 F.3d at 1237–39; *Garcia*, 793 F.3d at 1212–13. For instance, the proffered opinions about *Nuestra Familia* rules would introduce the fact that such rules exist and how they operate without sufficiently explaining whether the officers undertook their own independent analyses of the *Nuestra Familia* "Constitution" and other rules, how they applied their experience to reach their conclusions, or how such opinions would assist the factfinder. (*Compare* Docket No. 894 at No. 27 ("One of the primary duties of a member is to 'put in work' on behalf of the gang, which means he must generate money, normally through criminal activity.") *with* 8/17/15 Disclosure at 3 ("Bylaws regarding the goals, purposes, disciplinary procedures, and mechanics of operation are

14

1 spelled out.").)  By contrast, *Hankey* permitted gang expert testimony relying on "'street
2 intelligence' for . . . opinions about gang membership and tenets," *Hankey*, F.3d at 1169, and
3 explained: "Gangs such as involved here do not have by-laws, organizational minutes, or any other
4 normal means of identification . . . [,]" *id.* at 1169–70; *see also Cazares*, 788 F.3d at 977 (quoting
5 *Mejia* in distinguishing testimony "to translate esoteric terminology or to explicate an
6 organization's hierarchical structure from the illegitimate and impermissible substitution of expert
7 opinion for factual evidence").  In addition, Garrow refers generally to his "experience" and
8 "interviews with members of *Nuestra Familia*, gang drop outs, and informants, as well as specific
9 events he has seen unfold." (8/17/15 Disclosure at 4.)  Livingston also refers to prior
10 investigations, "debriefings," interviews with gang members and government personnel,
11 intercepted communications, and "evidence obtained from the execution of search warrants, such
12 as money order receipts." (*See id.* at 5–6.)  The specificity with which each expert seeks to opine
13 combined with the failure to explain his reasoning or analysis, or to distinguish among the sources
14 on which he relied lead the Court to find that the opinions as set out in this category are not
15 admissible expert opinions that would assist the factfinder in compliance with Rules 702, 703, and
16 *Crawford*.[9]

17 Further, as disclosed by the government, the proffered opinions identifying specific
18 individuals holding positions in *Nuestra Familia* (Docket No. 894, Numbers 21 and 22) or the fact
19 of occurrences tied to *Nuestra Familia* (*id.*, Numbers 63, 65–77, 79–81) do not fit into a category
20 of cognizable expertise, do not sufficiently identify reliable bases by which they were reached, and
21 lack indication as to how admitting them would help the factfinder understand the evidence in this
22 case.  There is a meaningful distinction between a "sociologist describing the inner workings of a

---

[9] The Court understands H. Cervantes and Larez to raise Rule 403, Rule 404(b), and Rule 704(b) issues in relation to this category of proffered opinion type, but, in light of this ruling, need not reach those issues.  To the extent Larez and H. Cervantes move to limit the testimony of Garrow and Livingston such that one's testimony will be unnecessarily cumulative of the other, the Court **DENIES WITHOUT PREJUDICE** the motion, because the government explains that it provided its disclosures in complete form "out of an abundance of caution pending later decisions about witness lineup" and does not "intend to provide cumulative or duplicative testimony." (8/17/15 Disclosures at 5 n.1.)

closed community" and "a chronicler of the recent past whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt." *See Mejia*, 545 F.3d at 190. Here, Garrow makes a general reference to "historical, structural and regulatory background" for opinions about the identities of certain leaders. (*See* 8/17/15 Disclosure at 3.) And similarly, Livingston refers generally to his investigation of *Nuestra Familia*, interviews, "debriefings," evidence seized, and the *Nuestra Familia* "Constitution" and rules. (*See id.* at 5–7.) But neither provides the Court sufficient basis from which to conclude that he applied his knowledge to reach an opinion about matters as specific as identities of *Nuestra Familia* leaders or the fact of occurrences tied to *Nuestra Familia*. This stands in contrast to the *Vera* court, which explained that the expert there reached an opinion that a defendant was a leader in drug trafficking in a particular area by applying what the expert knew about gang practices and "his knowledge that the leader of a neighborhood gang is generally responsible for paying taxes to a higher-ranking gang," on the one hand, to statements on phone calls about paying taxes, and specific information about the defendant's behavior, on the other. *See Vera*, 770 F.3d at 1238–40.[10] Accordingly, the Court **GRANTS** the motions as to this category of opinions.

In sum, the Court excludes proffered expert Opinion Numbers 16–30, 33–35, 36 (to the extent it states, "refers to members of the gangs associated with the Mexican Mafia," as explained supra section I.B.i.), 38–49, 55, 61–77, 79–82, 86–89.

> C. **Docket No. 836: H. Cervantes's Motion to Prohibit Any Law Enforcement Officer, Including Proposed Experts, to Testify about the Truthfulness of Statements Given By a Source, Witness, or Informant**

The Court reserved ruling on this motion *in limine* to address it in the context of this order on proffered gang expert testimony. The Court **DENIES WITHOUT PREJUDICE** the motion, given that it does not identify particular evidence on which the Court could issue an appropriate ruling and this order's clarification regarding permissible and impermissible categories of proffered "gang expert" testimony. Also, to the extent the government would seek to have law enforcement

---

[10] *But see id.* at 1240–41 (assuming without deciding that the expert's testimony should have been excluded under Rule 403, and finding harmless error).

16

witnesses testify as to the reliability of sources who testify, "[i]t is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience." *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Dec. 11, 1998). In addition, the Court reiterated at the hearing that vouching would not be permitted. Improper vouching typically occurs when:

> (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports the witness's testimony. [The court] also ha[s] identified improper vouching and related misconduct in a broader range of circumstances. A prosecutor may not, for instance, express an opinion of the defendant's guilt, denigrate the defense as a sham, implicitly vouch for a witness's credibility, or vouch for his or her own credibility.

*Hermanek*, 289 F.3d at 1098 (citations omitted).

### D. **All Experts: Dual Role**

The Court **ORDERS** that any dual role testimony will be accompanied by precautions and that the Court will ensure that the jury is aware of such a dual role and instructed accordingly. *See, e.g.*, *Vera*, 770 F.3d at 1242 (noting a case in which an agent's testimony was split "into a first 'phase' consisting of his percipient observations, and a second 'phase' consisting of his credentials in the field of drug trafficking and expert testimony regarding the modus operandi of drug traffickers," citing *United States v. Anchrum*, 590 F.3d 795, 803-04 (9th Cir. 2009)).

## II. **Conclusion**

For the reasons above the Court **GRANTS IN PART AND DENIES IN PART** H. Cervantes (Docket Nos. 663) and Larez's (Docket Nos. 659) motions regarding proffered gang expert testimony, and **DENIES WITHOUT PREJUDICE** H. Cervantes's Motion to Prohibit Law Enforcement Officers, Including Proposed Experts, to Testify about the Truthfulness of Statements Given by a Source, Witness, or Informant (Docket No. 836). As set out above, the Court **ORDERS** the government to number and identify which opinions in its "itemized translation of coded words" and "log of phone calls" it will seek to admit as expert testimony and which it will seek to admit as lay witness testimony. The government shall file this information by March 8, 2016.

This order terminates Docket Nos. 659, 663, 836, and 847.[11]

**IT IS SO ORDERED.**

Dated: February 9, 2016

_____
**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE**

---

[11] The Court inadvertently did not terminate Docket No. 847, H. Cervantes's "Motion To Foreclose Mention of Arrangements, Requests, Joint Meetings, or Other Mechanisms Used to Facilitate Case Preparation and Discovery Review under the Joint Defense Privilege" in ruling on that motion in Pretrial Order No. 7. Accordingly, Docket No. 847 is hereby terminated.