**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>    **Plaintiff**,<br>          v.<br>**HENRY CERVANTES**, *et al.*,<br>    **Defendants**. | Case No.: 12-CR-0792 YGR<br><br>**PRETRIAL ORDER NO. 12 REGARDING MOTION FOR ANONYMOUS JURY**<br><br>Re: Dkt. No. 956 |

The government moves to empanel an anonymous jury (Docket No. 956). The defense opposes the motion and, in the alternative, requests expanded *voir dire* pertinent to empaneling an anonymous jury (Docket Nos. 959, 980).[1] The Court invited written submissions. For the reasons below, after considering the papers submitted, the Court **GRANTS IN PART** and **DENIES IN PART** the government's motion (Docket No. 956).

"[E]mpaneling an anonymous jury is an unusual measure that is warranted only where there is a strong reason to believe the jury needs protection or to safeguard the integrity of the justice system, so that the jury can perform its factfinding function." *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003); *see also id.* at 970 (explaining that "anonymous" jury in that case meant that "the names, addresses, and places of employment of prospective jurors and their spouses [would] not be disclosed to counsel, either before or after selection of the jury panel"); *United States v. Edwards*, 303 F.3d 606, 613 (5th Cir. 2002) (describing anonymous jury as "last resort in a court's efforts to protect the jurors from intimidating or prejudicial influences"). "Accordingly, . .

---

[1] Henry Cervantes ("H. Cervantes") filed an opposition (Docket No. 959), joined by Andrew Cervantes ("A. Cervantes") (Docket No. 979), Alberto Larez ("Larez") (Docket No. 980), and Jaime Cervantes ("J. Cervantes") (Docket No. 982). Larez filed an opposition (Docket No. 980), joined by A. Cervantes (Docket No. 981), J. Cervantes (Docket No. 982), and H. Cervantes (Docket No. 983).

. the trial court may empanel an anonymous jury 'where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused.'" *Shyrock*, 342 F.3d at 971 (quoting *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998)). The Court considers an inclusive list of factors:

> (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*United States v. Fernandez*, 388 F.3d 1199, 1244–45 (9th Cir. 2004) (quoting *Shyrock*, 342 F.3d at 971) *modified*, 425 F.3d 1248 (9th Cir. 2005). "These factors are neither exclusive nor dispositive, and the district court should make its decision based on the totality of the circumstances." *Shyrock*, 342 F.3d at 971; *see also id.* (noting that anonymous juries implicate Fifth and Sixth Amendment rights); Ninth Circuit Manual on Jury Trial Procedures at 50–51 (noting that anonymous juries also may implicate First Amendment rights). In addition to these five factors, the Ninth Circuit has considered whether "the district judge was careful to offer neutral justifications for the jury's anonymity that focused on juror confidentiality and suggested that such procedures are routine." *Fernandez*, 388 F.3d. at 1245.

Here, the totality of the circumstances weigh in favor of empaneling a jury anonymous to the defendants, and adopting the precautions discussed below to ensure that the defendants' rights are protected.

Two factors are beyond dispute. First, each defendant faces a potential life sentence of imprisonment. *See Shryock*, 342 F.3d at 972. Second, the government adequately has proffered that each defendant is involved with organized crime in the form of his association with *Nuestra Familia*. Importantly here, but perhaps in dispute, three of the four defendants are leaders in the organization. (*See* Third Superseding Indictment ("3SI") ¶ 16 (alleging that the defendants are

1 "associates, members, and leaders of *Nuestra Familia* and/or *Nuestra Familia*'s *Nuestra*
2 *Raza*/Northern Structure and/or *Norteño* affiliates, . . . .").)  The government argues that it has
3 evidence that *Nuestra Familia* operates as an organized criminal enterprise and engages in
4 violence.  In this case, that evidence includes numerous murders, the destruction of evidence, and a
5 sufficient *ex parte* showing to place witnesses under protection.  *Cf. Shyrock*, 342 F.3d at 972
6 ("[T]he record shows that Appellants were involved with the Mexican Mafia, an extraordinarily
7 violent organized criminal enterprise."); Docket No. 838, H. Cervantes's Motion *In Limine* No. 10
8 at 8 (noting that "direct evidence of the existence of the *Nuestra Familia* and of a racketeering
9 enterprise will be testified to by individuals who purport to know of the enterprise and of the
10 relationship of the defendants to it").

11 Third, based on the government's proffers and its *ex parte* submissions regarding the safety
12 of witnesses and others involved in its investigation, the Court finds that *Nuestra Familia* has the
13 capacity to harm, or otherwise influence, jurors, especially given that the alleged organization
14 continues to operate in the local area.[2]  Cases of this nature are not unfamiliar to this District, which
15 has collective experience in ensuring the safety of all involved in the process and employing such
16 measures in only the most serious of cases.  *Cf. United States v. Cerna*, No. 08-cr-00730-WHA,
17 Docket No. 3621 at 3 (N.D. Cal. March 1, 2011) ("The crux of the government's case is that the
18 defendants were active members in a criminal street gang that committed numerous violent acts,
19 including murder of non-gang-affiliated civilians.  Although these allegations have not yet been
20 tested by a jury, the proceedings to date and the government's additional submissions have
21 provided enough foundation to believe that MS-13 was responsible for these violent acts and the
22 defendants were involved with MS-13 in some capacity.").

23 Larez's argument that these factors should carry little weight in the totality of the
24 circumstances, because both the prevalence of violent gangs nationwide and the potential for long

---

[2] The Court declines Larez's implicit request to either ignore the *ex parte* submissions regarding witness safety or disclose the same.  (*See* Docket No. 980 at 4.)  The government has long disclosed its belief that members of *Nuestra Familia* are willing to implement its "rules which 'compel' its members to commit violent acts against witnesses who testify against the gang," Docket No. 956 at 2.

3

sentences in any case of this type would lead to anonymous juries becoming the norm rather than the exception in gang cases, fails to persuade. (*See* Docket No. 980 at 3.) Larez does not acknowledge the Court's duty to weigh all factors in each case. The anticipated length of this trial is not "held against" the defendants, nor is it fundamentally driven by a few isolated breaks in the scheduling or the number of defendants. (*See* Docket No. 980 at 5 n.5.) Rather, the length in conjunction with the discovery produced informs the breadth of the conspiracy, including the broad range of violence in which the defendants and the organization are alleged to have engaged. To argue that this case is effectively the same as a run-of-the-mill gang case with the possibility of a lengthy sentence ignores the totality of the circumstances which underpin the Court's decision. *See Fernandez*, 388 F.3d at 1244–45. As noted, those cases have not warranted an anonymous jury. (*See* Docket No. 959 at 4–5.) None of those cases, however, involved the same level of leadership found here.[3] The better analogy was the use of an anonymous panel in the trial involving the Mexican Mafia in the Central District of California. *See Fernandez*, 388 F.3d at 1216 ("Appellants Fernandez and Sanchez were identified as members of the Eme. Gavaldon, Contreras and Gonzales were identified as associates. Schoenberg was described as being 'associated' with the Eme because she was married to Sanchez.").

Fourth, a sufficient showing has been made that evidence will be presented regarding the obstruction claims against H. Cervantes and J. Cervantes stemming from the alleged arson, and against Larez for conspiracy to obstruct justice relating to alleged discarding of firearms. Although the obstruction of justice charges do not relate to juries or the witnesses in this case and although A. Cervantes is not charged in these counts, the proffer supports the proposition that the defendants are willing to undermine the judicial process. *Cf. Cerna*, No. 08-cr-00730-WHA, Docket No. 3621 at 5 ("The nature of these conspiracy charges is that the defendants are allegedly willing and able to contribute to collective action to aid the gang and its interest." (footnote omitted)); *Shyrock*, 342

---

[3] As the Court itself has observed, both H. Cervantes and Larez assaulted other inmates while in the U.S. Marshal's holding cell. While no hearing has been held on the motivation for those assaults, both defendants showed their willingness to resort to violence on other inmates without having first been physically attacked.

F.3d at 972 (noting testimony "that members of the Mexican Mafia maintained a 'code of silence' obligating members testifying in court to deny the existence of and membership in the Mexican Mafia").

Fifth, the Court considers the publicity factor. While the Court acknowledges that no defendant resides in this district, (Docket No. 959 at 3), it also considers that two of the murders happened locally, less than six miles from the courthouse. The Court also agrees that to date the "case has not received substantial media coverage . . . ." (Docket No. 956 at 3). Still, the government argues that one defendant's arrest did receive media coverage and that "past *Nuestra Familia* and other large RICO prosecutions in this district have garnered significant media attention." (*Id.* at 3.) Larez argues that possible publicity should not affect the Court's analysis of this factor. (*See* Docket No. 980 at 4.) This factor is not dispositive in either direction. Rather, the Court considers it in the totality of its analysis. *Cf. Shyrock*, 342 F.3d at 972 ("Finally, a trial involving several alleged members and associates of the Mexican Mafia could expect to receive extensive publicity, enhancing the possibility that jurors' names would become public and expose them to intimidation and harassment.")

The Court understands the defendants' concerns (i) that an anonymous jury will infer that the accused are dangerous and (ii) that multiple types of security precautions (e.g., use of shackles, presence of U.S. Marshals) combined with the jury knowing it is anonymous implicate the defendants' rights to an impartial jury and a fair trial. However, the Court intends to take the types of precautions the Ninth Circuit has noted approvingly. In *Shyrock*, for example, "[t]he district court . . . instructed the jury that the reason for their anonymity was to protect their privacy from curiosity-seekers. Also, the district court instructed the jury that the use of anonymous juries was commonplace in federal court, and that the reasons for the use of such a jury [t]here had nothing to do with . . . guilt or innocence." *Shyrock*, 342 F.3d at 972–73 (citations omitted). Further, the jury will not be aware that the defendants are in shackles, as the Court has invested in retrofitting the courtroom to keep those security measures hidden. The Court will entertain other specific recommendations to supplement those already approved by the Ninth Circuit.

With respect to the disclosure of prospective jurors' names to counsel, the Court **DENIES** the government's motion not to disclose jurors' names to counsel.  *Cf.* Ninth Circuit Manual on Jury Trial Procedures at 51 ("To protect the defendant's fundamental rights, the court should ensure that *voir dire* is sufficient to identify fully any possible bias without requesting information that would identify the jurors."); *United States v. Honken*, 378 F. Supp. 2d 880, 920 (N.D. Iowa 2004) (outlining possible approaches with respect to the level of anonymity required, including disclosure of biographical information to counsel, but not to the defendants).  The considerations addressed in this order are not compromised by providing information to counsel as opposed to the defendants themselves.  The Court is aware of the history in this District with respect to the negligent handling of sensitive information by unnamed member(s) of the defense bar, but will not use the same as the standard for this case, and will implement measures to ensure the information remains confidential. A separate order will issue detailing the mechanics of the jury selection.

Thus, considering the totality of the circumstances in the context of Ninth Circuit precedent, the Court finds compelling reasons to **GRANT** the government's motion that the jury empaneled in this case be anonymous to the defendants, but **DENIES** that motion to the extent it seeks to keep the jury anonymous to counsel.

This order terminates Docket No. 956.

**IT IS SO ORDERED**.

Dated: March 10, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**