UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | Case No.: 12-CR-0792 YGR |
|---|---|
| Plaintiff, | PRETRIAL ORDER NO. 13 REGARDING RULE 404(b), H. CERVANTES'S MOTIONS IN LIMINE NOS. 10 AND 11, AND LAREZ'S MOTION IN LIMINE NO. 5 |
| v. | |
| HENRY CERVANTES, *et al.*, | |
| Defendants. | Re: Dkt. Nos. 827, 838, 839 |

Pending before the Court is Defendant Henry Cervantes's ("H. Cervantes") motion *in limine* number 10 to exclude noticed Rule 404(b) evidence (Docket No. 838), H. Cervantes's motion *in limine* number 11 to exclude specified evidence as not relevant, or as hearsay, or as subject to exclusion under Federal Rule of Evidence 403 (Docket No. 839), and Alberto Larez's ("Larez") motion *in limine* to exclude noticed Rule 404(b) evidence (Docket No. 827). Based on the submissions of the parties, oral argument, and Good Cause showing, the Court **GRANTS IN PART AND DENIES IN PART** H. Cervantes's motion to exclude noticed Rule 404(b) evidence (Docket No. 838); **DENIES WITHOUT PREJUDICE** H. Cervantes's remaining objections under Rules 401, 403, 801, 802, and the Fifth and Sixth Amendments as either lacking merit, premature, insufficiently specific, and/or overbroad (Docket Nos. 838, 839); and **DENIES** Larez's motion to exclude evidence of an assault in Red Bluff in July 2011 as to Rule 404(b) (Docket No. 827).

While the motions also raise objections based upon relevance and hearsay, the gravamen of the dispute centers on the nature of admissible evidence in a RICO/VICAR case and the purpose(s), if any, for which uncharged incidents can be used. As a threshold matter, the Court begins with that analysis.

I. **LEGAL FRAMEWORK**

A. **DIRECT PROOF VERSUS "OTHER ACTS" AND RULE 404(b)**

The parties dispute the basis upon which evidence relating to uncharged conduct may be admissible in this action. The government claims that it may be admitted as proof related to a charged conspiracy. The defense argues it must be analyzed under the Rule 404(b) rubric. The Ninth Circuit has recognized that two categories of evidence can be "inextricably intertwined" with charges such that a Rule 404(b) analysis is not necessary: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (citations omitted).

Regarding the first category, "'[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant 'is indicted for less than all of his actions.'" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) (some quotation marks omitted) (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)). For instance, in *United States v. Lillard*, 354 F.3d 850 (9th Cir. 2003), no error occurred in admitting evidence that a defendant "stole . . . cocaine from the very shipment that provided the basis for his involvement in the [charged] conspiracy to possess and distribute cocaine." *Id.* at 854. The evidence included phone calls that "all identif[ied] [the defendant] as the driver of the . . . shipment [at issue]," *id.*, and the defendant's "subsequent admissions . . . concerning the theft provide[d] additional evidence of identity, but more importantly serve[d] to establish another element of the conspiracy, namely [the defendant's] knowledge of the contents of the illegal . . . shipment." *Id.*

With respect to the second category, the Ninth Circuit counsels: "it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Vizcarra-Martinez*,

2

66 F.3d at 1012. *Vizcarra-Martinez* noted cases "in which the defendant is charged with being a felon in possession of a firearm." *Id.* In one such case, a defendant claimed self-defense, the government sought to introduce "evidence regarding a shoot-out," and the court explained why such evidence would be inextricably intertwined with the charge: "'[The jury] cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" *Id.* (quoting *United States v. Daly*, 974 F.2d 1215, 1216 (9th Cir. 1992)); *see also DeGeorge*, 380 F.3d at 1219–20 (upholding admission, under category two, of the fact of (but not certain details about) a defendant's prior losses in a case in which the "government specifically alleged [a] scheme [that] included sham transactions to hide his ownership of [a later-purchased] boat and concealment of his loss history on the insurance application").

## B. RICO/VICAR CONSPIRACY CHARGES

In this case the government has responded to the defense by separating the uncharged events it seeks to admit into three categories, namely those which are: (i) proof of the RICO conspiracy count, i.e., "racketeering acts and part of a pattern of racketeering activity perpetrated by members and associates of the *Nuestra Familia* . . . [,]" (Docket No. 863 at 3); (ii) proof of a VICAR conspiracy to commit assault with a dangerous weapon charged in Count Three, (*id.* at 4); and (iii) "evidence of the existence of the enterprise and the defendants' roles in it[,]" (*id.* at 4–5). Notwithstanding the foregoing, the government also indicates that, if Rule 404(b) applies, it will introduce evidence of each incident at issue in accordance with a Rule 404(b) analysis. (*See* Docket No. 863 at 2; Docket No. 889 at 2.)

The RICO conspiracy provision states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Subsection (c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

3

racketeering activity or collection of unlawful debt." § 1962(c).  "The elements predominant in a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997).  "'Pattern of racketeering activity' . . . requires at least two acts of 'racketeering activity,' . . . ." *Id.* (quoting § 1961(5)).  "Racketeering activity" refers to a series of acts chargeable under state and federal law. *See id.*; § 1961(1)(A).  For RICO conspiracy, "[t]here is no requirement of some overt act or specific act . . . , unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'" *Salinas*, 522 U.S. at 63 (quoting § 371).  "[I]n order to convict a defendant on a RICO conspiracy charge, [the court] 'does not require proof that [a defendant] participated personally, or agreed to participate personally, in two predicate offenses.'" *United States v. Frega*, 179 F.3d 793, 810 n.21 (9th Cir. 1999) (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984)).

      The case law in relation to conspiracy charges reaches broadly and does not create a more limited carve-out for indictments alleging RICO conspiracies. *See United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ("We conclude that each action was 'inextricably intertwined' with the conspiracy, and therefore not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy.").  Also, "the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *see also United States v. Cruz-Ramirez*, No. CR 08-0730 WHA, 2011 WL 5599630, at *3 (N.D. Cal. Nov. 17, 2011); *United States v. Neapolitan*, 791 F.2d 489, 506 (7th Cir. 1986) ("[E]vidence of unindicted crimes, while irrelevant as predicate acts used to establish a RICO violation, can serve as circumstantial evidence of the defendant's connection to the enterprise and/or the conspiracy.") *holding modified by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) *and abrogated on other grounds as recognized by United States v. Rogers*, 89 F.3d 1326, 1336 (7th Cir. 1996).

That said, the Court agrees that the government is limited to the scope of the conspiracies it has charged. The motions before the Court concern numerous uncharged acts which the government noticed under Rule 404(b) "out of an abundance of caution," while maintaining that they are direct evidence.[1] Notably, as H. Cervantes illustrated during the last hearing, the Third Superseding Indictment ("3SI") references some incidents with particularity, but others only through state or federal statutory sections under which unspecified "acts" are illegal. No party cites published Ninth Circuit law explaining the interplay between Rule 404(b) and RICO conspiracy charges. *See, e.g.*, *United States v. Henley*, 766 F.3d 893, 914–15 (8th Cir. 2014) ("In a similar challenge in the Eleventh Circuit, that court concluded that evidence of uncharged crimes was admissible in a RICO prosecution as 'proof of an enterprise, of the continuity of racketeering activity, and of the defendant's knowledge of, agreement to, and participation in the conspiracy.'" (quoting *United States v. Gonzalez*, 921 F.2d 1530, 1546–47 (11th Cir. 1991)).

Further, the parties agree that the government need not charge in the 3SI that a specific overt act was committed in furtherance of the charged RICO conspiracy. *See Salinas*, 522 U.S. at 63. *Cf. United States v. Gonzalez*, 786 F.3d 714, 718–19 (9th Cir. 2015) ("[S]o long as jurors in a federal criminal trial unanimously agree that the Government has proven each element of a conspiracy, they need not unanimously agree on the particular overt act that was committed in furtherance of the agreed-upon conspiracy." (citation omitted)). "'[T]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.'" *United States v. Garcia-Santana*, 774 F.3d 528, 537 (9th Cir. 2014) (quoting *Yates v. United States*, 354 U.S. 298, 334 (1957)).

The parties, however, disagree as to the scope of the conspiracies charged in this case and, specifically, the scope of the pattern of racketeering activity that the conspirators allegedly

---

[1] Although the government maintains that they are not "other" acts for purposes of Rule 404(b), it, alternatively, would seek to introduce them under the rule.

understood would be committed. Given this disagreement, the Court notes that other circuits have permitted the government to charge RICO conspiracy without specifying in the indictment the predicate racketeering acts the defendants agreed some conspirator would commit beyond specifying particular *types* of predicate racketeering acts (in terms of statutory code sections), the identities of the conspirators, details about the alleged enterprise, and the time period and manner of operation of the conspiracy. *See United States v. Randall*, 661 F.3d 1291, 1297–99 (10th Cir. 2011); *United States v. Glecier*, 923 F.2d 496, 499–501 (7th Cir. 1991) ("[A]n indictment need only charge . . . that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity . . . ."); *id.* ("By specifying the time period during which the alleged conspiracy operated, the locations and courts, the principal actors, and, with some detail, the specific types of predicate crimes to be committed and the *modus operandi* of the conspiracy, the indictment adequately enabled Glecier to prepare a defense."); *United States v. Applins*, 637 F.3d 59, 80–81 (2d Cir. 2011) ("Because a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed, *Salinas*, 522 U.S. at 64, . . . it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." (citations omitted)); *United States v. Ledbetter*, 2015 WL 5117979, at *5–7 (S.D. Ohio Sept. 1, 2015) ("True enough, 'requiring proof of a predicate act at trial and requiring the inclusion of such an act in the Indictment are two different issues, but it is difficult to see how one would justify requiring a predicate act in the latter situation and not the former.'" (citation omitted)). And, as the Fourth Circuit has indicated, "every circuit to have considered th[e] issue has concluded that for a RICO conspiracy charge the jury need only be unanimous as to the *types* of racketeering acts that the defendants agreed to commit." *United States v. Cornell*, 780 F.3d 616, 625 (4th Cir. 2015) (emphasis added).[2] In *Cornell*, the verdict form

---

[2] The Seventh Circuit has questioned whether a jury need "agree unanimously on the 'types of racketeering activity' that conspirators agreed to commit." *See United States v. Schiro*, 679 F.3d 521, 534 (7th Cir. 2012) (citations omitted). That court hypothesized:

"list[ed] multiple types of crimes that satisfy the definition of racketeering acts and ask[ed] the jury to decide whether some member of the conspiracy had committed or intended to commit no act, a single act, or multiple acts of each type[] . . . ." *Id.* at 623.

Still, the Ninth Circuit previously reversed a conviction on the basis of jury instruction error with reasoning relevant to the parties' disagreement here. *See United States v. Frega*, 179 F.3d 793 (9th Cir. 1999).[3] *Frega* distinguished the issue in *Salinas*—whether the law requires "'. . . proof that [a defendant] participated personally, or agreed to participate personally, in two predicate offenses'"—from the issue of "what predicate acts the jury could properly find had been agreed to by the conspirators, regardless of which member might perform them." *See Frega*, 179 F.3d at 810

---

If you joined the Outfit, you agreed to commit or assist in committing an open-ended range of crimes, and it ought to be enough that the jury was unanimous that you indeed agreed that you would commit whatever crimes within that range you were assigned. Another way to put this—a way that preserves continuity with the cases that require that the jury be instructed that it must agree on the "type" of racketeering activity that the conspirators agreed to undertake—is that scope determines type. Suppose conspirators agree to commit any criminal act that will yield a profit of at least $5,000. *Cf. Salinas v. United States*, 522 U.S. 52, 63–64 (1997). Any such act, whether burglary or bank fraud, would then be within the scope of the conspiracy rather than belonging to a separate "type" of racketeering activity, such as burglary or bank fraud.

*Id.*

[3] There, three defendants were charged with RICO conspiracy "based on allegations that the three defendants had conspired to conduct the affairs of [a court] through a pattern of racketeering activity consisting of multiple acts of bribery in violation of Sections 92 and 93 of the California Penal Code and extortion in violation of 18 U.S.C. § 1951." *Id.* at 798–99. They also were charged with mail fraud, and one was charged with a substantive RICO violation. *See id.* The district court initially instructed the jury "that in order to convict [the defendants] on the RICO conspiracy count it had to find that each defendant agreed to conduct the affairs of the court through a pattern of racketeering activity consisting of at least two predicate acts." *Id.* at 809. But "the jury instructions for the RICO conspiracy charge did not identify any predicate racketeering acts, nor did the indictment list any such acts when setting forth that charge. The *only* predicate racketeering acts specified were set forth in the sections of the indictment and the jury instructions that pertained to the substantive RICO count, which applied only to [one of the defendants]." *Id.* When the jury asked whether the racketeering acts in the substantive RICO charge instruction only applied to that charge, the district court instructed that those racketeering acts "applied only to [the substantive RICO charge], but that 'all of the evidence that you have heard or seen during the trial may be considered by you as to all counts.'" *Id.* at 808. The jury convicted on RICO conspiracy, and the Ninth Circuit reversed.

7

n.21 (quoting *Tille*, 729 F.2d at 619). *Frega* explained: "Because the jury was not given the opportunity to identify *which predicate acts it relied upon*, we cannot be sure that the verdict on the *RICO conspiracy charge* was based on legally adequate evidence." *Id.* at 810 (emphases supplied); *see also id.* ("The jury may have relied on acts of mail fraud that were not predicate acts or on acts listed in [the RICO conspiracy count] that were 'overt' but not 'predicate.'"). The court went on to state: "Even less, given the confusing and misleading nature of the district court's response, can we assume that all members of the jury convicted the defendants on that charge on the basis of the same acts, and, thus, that the defendants' right to a unanimous jury verdict . . . was not infringed." *Id.*

*Frega* did not elaborate on the distinction between mail fraud charges not alleged to be racketeering acts and other "overt" acts, and might require that RICO conspiracy charges set out racketeering activity with a particular degree of specificity to avoid the types of jury instruction and jury unanimity issues that arose there. Still, this Court reads *Frega* to have reached its holding as a result of how the government charged that case (combining RICO conspiracy and substantive RICO charges with non-predicate-racketeering-act mail fraud charges) and how the district court instructed the jury (failing to limit the jury to acts that could qualify as predicate racketeering acts for the charged RICO conspiracy). In light of *Frega*, the Court understands that further discussion is warranted on the nature of any limiting instructions to the jury. *Cf. United States v. Fernandez*, 388 F.3d 1199, 1256 (9th Cir. 2004) *modified*, 425 F.3d 1248 (9th Cir. 2005) ("Before the trial, [the district court] issued a written order limiting the government in its presentation of evidence of 'bad acts' by the appellants to those 'referenced in the First Superseding Indictment.'").

Thus, while the Court concludes that the law on RICO conspiracy does permit the government to define the scope of the charged RICO conspiracy as it has in the 3SI—by time period, location, identities of conspirators, the nature of an enterprise and a conspiracy, the methods by which the enterprise and conspiracy operated, and particular statutory violations or types of racketeering activity—the government also must make an affirmative showing how proof of each

incident it seeks to admit constitutes proof of the scope of a charged conspiracy. *See Montgomery*, 384 F.3d at 1062. Only then can it avoid a Rule 404(b) analysis.

II. **Application**

A. **Acts Appearing in the 3SI**

The Court agrees with the government that incidents specifically referenced in the 3SI are within the scope of the charged conspiracy to "conduct or participate in the conduct of the affairs of *Nuestra Familia* through a pattern of racketeering activity" as acts allegedly carried out in furtherance of the conspiracy, thus, need not be analyzed under Rule 404(b). These incidents are the Coolidge Avenue Murders, (*see* 3SI ¶¶ 12, 36–39), arson on Coolidge Avenue, (*see id.* ¶¶ 12, 14, 40–44), August 2012 murder of a *Norteño*, (*see id.* ¶¶ 13, 55–58), October 2011 incidents involving firearms at a residence in Oakland, (*see id.* ¶¶ 52–54), January 10, 2012 home invasion robbery in Livermore, (*see id.* ¶¶ 14, 45–51), August 2011 robbery at a gas station in Red Bluff, (*see id.* ¶ 14), and certain drug dealing transactions (*see id.* ¶¶ 19, 22, 28, 59; Docket No. 687).[4] The motions to exclude on these grounds are **DENIED.**

---

[4] In motion *in limine* 10, H. Cervantes objects to the January 10, 2012 home invasion in Livermore and August 2011 robbery at a gas station in Red Bluff on relevance and Rule 403 grounds. (*See* Docket No. 838 at 5–6.) In motion *in limine* 11, he objects that the August 2011 robbery at a gas station in Red Bluff and August 2012 murder of Martin Chacon should not be admitted against him. (*See* Docket No. 839 at 3 ¶ 8, 3 ¶ 10.) H. Cervantes argues that he was incarcerated at the time of the home invasion robbery and August 2012 murder, that "there is no indication of his involvement or participation in these matters," and that he does not understand the home invasion robbery incident to have been related to the charged enterprise. (*See* Docket No. 838 at 5–6; Docket No. 839 at 3 ¶ 10.) The Court **DENIES WITHOUT PREJUDICE** the motions to exclude evidence of these incidents on relevance and Rule 403 grounds as lacking merit, overbroad, and premature. H. Cervantes does not demonstrate that incarceration is decisive in determining relevance. *Cf. United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) ("Where police have frustrated a conspiracy's specific objective but conspirators (unaware of that fact) have neither abandoned the conspiracy nor withdrawn, these special conspiracy-related dangers remain."); *United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir. 1986) ("Although statements made by a co-conspirator after his arrest cannot be used against fellow conspirators, the converse is not true; statements made by an *unarrested* co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator."). Nor does every defendant need to be associated with every conspiratorial act. Given the current proffer of the government, the motions are not well-taken.

9

### B. **Acts Not Appearing in the 3SI**

As referenced, the government argues that all other uncharged conduct need not undergo a Rule 404(b) analysis. However, it also has vacillated, obscuring its approach. (*Compare, e.g.*, Docket No. 863 at 3–5 (referring to prison riot at FTC Florence as "evidence of the existence of the enterprise and the defendants' roles in it," separate from other identified "racketeering acts") *with* Docket No. 911 at 5 (referring to a prison riot at FTC Florence as within a category of "either racketeering acts or overt acts in furtherance of the conspiracy").) Below, the Court addresses each remaining category of incidents.

#### 1. *2011 Red Bluff Assault*

With respect to the July 2011 Red Bluff assault, the government argues it is proof of Count Three. (*See* Docket No. 863 at 4; Docket No. 889 at 2–3.) Count Three charges a Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering, a violation of 18 U.S.C. § 1959(a)(6). The 3SI reads, in pertinent part:

> [H. CERVANTES], LAREZ, and JAIME CERVANTES [("J. Cervantes")] . . . agreed together and with each other to assault with guns, knives, and other dangerous weapons actual and suspected members of rival gangs, individuals suspected of cooperating with law enforcement, individuals who defied the will of *Nuestra Familia* and others in order to maintain and increase their standing within the racketeering enterprise known as *Nuestra Familia*.
> All in violation of Title 18, United States Code, Section 1959(a)(6).

3SI ¶ 34. With respect to the Red Bluff Assault, the government claims that Larez and two others "went 'hunting'" for a group of *Sureños*. (Docket No. 889 at 2.) When the three saw the group, the government asserts that "Larez ordered the associates to attack them," resulting in a stabbing. (*Id.*) The government claims the incident constitutes evidence of the existence of the enterprise, the defendants' association with it, and "an overt act in furtherance of the conspiracy." (*Id.* at 2–3.)

First, Larez argues that Rule 404(b) should apply to the 2011 assault in Red Bluff because it is not charged in the 3SI, and "denies that the incident was gang-related or in any way connected to the alleged conspiracy charged in the indictment." (Docket No. 827 at 1–2.) For the reasons set

forth above, the lack of itemized charging is not dispositive, nor is Larez's mere denial. Further, no argument has been made that the government failed to provide disclosure and/or discovery with respect to this incident. The government provided Rule 404(b) notice of this incident in a letter dated August 21, 2015.

Based on the proffers, the Court finds that the government may offer evidence of the July 2011 Red Bluff incident for the purpose of proving an enterprise, the defendants' association with it, and as an overt act in furtherance of the conspiracy charged in Count Three. The Court need not apply Rule 404(b). Targeting members of a rival gang is relevant to prove one of the alleged purposes of the alleged enterprise—"Preserving and protecting the power, territory, reputation, and profits of the *Nuestra Familia* through the use of intimidation, violence, threats of violence, assaults, and murder," (3SI ¶ 11.a.). The stabbing occurred in Red Bluff and within the time frame specified in the 3SI. (*See id.* ¶ 34.) The incident allegedly involved indicted co-defendants, J. Cervantes and Shane Bowman, in addition to Larez. (*Id.*) In addition, the government defines the "enterprise" in this case as "an enterprise 'associated in fact.'" Docket No. 911 at 3.[5] And Count Three charges H. Cervantes, Larez, and J. Cervantes with conspiracy to "assault with guns, knives, and other dangerous weapons actual and suspected members of rival gangs, . . . ." (3SI ¶ 34.)

Accordingly, the motion to exclude is **DENIED** on these grounds, as well as the grounds of relevance and prejudice.[6] However, the Court will entertain argument on the appropriateness of

---

[5] "[A]n associated-in-fact-enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct," *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (quoting *United States v. Turkette*, 542 U.S. 576, 583 (1981)), and requires "'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit[,]'" *id.* (quoting *Turkette*, 452 U.S. at 583). *See also Boyle v. United States*, 556 U.S. 938, 950 n.5 (2009) ("The dissent states that '[o]nly if proof of the enterprise element . . . requires evidence of activity or organization beyond that inherent in the pattern of predicate acts will RICO offenses retain an identity distinct from § 371 offenses.' This is incorrect: Even if the same evidence may prove two separate elements, this does not mean that the two elements collapse into one." (citation omitted)).

[6] H. Cervantes's motion *in limine* 10 objects to this evidence as "propensity evidence for Mr. Larez and others, . . . and for Mr. Cervantes it is inadmissible, and even if admissible, subject to exclusion under F.R.E. 403." (Docket No. 838 at 4–5; *see also* Docket No. 839 at 3–4.) To the

11

any limiting instructions regarding the purpose for which evidence of this incident is introduced. *Cf. United States v. Rrapi*, 175 F.3d 742, 749 (9th Cir. 1999) ("Although Judge George thought the evidence was admissible to show context or was 'inextricably intertwined' with the charged crime, he gave a limiting instruction anyway.  There is nothing wrong with such an alternative ruling."); *United States v. Salerno*, 108 F.3d 730, 740 (7th Cir. 1997).

2. *Acts in Cottonwood and Red Bluff, California*

Three acts not specifically referenced in the 3SI are alleged to have occurred in Cottonwood and Red Bluff, California, each of which the government appears to argue constitutes circumstantial evidence for the RICO conspiracy count or overt acts in furtherance of it. (Docket No. 863 at 3–4.)  More specifically, these acts are (1) a home invasion in Cottonwood on or about January 23, 2011; (2) an assault and robbery in May 2011 in Red Bluff; and (3) a home invasion robbery in Red Bluff sometime in 2010 or 2011.  (*Id*.)  The Court **DENIES** the motion to exclude evidence of these incidents as requiring analysis under Rule 404(b).

The 3SI charges six broad-based purposes of the enterprise in this case.  (3SI ¶ 11.)  It then alleges that, "since at least December 2003," through the present, all four defendants conspired to violate the substantive RICO statutory provision, "that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the *Nuestra Familia* enterprise through a pattern of racketeering activity, . . . which pattern of racketeering activity consisted of:

a. multiple acts and threats involving murder, in violation of California Penal Code §§ 187,[7] 188,[8] 189,[9] 182,[10] 21a,[11] 664,[12] 653f,[13] and 422;[14]

---

extent the "propensity" argument reiterates Larez's Rule 404(b) argument, the Court **DENIES** it pursuant to the analysis in this section.  To the extent H. Cervantes moves to exclude on relevance and Rule 403 grounds, the Court **DENIES** the motions as overbroad, insufficiently specific, and premature.

[7] "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Cal. Penal Code § 187(a).

[8] "Such malice may be express or implied.  It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.  It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."  Cal. Penal Code § 188.

12

      b. multiple acts and threats involving robbery, in violation of California Penal Code §§ 211,[15] 212,[16] 212.5,[17] 213,[18] 182,[19] 21a,[20] 664,[21] 653f,[22] and 422;[23]

---

[9] "All murder which is perpetrated by means of . . . any other kind of willful, deliberate, and premeditated killing, . . . is murder of the first degree. All other kinds of murders are of the second degree." Cal. Penal Code § 189.

[10] "If two or more persons conspire: (1) To commit any crime. . . . They are punishable as follows: . . . ." Cal. Penal Code § 182(a). "Upon a trial for conspiracy, in a case where an overt act is necessary to constitute the offense, the defendant cannot be convicted unless one or more overt acts are expressly alleged in the indictment or information, nor unless one of the acts alleged is proved; but other overt acts not alleged may be given in evidence." Cal. Penal Code § 182(b).

[11] "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Cal. Penal Code § 21a.

[12] "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows: . . . ." Cal. Penal Code § 664.

[13] "Every person who, with the intent that the crime be committed, solicits another to commit or join in the commission of murder shall be punished . . . ." Cal. Penal Code § 653f(b).

[14] "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished . . . ." Cal. Penal Code § 422(a).

[15] "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211.

[16] "The fear mentioned in Section 211 may be either: . . . ." Cal. Penal Code § 212.

[17] "[E]very robbery which is perpetrated in an inhabited dwelling house, . . . or the inhabited portion of any other building is robbery of the first degree." Cal. Penal Code § 212.5(a). "Every robbery of any person while using an automated teller machine or immediately after the person has used an automated teller machine and is in the vicinity of the automated teller machine is robbery of the first degree." Cal. Penal Code § 212.5(b). "All kinds of robbery other than those listed in subdivisions (a) and (b) are of the second degree." Cal. Penal Code § 212.5(c).

[18] "Robbery is punishable as follows: . . . ." Cal. Penal Code § 213(a).

[19] If two or more persons conspire: (1) To commit any crime. . . . They are punishable as follows: . . . ." Cal. Penal Code § 182(a).

[20] "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Cal. Penal Code § 21a.

[21] "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows: . . . ." Cal. Penal Code § 664.

13

      c.  multiple acts involving dealing in controlled substances, in violation of 21 U.S.C. §§ 841,[24] 846[25];
      d.  multiple acts indictable under 18 U.S.C. § 1951 (robbery/extortion affecting commerce)[26]; and
      e.  multiple acts indictable under 18 U.S.C. §§ 1503,[27] 1512[28]; and 1513[29]."

3SI ¶ 17.[30]

This category of evidence falls within the scope of the 3SI in terms of time, location, the identity of the persons involved, and each act's alleged type (robbery) and purpose, such that Rule 404(b) need not be applied. Rather, these events appear sufficiently connected to the theory of the government's case as against these defendants. *See Montgomery*, 384 F.3d at 1062. The Court concurs that the scope of conspiracy law is quite broad, and other circuits to have expounded on this issue have allowed significant latitude in the prosecution of conspiracy. *See United States v. Baez*, 349 F.3d 90, 93–94 (2d Cir. 2003) ("[W]here, as here, a conspiracy is charged, 'uncharged

---

[22] "Every person who, with the intent that the crime be committed, solicits another . . . to commit or join in the commission of . . . robbery, . . . shall be punished . . . ." Cal. Penal Code § 653f(a).

[23] "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished . . . ." Cal. Penal Code § 422(a).

[24] Federal controlled substances offenses statute.

[25] "Attempt and conspiracy" for federal controlled substances offenses.

[26] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, . . . shall be fined . . . or imprisoned . . . , or both." 18 U.S.C. § 1951(a).

[27] "Influencing or injuring officer or juror generally." 18 U.S.C. § 1503.

[28] "Tampering with a witness, victim, or an informant." 18 U.S.C. § 1512.

[29] "Retaliating against a witness, victim, or an informant." 18 U.S.C. § 1513.

[30] With respect to special sentencing factors, the government identified several murders and associated those with particular defendants, namely: murders of "Victim 1" and "Victim 2" with H. Cervantes (3SI ¶¶ 24, 25), murder of "Victim 3" with J. Cervantes (*id.* ¶ 27), and murder "Victim 5" with Larez (*id.* ¶ 26). Next, with respect to H. Cervantes, Larez, and A. Cervantes, the government alleged that the amount of controlled substances at issue was 500 grams or more. (*id.* ¶ 28.)

14

acts may be admissible as direct evidence of the conspiracy itself.'  In such a case, the admission of evidence of uncharged criminal activity is not considered other-crimes evidence subject to Federal Rule of Evidence 404(b)." (citations omitted)).  Notwithstanding the foregoing, and, as with the incident above, the Court will entertain argument on the appropriateness of any limiting instructions regarding the purpose for which evidence of these incidents is introduced.  *Cf. Rrapi*, 175 F.3d at 749 (9th Cir. 1999); *Salerno*, 108 F.3d at 740.

### 3. *Remaining Incidents: Florence Riot and Assaults*

Remaining at issue with regard to Rule 404(b) are three acts, including (i) a 2008 "riot" among inmates at FCI Florence in Colorado, (ii) an assault on an inmate by H. Cervantes on August 14, 2013 while in custody in this case, and (iii) an assault in 2011[31] on a woman to punish her boyfriend for violating gang rules.  (*See* Docket Nos. 838, 863, and 889.)[32]  The government seeks to offer evidence of these events as proof of the existence of an enterprise and the defendants' roles in it.

With respect to the (i) 2008 Florence riot and (ii) August 2013 assault on an inmate, the Court finds that these incidents are sufficiently disjointed in time, place, defendant participation, and type of act to suggest more random uncoordinated activity than those discussed above, and therefore prevent the Court from concluding that each is inextricably intertwined with a charged conspiracy.  *See Vizcarra-Martinez*, 66 F.3d at 1013 ("There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)."). Accordingly, these incidents should be subject to a Rule 404(b) analysis.  The Court **GRANTS** H. Cervantes's motion to exclude evidence of these

---

[31] H. Cervantes indicates that the assault allegedly occurred in 2001, (*see* Docket No. 838 at 5), but the government alleges that it occurred in 2011, (*see* Docket No. 863 at 5).

[32] The Court already has excluded evidence of an assault on an inmate by Larez in January 2014, *see* Docket No. 909, Pretrial Order No. 7 at 14–15, and has denied the government's motion for leave to file a motion for reconsideration of that decision, *see* Docket No. 943, Pretrial Order No. 10.

incidents **WITHOUT PREJUDICE** to the government seeking to admit them with a Rule 404(b) analysis.

With respect to the (iii) assault in 2011, H. Cervantes objects that "there is insufficient discovery to permit a reasoned argument and that the outline of the incident indicates that it is not admissible, and is also subject to exclusion under F.R.E. 403." (Docket No. 838 at 5.) It is not clear whether H. Cervantes in that motion is referring to the same incident as that discussed in his more recent filing at Docket No. 991 regarding alleged extortion and an alleged assault on a boyfriend. Counsel for both H. Cervantes and the government shall be prepared to address the matters at the next trial readiness conference.

### III. CONCLUSION

The Court **DENIES** Larez and H. Cervantes's motions to exclude evidence of an assault in Red Bluff in July 2011 as to Rule 404(b). (Docket Nos. 827, 838). The Court **GRANTS IN PART AND DENIES IN PART** H. Cervantes's motions to exclude evidence of specific uncharged acts as "other acts" under Rule 404(b), as discussed above. (Docket Nos. 838). The Court **DENIES WITHOUT PREJUDICE** H. Cervantes's remaining objections under Rules 401, 403, 801, 802, and the Fifth and Sixth Amendments as either lacking merit, premature, insufficiently specific, and/or overbroad. (Docket Nos. 838, 839).

This order terminates Docket Nos. 827, 838, and 839.

**IT IS SO ORDERED**.

Date: March 15, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**