UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>HENRY CERVANTES, *et al.*,<br><br>Defendants. | Case No.: 12-CR-0792 YGR<br><br>PRETRIAL ORDER NO. 16 REGARDING MOTIONS FOR PRETRIAL ADMISSIBILITY DETERMINATIONS AND TO RECONSIDER EXCLUSION OF LOCKUP BEATING<br><br>Re: Dkt. Nos. 845, 1053 |

Pending before the Court are the government's motions for a pretrial admissibility determination and to reconsider the Court's prior ruling excluding evidence of a lockup beating (Docket No. 1053) and Henry Cervantes's ("H. Cervantes") motion *in limine* number 17 to exclude evidence of a stabbing by an individual not indicted in this case (Docket No. 845). Based on the filings in this case, oral argument, and Good Cause appearing, the Court issues the following Orders.

I. **GOVERNMENT'S MOTION FOR PRETRIAL ADMISSIBILITY DETERMINATIONS AND H. CERVANTES'S MOTION *IN LIMINE***

Previously, the Court explained its approach to Rule 404(b) issues in relation to the Third Superseding Indictment ("3SI") and "other acts." (*See* Docket No. 1007.) The government seeks pretrial admissibility determinations regarding evidence of those acts and one additional act, collectively: (a) the alleged stabbing of Pete Gutierrez by Skip Villanueva; (b) an assault on an inmate by H. Cervantes in August 2013; (c) a "riot" in 2008 at FCI Florence in Colorado; and (d) an assault in 2011 on a woman to punish her boyfriend for violating gang rules. The "other acts" previously identified as requiring Rule 404(b) analyses included (b) the August 2013 assault, (c) the "riot," and (d) the 2011 assault. (*See id.* at 15.) H. Cervantes seeks exclusion of all these events.

(*See* Docket No. 1053 at 1–2; Docket No. 1067 at 5–10; Docket No. 845 at 1–5; Docket No. 838 at 5.)[1] The Court addresses each, in turn, below.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For "other acts," the government must show:

> that "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that [the] defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged."

*United States v. Lloyd*, 807 F.3d 1128, 1157 (9th Cir. 2015) (quoting *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013)). Also, the Court must conduct Rule 403 balancing as part of its Rule 404(b) analysis. *See id.* at 1183. The Ninth Circuit "ha[s] repeatedly emphasized that: 'Extrinsic act evidence is not looked upon with favor.' [The court] ha[s] stated that '[its] reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal system, that the defendant must be tried for what he did, not for who he is. . . .'" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013–14 (9th Cir. 1995) (quoting *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993)).

### A. **Skip Villanueva Stabbing Pete Gutierrez in January 2008**

H. Cervantes moves to exclude evidence of the Villanueva stabbing, including a video of the incident, as not relevant or unduly prejudicial under Rule 403, given that the incident involves no individuals indicted in this case or substantive acts charged in the 3SI, is intended to prove propensity, and would introduce a homicide into this case with minimal probative value. (*See* Docket No. 845 at 4–5.) The Court **GRANTS IN PART AND DENIES IN PART** H. Cervantes's motion

---

[1] Alberto Larez ("Larez") filed a separate opposition to the government's motion (Docket No. 1065). Andrew Cervantes ("A. Cervantes") (Docket No. 1068) and Jaime Cervantes (Docket No. 1071) join in H. Cervantes and Larez's oppositions to the government's motion.

under Rule 403 (Docket No. 845), and **DENIES IN PART** the government's motion to admit evidence of this incident (Docket No. 1053) as further explained below.

The government explains the probative value as demonstrating the existence and purpose of *Nuestra Familia* and as proof of Counts One through Three by showing one alleged *Nuestra Familia* member (Skip Villanueva) kill another alleged *Nuestra Familia* member (Pete Gutierrez) for violating *Nuestra Familia* rules and to advance within the organization. (*See* Docket No. 868 at 2–3; Docket No. 1053 at 5–6.) Neither individual involved in the incident is indicted in this case and the stabbing has minimal probative value regarding the state of mind of those who are indicted for the time period at issue in the 3SI. (*See* Docket No. 845 at 4–5.) The government's alternate theory of admissibility is that it is probative of *Nuestra Familia*'s rules, purposes, and the defendants' knowledge of each. (*See* Docket No. 1053 at 6–7.) Further, the government asserts that evidence of the stabbing is "inextricably intertwined with [A. Cervantes's] ascendency to the role of sole overseer of the *Nuestra Familia*." (*Id.* at 6.)

The fact of the alleged stabbing is not probative of any defendant's knowledge and intent in relation to *Nuestra Familia*. (*See* Docket No. 1053 at 7 (noting that the stabbing relates to Villanueva's knowledge, intent, preparation, plan, motive, and lack of accident).) The Court is focused only on the *mentes reae* of the defendants in this case.

At best, the gravamen of the government's theories is that, after the stabbing, Villanueva was subsequently placed in a facility where he could not communicate with others. According to the government, shortly thereafter A. Cervantes allegedly wrote a letter claiming he became sole overseer. (*See id.* at 6.) The government has proffered that it can prove the fact of A. Cervantes's ascendency through communications by A. Cervantes to various *Norteños*. (*See also* Docket No. 911 at 3 ("Much of the proof in this case will show the defendants themselves each directly participated in at least two racketeering acts."); Docket No. 845 at 4 ("The Government also contends that it has evidence of statements and activities on the part of all four defendants tending to prove their guilt—none of which involves the Skip Villanueva stabbing of Pete Gutierrez.").) The Court agrees that the fact of the stabbing and the consequences thereof are probative of a

material fact. However, to allow the details of the stabbing itself has limited, if any, probative value. Such proceedings regarding an individual not indicted in this case, and an act with which the government does not allege any indicted individual personally was involved, risk a trial within the trial. The probative value is substantially outweighed by the concerns of jury confusion, undue delay in presenting evidence relating to the incident, presenting cumulative evidence of the existence of an enterprise, and unfair prejudice arising from the nature of the stabbing involving two unindicted individuals.

Accordingly, the Court will not exclude evidence of the fact that Villanueva pled guilty to a murder, which resulted in his being transferred to a facility in Colorado, and leaving a power vacuum for A. Cervantes to fill, as submitted by the government. That evidence is relevant and probative of A. Cervantes's alleged role in the organization and, contained in this manner, will not be unduly prejudicial. All other details, including the video, are excluded.

### B. **H. Cervantes's U.S. Marshal's Holding Cell Incident in 2013**

The government seeks to admit evidence of H. Cervantes attacking another inmate wearing protective custody clothing after H. Cervantes was indicted in this case. Previously, the Court concluded that Rule 404(b) applies to this evidence as an "other act." (*See* Docket No. 1007 at 15.) The Court **DENIES** the motion **WITHOUT PREJUDICE**. The government's attempt to use the incident for rebuttal purposes is premature, and, with respect to the Rule 404(b) analysis, more is required, as discussed below.

First, the government argues that the evidence of the incident could serve as rebuttal evidence, but such a request is premature without more information about what defenses H. Cervantes will raise or any testimony he may provide.

Second, the Court understands the government's evidential hypothesis as follows: the attack demonstrates violence by H. Cervantes against a non-gang member wearing protective custody clothing; the government has stated that the victim wore that clothing either because he was an informant or because of his sexual orientation; and other evidence will show that *Nuestra Familia* rules require attacks upon non-gang members wearing protective custody clothing for those

4

reasons. (*See* Docket No. 1053 at 7; Docket No. 931 at 3; Docket No. 1067 at 8–9.) The attack tends to show, the hypothesis goes, that H. Cervantes adhered to *Nuestra Familia*'s rules as alleged in Count One. (*See* Docket No. 1053 at 7; 3SI ¶ 17.) The government took the position at the hearing that either of the government's explanations for what rule H. Cervantes was enforcing— attacking an individual because of his status as an informant or because of his sexual orientation— could demonstrate admissibility under Rule 404(b)'s permissible purposes. *See United States v. Testa*, 548 F.2d 847, 851 (9th Cir. 1977).

The government appears able to meet the first, second, and fourth prongs under Rule 404(b), but must show more to meet the third prong and to permit the Court to conduct a Rule 403 analysis.

Regarding the second prong, the act is not too remote in time because it occurred in August 2013, and the government has alleged an ongoing conspiracy.

Regarding the third prong, the Court has reviewed video evidence of the beating, but not evidence sufficient for a finding that H. Cervantes beat the other inmate to enforce a *Nuestra Familia* rule (or otherwise conduct its affairs through a pattern of racketeering activity). *See United States v. Lloyd*, 807 F.3d 1128, 1158 (9th Cir. 2015) (concluding that Rule 404(b) error arose when evidence showed that a defendant worked for a company, but was insufficient for a finding that the defendant was involved in fraudulent activity at the company). Similarly, H. Cervantes argues that the government has not provided discovery regarding the victim or statements by U.S. Marshals before or after the incident, undermining his ability to argue for exclusion at this stage. (*See* Docket No. 1067 at 5, 9.) Also, to the extent the government has additional evidence of the incident, the Court must review such evidence to conduct the required Rule 403 balancing. *See United States v. McElmurry*, 776 F.3d 1061, 1067, 1070 (9th Cir. 2015).

Regarding the first and fourth prongs, the government has articulated a link between an attack to carry out *Nuestra Familia* rules and permissible inferences under Rule 404(b), such as motive, intent, plan, or knowledge. The Court considers the nature of the "other act" to determine whether it is relevant to prove a material point other than propensity and whether it is similar to a

5

charged act. *See United States v. Ramirez-Robles*, 386 F.3d 1234, 1243 (9th Cir. 2004) (explaining that drug "user quantity" conviction could not be used to help prove "conspiracy and possession with intent to distribute narcotics"); *Vizcarra-Martinez*, 66 F.3d at 1015. The Ninth Circuit has permitted admission of uncharged schemes in a RICO conspiracy case "to show intent, motive, and method of operation of [a] conspiracy." *United States v. Melvin*, 91 F.3d 1218, 1223 (9th Cir. 1996). In *United States v. Bibo-Rodriguez*, 922 F.2d 1398 (9th Cir. 1991), the court permitted the government to introduce evidence of an act—subsequent to a charged act—of transporting marijuana in a particular manner into the United States to prove that a defendant "knew the truck he was driving . . . contained cocaine[.]" *Id.* at 1401–02; *see also id.* at 1402 ("In the present case, Bibo-Rodriguez transported cocaine across the border in a vehicle's roof panel. The subsequently transported marijuana was similarly hidden in the hollowed out side panels of a vehicle."). The court explained that "the subsequent offense is relevant to show that the defendant could not have been duped in the first instance, because he repeated a similar, although not identical, action on a subsequent occasion." *Id.* at 1402.[2]

Here, H. Cervantes argues that "beat[ing] someone suspected of being gay or an informant (or an informant and gay) is propensity evidence [in this case]," (Docket No. 1067 at 9), and that "[i]t is unclear how . . . [the] alleged beating of an individual in a jail holding cell several years into [H. Cervantes's] pretrial detention, and outside the presence of any other alleged conspirator, would demonstrate his agreement to conduct the activities of a racketeering organization." (Docket No. 920 at 4.) The government argues that it "will introduce tape recorded statements of Henry

---

[2] The Ninth Circuit has explained that "[w]hen the government's theory is one of knowledge . . . this court has emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *United States v. Mayans*, 17 F.3d 1174, 1181–82 (9th Cir. 1994). Because *Mayans* addressed a prior act, rather than a subsequent act, the Court does not read it to require that the knowledge be gained as a result of an "other act" in all cases. Rather, as in *Bibo-Rodriguez*, the government may establish a logical connection between an act that occurred after a charged act or acts and knowledge or intent at the time of a charged act or acts. *See Bibo-Rodriguez*, 922 F.2d at 1400.

Cervantes admitting that gang rules proscribe homosexuality," and that the attack "was all but required of Cervantes." (Docket No. 1053 at 7.) It states that evidence of the incident could show intent, knowledge, motive, preparation, plan, absence of mistake, and lack of accident. (*See* Docket No. 1053 at 7–8.)

The Court agrees with the government that an assault to carry out *Nuestra Familia* rules may be similar to numerous acts of violence alleged in the 3SI. Although the 3SI does not allege assault as a racketeering act object of the RICO conspiracy charge, the 3SI alleges six purposes of the *Nuestra Familia*. (3SI ¶ 11.) Those purposes include: "Preserving and protecting the power, territory, reputation, and profits of *Nuestra Familia* through the use of intimidation, violence, threats of violence, assaults, and murder;" and "[k]eeping victims, potential victims, and witnesses in fear of *Nuestra Familia* and in fear of its members and associates through violence and threats of violence[.]" (*Id.*) Also, Count One alleges as one of the "means and methods of the conspiracy that the defendants . . . committed acts of violence, including . . . assault . . . ." (*Id.* ¶ 21.) The beating captured on video appears less violent than the acts indicted.

Further, H. Cervantes does not dispute that he is a member of *Nuestra Familia*, and argues that the evidence "does not add to the explanation of the enterprise," (*see* Docket No. 1067 at 3–4, 10), but he does not concede that he would use violence to preserve and protect the power and reputation of the organization. The existence of the organization and its framework (formal and informal) to carry out its objectives are material to the requisite elements of proof. *See e.g.*, Ninth Circuit Manual of Model Criminal Jury Instructions 8.161; *United States v Fernandez*, 388 F.3d 1199, 1220 (9th Cir. 2004).

In sum, the Court **DENIES** the motion to admit evidence of this incident **WITHOUT PREJUDICE**, and is willing to hear additional argument on the purposes for which it may be admitted and to review the government's additional evidence for analysis under Rules 404(b) and 403. The current proffer from the government does not provide sufficient evidence to support a finding that H. Cervantes acted to enforce a *Nuestra Familia* rule against the victim, and the government must provide any evidence for the Court to examine to conduct a proper analysis. *See*

*Lloyd*, 807 F.3d at 1158; *McElmurry*, 776 F.3d at 1067–70.  To the extent the government wishes to admit evidence of the event, it shall advise defense counsel and schedule a time to address the topic with the Court outside the presence of the jury.

### C.  **2008 FTC Florence Incident**

The government seeks a pretrial determination that evidence of a riot at a prison in Colorado involving approximately thirty *Norteños* and *Sureños* is admissible, citing "the same reasons the lockup beating would be admissible." (*See* Docket No. 1053 at 8.)  At the April 8, 2016 hearing, however, the government indicated that it has yet to develop a connection in evidence between the riot and H. Cervantes's alleged orchestration of it.  The Court previously ruled that it would analyze evidence of this incident under Rule 404(b). (*See* Docket No. 1007 at 15–16.)  In addition to opposing the government's motion, H. Cervantes seeks to exclude this evidence, and indicates that a report after an investigation of the event describes him "as having 'orchestrated' the *Norteño* participation in the event, though the report indicates that he 'did not assault any inmates during the disturbance.'" (Docket No. 838 at 2.)  A video exists of the event. (*Id.*)  The Court **DENIES** the government's motion to admit evidence of the incident

The evidence of the incident only shows that "[H.] Cervantes was in prison, and that an event took place in prison that was described as a riot in which several persons appear to have been badly injured—none by [H.] Cervantes." (Docket No. 1067 at 10.)  The Court is inclined to agree.  At this late stage of the litigation, the government's failure to develop evidence that H. Cervantes played a role in organizing the riot is not probative of his employment of the organization's framework nor of any actions which show how he would be promoting or maintaining his position therein.  Accordingly, the Court **DENIES** the government's motion to allow the evidence, given the lack of present probative value and Rule 403 considerations.  Given the Court's inherent authority to manage the trial, the request to allow the government to continue developing its evidence is **DENIED**.

///

///

D. **Assault Allegedly Involving Larez**

The government "anticipates the evidence will show" that Larez assaulted the girlfriend of a man who owed Larez money from a robbery that Larez and others had committed. (*See* Docket No. 1053 at 8.) According to the government, the incident is relevant to prove the RICO conspiracy charge against Larez, because it may tend to show actions to maintain his standing within *Nuestra Familia* and share proceeds of crimes committed on behalf of *Nuestra Familia*. (*See id.*) The Court understands Larez to seek to exclude this evidence as having limited probative value and constituting an uncharged act, in addition to being linked to late disclosure by the government. The Court is inclined to agree with the government that the incident is relevant to demonstrate Larez's mental state in relation to the charged conspiracy such that an impermissible propensity inference need not be implicated. Still, to undertake the four-pronged Rule 404(b) analysis, the Court lacks sufficient information about the evidence the government seeks to admit, e.g., more precisely when the incident occurred, details about the incident to consider whether the incident is similar to a charged offense, and evidence to determine whether there is sufficient evidence to support a finding that Larez committed the act. *See Lloyd*, 807 F.3d at 1157. Also for this reason, the Court is not in a position to conduct the requisite Rule 403 analysis. *See McElmurry*, 776 F.3d at 1067–70. Thus, the Court **DENIES** the motion to admit evidence of this incident **WITHOUT PREJUDICE**. The government must proffer more and produce any evidence for the Court to examine to conduct a proper Rule 404(b) and Rule 403 analysis. As with the August 2013 assault, to the extent the government wishes to admit evidence of the event, it shall advise defense counsel and schedule a time to address the topic with the Court outside the presence of the jury.

II. **GOVERNMENT'S MOTION FOR RECONSIDERATION REGARDING EXCLUSION OF EVIDENCE OF LAREZ'S U.S. MARSHAL'S HOLDING CELL INCIDENT**

The government moves for reconsideration of the Court's prior exclusion of evidence of Larez attacking another individual in the U.S. Marshal's holding cell. (*See* Docket No. 1053 at 8– 9.) Previously, the Court considered the U.S. Marshal's incident report, and granted Larez's motion to exclude evidence of this incident on the basis that the government failed to include on its

9

Witness List an individual who could testify regarding the incident. (*See* Docket No. 909 at 14–15.) At a February 2016 hearing, the Court denied the government's first request for leave to move for reconsideration, referencing a lack of an appearance of fairness with respect to a U.S. Marshal both testifying and providing security, and the lack of any proposed witness with personal knowledge of the events. The Court left open the possibility of testimony from the victim of the attack without deciding whether the government could sustain its burden on late discovery.

The Court **GRANTS** the government's motion for reconsideration, but **EXCLUDES** the evidence. "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.*

The Court acknowledges that the lack of an appearance of fairness is not a proper basis to exclude the evidence. (*See* Docket No. 1053 at 9–10.) However, the Court is satisfied that the government still has not shown a sufficient link between the proffered evidence and a material fact in dispute for the reasons set forth in Larez's motion, nor has it offered any witness with sufficient personal knowledge of the events to testify both competently and with adequate probative value. The Court considered the U.S. Marshal's report before first excluding the evidence and believes that the testimony of the same has little, if any, probative value. (*See* Docket No. 909 at 14.) The Court did so after Larez explained at a hearing that the report indicates that the victim sought to be placed in the same cell as Larez prior to the incident. (*See id.*)

### III. CONCLUSION

This order terminates Docket Nos. 845 and 1053.

**IT IS SO ORDERED**.

Date: April 22, 2016

_____
**YVONNE GONZÁLEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**