United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,**<br>v.<br>**HENRY CERVANTES**, *et al.*,<br>**Defendants.** | Case No.: 12-CR-0792 YGR<br>**TRIAL ORDER NO. 1 REGARDING MOTION TO CONTINUE TRIAL OR EXCLUDE EVIDENCE OF UNCHARGED ACTS, OBJECTIONS IN RELATION TO OPENING STATEMENTS, AND PRELIMINARY INSTRUCTION ON GANG MEMBERSHIP**<br><br>RE: DKT. NOS. 830, 958, 989 |

This Order addresses the following: one, Andrew Cervantes's ("A. Cervantes") motion to continue the trial or, in the alternative, to exclude evidence of uncharged acts relating to the stabbing of Tobias Vigil (Docket No. 989)[1] and the related portion of the government's motion to augment its witness and exhibit lists (Docket No. 1057); two, objections lodged to exhibits the government intends to use during its opening statement; and three, motions for a preliminary instruction on gang membership (Docket Nos. 830, 958).

I.   **BACKGROUND REGARDING THE VIGIL INCIDENT**

The Court sets out its understanding of the timeline of disclosures in this case regarding the Vigil incident.  In July 2015, the government disclosed prison correspondence with other discovery, including letters that purport to have A. Cervantes—through Jessica Aguirre—telling Leonard Vilches to "call Polvo . . . and let my prima know her boyfriend Demonito is a waste of time, that mom don't want him around the house.  Period." (*See* Docket No. 1016 at 1–2 (quotation marks and government opinions omitted); *see also* Docket No. 1106 at 2 (quoting from letter without opinions).) Other letters reference "Polva." (*See* Docket No. 1016 at 2.) Also, the letters are dated from December 2012 through May 2013. (*See id.*) A. Cervantes indicates that he was not aware of an opinion that "Polvo" or "Polva" was a name for Killinger. (*See* Docket No. 1062 at 2; Docket No. 1062-1 ¶¶ 2–4.) The government states that it produced discovery "that 'Powder' is . . .

---

[1] Henry Cervantes joins in A. Cervantes's motion and asserts his own argument regarding acts not involving him (Docket No. 1014).

Killinger's nickname . . . in the summer or fall of 2015, . . . before [A. Cervantes] was charged." (Docket No. 1106 at 2.) The government indicates, however, that it did not provide "the translation of 'polvo' as 'powder'" in an original proffer from a proposed gang expert, and did so in Docket No. 985, on March 8, 2016. (*Id.* at 3 n.1.)

In September 2015, the Third Superseding Indictment issued, indicting A. Cervantes in this case.

On October 2, 2015, the government filed an exhibit list, including the phrase, "Materials related to the March 2013 assault of Tobias Vigil," and informed the Court that it had completed discovery with the exception of a surveillance video. (*See* Docket No. 1016 at 2–3; Docket No. 740 at 3.) The government provided notice on October 19 of its intention of proving that A. Cervantes was responsible for the attack on Vigil. (*See* Docket No. 1016 at 3.) Three days later, the government met with counsel for A. Cervantes to discuss the government's evidence. (*See id.*) Counsel for A. Cervantes indicates that the government did not mention Killinger, "Polvo," and/or "Polva" during the discussion of the Vigil incident. (Docket No. 1062 at 3; Docket No. 1062-1 ¶ 6 ("The only theory of [A. Cervantes's] involvement in the alleged 'hit' . . . presented by counsel was that a cell mate of [A.] Cervantes named Michael Alvarez personally carried out the hit after he was transferred to USP McCreary, the prison at which . . . Vigil happened to be housed.").) A. Cervantes also moved to continue the trial on October 22, and stated: "Though witnesses to [A. Cervantes's] supposed acts of solicitation or murder may be on the government's list, defense counsel ha[d] no idea who, if any . . . , [we]re the witnesses to the [Vigil] incident." (Docket No. 773 at 11–12; *see also id.* at 12 ("Counsel is therefore still precluded from conducting any effective or meaningful investigation of this charged incident until counsel has reviewed all of the pertinent discovery.").)

On October 28, 2015, the Court denied A. Cervantes's motion for severance but granted a continuance from the January 2016 trial date. (*See* Docket No. 781.) The Court stated, in part: "Unlike a new action if the Court were to sever, the government has already identified trial exhibits and witnesses and is limited to those identifications in this action." (*Id.* at 10.)

On November 17, 2015 the Court ordered that the government file a "Revised Exhibit List No. 1" no later than January 29, 2016 that complied with the Court's prior order, and—after meeting and conferring regarding stipulations—a "Revised Exhibit List No. 2" with stipulations no later than February 19, 2016. (*See* Docket No. 797 at 2.) The Court also ordered that "[a]ny future stipulations to Exhibits shall result in the filing of an updated exhibit list, including the next consecutive numerical designation, e.g. 'No. 3.'" (*Id.*) The Court ordered the same regarding witness lists, with deadlines of November 30, 2015 and February 19, 2016. (*See id.* at 3.)

On December 23, 2015 the government disclosed an incident report written by Tony Garrow, a Bureau of Prisons officer, and dated March 20, 2013. (*See* Docket No. 989 at 3; Docket No. 989-1, Ex. D.) That report describes the Vigil incident and actions by Michael Alvarez, Michael Doerzbacher, Dakota Casperson, Leonard Vilches, and a "Confidential Human Source," without any mention of Killinger. (*See* Docket No. 989-1, Ex. D.) The government filed a revised exhibit list on January 29, 2016, including an Exhibit 337: "Materials related to the March 2013 assault of Tobias Vigil: 1. McCreary USP Incident Report, 3-17-2013 Vigil assault[;] 2. Photos[;] 3. Surveillance video." (Docket No. 910 at 24.) Exhibit 338 is "BOP Cell and Movement Records" for fifteen listed individuals, the eleventh of whom is "Ernest Killinger," with the full list reading: "1. Andrew Fred Cervantes; 2. Michael Alvarez; 3. Scott Gustin; 4. Sheldon Villanueva; 5. Noe Martinez-Perez; 6. Marcos Castaneda; 7. Larry Amaro; 8. Michael Deherrera; 9. Rico Garcia; 10. Robert Hanrahan; 11. Ernest Killinger; 12. Robert Mares; 13. Daniel Perez; 14. Raymond Avalos; 15. Leonard Vilches." (*Id.*)

On February 11, 2016, the government provided a redacted "Inmate Investigative Report" to A. Cervantes, which the Court understands to be Exhibit A of the most recent declaration from A. Cervantes's counsel. ("February Report," *see* Docket No. 1016 at 3; Docket No. 989-1 at 11 (listing "NF-024407 to NF-024470"); Docket No. 1100, Supplemental Declaration of K. Alexandra McClure ¶ 2; Docket No. 1100-1, Ex. A (NF-024445 to NF-024447).) Then, on February 12, the government requested a stipulation to add four Bureau of Prisons officers to its witness list. A. Cervantes quotes from that email request: "'Off. Hudson (Tobias Vigil stabbing) – eye witness, ID

3

some photos; Off. Baker (Tobias Vigil stabbing) – eye witness, ID some photos; Off. Broughton (Tobias Vigil stabbing) – eye witness, ID some photos; Off. Mayfield (Tobias Vigil stabbing) – eye witness, ID some photos.'" (Docket No. 989 at 4 n.3.) The government's response explains that the witnesses would "identify and authenticate [a] surveillance video, photographs, and assailants." (Docket No. 1016 at 4 (footnote omitted).)

On March 3, 2016, the government disclosed a *new copy* of the "Inmate Investigative Report" that still contained redactions, but this version included previously omitted paragraphs, references to Killinger, statements from Killinger, and a description of a phone call in which Vigil noted a confrontation with Killinger. ("March Version," *See* Docket No. 1100, McClure Dec. ¶ 3; Docket No. 1100-2, Ex. B (NF-024471 to NF-024475).)

On April 1, 2016, the government moved for permission to augment its witness and exhibit lists, including witnesses linked to the Vigil incident and listed under the heading, "Percipient Witnesses." (*See* Docket No. 1057 at 2–3.) That request does not include Bureau of Prisons officer names that appear in the March 2016 report. (*Compare* Docket No. 1057 at 2 (listing Hudson, Baker, Broughton, and Mayfield) *with* Docket No. 1100-2 at NF-024471 (listing Gaddis, Corriveau, Rokosky, and Holland).)

II. **DISCUSSION**

A. Cervantes seeks a continuance to protect his rights to a fair trial, due process, and effective assistance of counsel. (*See* Docket No. 989 at 6–7.) He argues that he lacks sufficient time "to interview the witnesses [to the Vigil incident], prepare for their testimony, secure further . . . records concerning the incident (such a[s] the cell movement records reports of other violent incidents regarding the involved inmates), prepare and serve writs *ad testificandum*, and secure funding for travel for the [Bureau of Prisons] witnesses, . . . ." (Docket No. 989 at 8.) In the alternative, he seeks to exclude the evidence, citing the concerns above, *Brady*, and Rule 16. (*See id.* at 9–10.)[2] Finally, he seeks further discovery regarding the incident, including the identity of

---

[2] A. Cervantes lodged a declaration under seal, to which the government objects. (*See* Docket No. 1016 at 5 n.4.) The Court issues this order without any need to refer to materials under seal.

4

the "confidential human source" identified in one report and the recorded phone call Vigil made. (*See* Docket No. 1062 at 6 n.1.) The government opposes a continuance, arguing that A. Cervantes has had sufficient time to investigate the Vigil incident. (*See* Docket No. 1016 at 4–5.) The government also opposes exclusion, arguing that the information about Killinger is consistent with the government's theory of A. Cervantes ordering the attack and not favorable to his defense. (*See id.* at 5; Docket No. 1106 at 1–2.)

At this time, the Court is not in a position to address favorability under *Brady*, but finds that the government indicted A. Cervantes late in this case, has provided information regarding the Vigil incident in a piecemeal fashion, has delayed in producing information specific to Killinger, and produced information with confusing redactions, raising concerns about A. Cervantes's ability to investigate the incident and prepare his defense. (*See* Docket No. 989 at 6–8.)

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . papers, documents, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial; . . . ." Fed. R. Crim. P. 16(a)(1)(E). "If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).[3]

"The prosecution must disclose materials that are *potentially* exculpatory or impeaching." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (emphasis in original). "Under *Brady*, the [government] violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S.

---

[3] The government does not argue that the March Version could fit under Rule 16(a)(2) or that it would constitute Jencks Act material, though the government argues that other material A. Cervantes addresses in his supplement constitutes Jencks Act material. (*See* Docket No. 1062 at 5–6; Docket No. 1016 at 6.)

Ct. 627, 630 (2012). "[W]hether evidence is favorable is a question of substance, not degree, and evidence that has any affirmative, evidentiary support for the defendant's case or any impeachment value is, by definition, favorable." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015). "Although the weight of the evidence bears on whether its suppression was prejudicial, evidence is favorable to a defendant even if its value is only minimal." *Id.*

In addressing the instant motion, the Court notes first that the government has provided no adequate justification for its failure to provide either the February Report or the March Version during the fall of 2015. Only the latter included the specific references to Killinger's view of Vigil's and the assailants' security on the prison yard. The government argues that the discovery it provided in February "includes short (single sentence) statements from the assailants, the victim, and Ernest Killinger (aka 'Polvo')." (Docket No. 1016 at 3.) Having reviewed the actual disclosures, the Court confirms that the report provided in February (Docket No. 1100-1, Exhibit A) does not mention Killinger. By contrast, the March Version states that the victim, Vigil, "indicated during [a phone] call that he confronted an inmate (believed to be . . . Killinger, . . .), because he was making 'bad calls (allowing inmates to remain in general population that had cooperated with the government).'" (Docket No. 1100-2, Ex. B at NF-024475.) It also discloses for the first time that investigators chose to interview Killinger, and that Killinger told an interviewer on March 17, 2013: "as far as the *Norteños* were concerned, Casperson and Doerzbacher could return to general population. When asked if Vigil was safe to return to general population, [Killinger] reiterated that Casperson and Doerzbacher could successfully reenter general population." (*Id.* at NF-024474.) Although the government argues that the new information about Killinger and his interactions with Vigil before the attack is consistent with its hypothesis about A. Cervantes ordering the attack, the new description of Killinger's involvement in the incident provides a basis for investigating whether "someone else . . . ordered the attack on . . . Vigil, not [A. Cervantes]," (Docket No. 989 at 10). (*See also* Docket No. 1062 at 4–5 (arguing that information about Vigil and Killinger "indicates that the . . . investigators at USP McCreary believed Killinger might have been responsible, as the leader of the *Norteños*, for ordering the

6

attack on Vigil").) A. Cervantes argues that Killinger could have played a role, different from hypotheses the government and one of its officer witnesses have articulated. (*See* Docket No. 1062 at 4–5.)

Next, the Court notes its concerns regarding the government's method of redaction. A comparison of the February Report and the March Version reveals that the government produced a document with redactions that shifted the original placement of paragraphs, distorting the redactions and hiding that another person was interviewed. Both the redaction and the formatting lead to an inference that the unredacted page only discussed interviews of Doerzbacher, Casperson, and Vigil, despite the unredacted version revealing an interview with Killinger. (*Compare* Docket No. 1100-2, Ex. B at NF-024474 *with* Docket No. 1100-1, Ex. A. at NF-024446.)

In light of these disclosure issues, A. Cervantes seeks a continuance, or alternatively, to exclude the evidence. The Court agrees that an appropriate remedial measure is warranted, but not as severe as those requested, especially given the anticipated length of this trial. Accordingly, the Court **ORDERS** the following:

First, the government's request to augment the witness list (Docket No. 1057) is **DENIED** to the extent it would add witnesses to testify to personal knowledge of the Vigil matter, as opposed to custodians of records.[4] The Court has told the government repeatedly that, in adjusting the trial schedule, the government would be held to the case that it was scheduled to try in January 2016. In light of this ruling, the government shall advise the Court no later than Monday, May 2, 2016 whether it intends to offer any evidence related to the Vigil matter.

Second, because this issue remains unresolved, the government shall not refer to the Vigil matter in opening statements. Given the unjustified manner and timing in which the government produced the March Version of the report, A. Cervantes understandably is not yet in a position to address the matter during opening statements.

---

[4] The Court does not view custodians of records in the same manner as percipient witnesses for purposes of augmenting the witness list. Still, as noted in this Order, the Court has insufficient information from the government as to who purportedly witnessed the Vigil stabbing and who would testify as a custodian.

Third, in the event the government advises the Court that it will pursue evidence of this matter, the U.S. Marshal shall transport and produce both Vigil and Killinger to the federal courthouse in Oakland forthwith to facilitate an interview by counsel for A. Cervantes.[5] In light of the uncertainty as to whether the government will seek to offer any evidence related to the Vigil matter and this potential order of production, the Court finds that no present need exists for a continuance for counsel to travel to where Vigil and Killinger are being housed. If necessary, the Court will address later any logistical issues that might arise upon production. A separate order in this regard will issue.

### III. CONCLUSION REGARDING VIGIL INCIDENT AND ORDER REGARDING OPENING STATEMENTS

Accordingly, as discussed above, the Court **ORDERS** as follows.

First, as for the pretrial motions, the Court: **DENIES** the government's motion to augment its witness list to the extent it would add witnesses to testify about their personal knowledge of the Vigil matter; **ORDERS** that the government not refer to the Vigil matter in opening statements; **ORDERS** that the government advise the Court regarding whether it intends to offer evidence relating to the Vigil matter; **DENIES** A. Cervantes's motion for a continuance or to exclude evidence of the Vigil matter; and **ORDERS** that, in the event the government advises the Court that it will seek to admit evidence of the Vigil matter, the U.S. Marshal transport and produce forthwith both Vigil and Ernest Killinger to the federal courthouse in Oakland to facilitate an interview by counsel for A. Cervantes.

As for the trial motions relative to opening statements, the parties are reminded that the sole purpose of opening statements is to outline for the jury the substance of what the party expects the evidence to show. *See Gladden v. Frazier*, 388 F.2d 777, 779 (9th Cir. 1968). The attorneys for the parties are warned that theatrics which constitute argument will not be tolerated. The Court has

---

[5] The Court considers it premature to address whether to order production of Alvarez, Casperson, and Doerzbacher, given the first order above, that the newly disclosed report at issue focuses on previously undisclosed information about Killinger and Vigil, and that each individual has Fifth Amendment rights. (*See* Docket No. 989 at 7–8.) A. Cervantes must make a proffer in open court regarding these three individuals.

instituted numerous measures to ensure a fair trial for all parties. For example, as the parties are aware, the Court has declined to read the Third Superseding Indictment (3SI) and instead required a joint opening recitation of the charges. Should defense counsel engage in inappropriate theatrics, such as tearing up the 3SI during openings, the Court will read the 3SI to the jury so that it is aware of the contents therein. Such theatrics are unambiguously inappropriate. All counsel must always comport themselves with the Rules of Professional Conduct and the orders of this Court, or be subject to sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).

The defense objections to the government's Opening Exhibits are **OVERRULED** except for those related to the Vigil stabbing. As to those, the objections are **SUSTAINED** in accordance with this Order.

### IV.   INSTRUCTION REGARDING GANG MEMBERSHIP

With respect to the request for a preliminary instruction on gang membership, the Court will pre-instruct with the same instruction used during *United States v. Flores, et al*, 12-cr-00119-SI (N.D. Cal.). Accordingly, the motions for a preliminary instruction on gang membership are **GRANTED IN PART** and **DENIED IN PART**.

### V.   CONDUCT DURING TRIAL

Counsel are reminded that speaking objections are not allowed. During another attorney's examination, commentary by opposing counsel is not allowed, only legal objections. Again, theatrics are not appropriate and will be subject to sanctions.

The Court will address separately A. Cervantes's supplement (Docket No. 1003) regarding acts other than those relating to Vigil.

This order terminates Docket Nos. 830, 958, and 989.

**IT IS SO ORDERED**.

Date: April 29, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**