**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>　　　　Plaintiff,<br>　　v.<br>**HENRY CERVANTES**, *et al.*,<br>　　　　Defendants. | Case No.: 12-CR-0792 YGR<br><br>**TRIAL ORDER NO. 9 REGARDING ALBERTO LAREZ'S MOTION FOR DECLARATION OF MISTRIAL OR ALTERNATIVELY MOTION TO DISMISS**<br><br>**RE: DKT. NO. 1288** |

Currently before the Court is defendant Alberto Larez's motion for declaration of mistrial or alternatively motion to dismiss Counts One, Two,[1] Eighteen, Nineteen, and Twenty. (Dkt. No. 1288, "Mtn.")[2] Larez argues that he is entitled to relief because the government presented to the grand jury a theory of Martin Chacon's murder that was unsupported by the physical evidence; a theory that is now also contradicted by the confession of Ruben Cruz to state authorities. The government opposes, arguing that its evolving theory of Larez's role in the murder does not entitle Larez to any relief. The Court having carefully considered the papers submitted, the record in this case, and oral argument held June 14, 2016 and June 30, 2016, hereby **DENIES** Larez's motion.

**I.    BACKGROUND**

In January 2014, the government presented evidence related to the murder of Martin Chacon to the grand jury through the testimony of FBI Special Agent Russell Nimmo. The testimony of Special Agent Nimmo was based on his review of forensic analyses, physical

---

[1] Larez did not include Count Two in his opening motion but asked the Court to consider it in his reply. (*Cf.* Dkt. Nos. 1288, 1308.)

[2] All defendants join in Larez's motion to the extent it applies to them. (Dkt. Nos. 1291, H. Cervantes; 1292, J. Cervantes; 1293, A. Cervantes).

evidence, and the statements of cooperating witness Jesus a/k/a Jesse Cervantes, who claims to have been present when Chacon was killed. Founded on the statements of Jesse Cervantes, Special Agent Nimmo testified that Larez was also present that day and had "plans" to kill Chacon. Special Agent Nimmo relied on his review of the forensic evidence to opine that "the crime scene photos indicates [sic] that it's very likely" Larez shot Chacon with a .25 caliber gun from the passenger seat inside of Chacon's car while Chacon was in the driver's seat. He further testified it was "very likely" that Chacon was dead when Larez exited the car. Although Jesse Cervantes did not hear a gunshot while Larez was inside the car with Chacon, Special Agent Nimmo testified that was "not unusual" given the small caliber firearm with which Larez allegedly shot Chacon. Ultimately, Special Agent Nimmo testified it was his opinion that Larez "committed this murder, or at the very least aided and abetted this murder in order to maintain or increase his position in the *Nuestra Familia*." Special Agent Nimmo further opined that Larez directed another individual to shoot Chacon after he was already dead to insure that the other individual would not cooperate with the government against Larez.

Based thereon, the grand jury returned a true bill charging Larez with acting "together with others known and unknown" to murder Chacon and use of a firearm in connection with the murder of Chacon, with 18 U.S.C. section 2 – the aiding and abetting statute – expressly cited as to each count. (Dkt. No. 355 ¶¶ 57-60.) That same language appears in Counts Eighteen, Nineteen, and Twenty of the third superseding indictment. (Dkt. No. 724, "3SI" ¶¶ 55-58.)

In June and July 2014, Ruben Cruz provided statements to the Santa Clara District Attorney's Office that Larez shot Chacon from the back seat of Chacon's car only after another individual shot Chacon from outside the car. While this new eyewitness testimony was inconsistent with Special Agent Nimmo's testimony to the grand jury as to Larez's placement in the car and the order of the shots, the government did not present it to the grand jury then or when the 3SI was presented in September 2015.

The government represents that, as trial approached, it had reservations regarding Cruz's version of events. (6/14/2016 Transcript at 5210:6-21.) Thus, the government's opening statement

did not rely on Cruz's statement that Larez shot Chacon. (*Id.* at 5210:22-23.) The government did not tell the jury that the evidence would show Larez was one of the shooters of Chacon. (*Id.*)

On June 9, 2016, local law enforcement officers re-interviewed Cruz regarding the events that culminated in the death of Chacon at the request of prosecutors in this case. During that meeting, Cruz admitted for the first time that he shot Chacon, and recanted his earlier statement that Larez pulled the trigger on the .25 caliber shot. The government promptly notified defense counsel of Cruz's statement.

The instant motion for mistrial, or in the alternative for dismissal of certain counts, followed. Larez takes the position that Cruz's confession shows prejudice to him in two ways. First, the theory presented to the grand jury – that he shot Chacon and then directed another individual to shoot Chacon as cover from prosecution – was false, highly prejudicial, and likely tainted the consideration of all charges against him. Second, until revelation of Cruz's confession, Larez tailored his trial strategy to the government's theory that he pulled the trigger on the fatal .25 caliber shot, depriving him of the right to a full defense.

## II. MOTION FOR MISTRIAL

The decision whether to grant a mistrial is "reserved to the 'broad discretion' of the trial judge," and is in every case highly fact-dependent. *Renico v. Lett*, 559 U.S. 766, 774 (2010) (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)). The Supreme Court has long held that, "[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared," regardless of whether the defense moves for mistrial. *Gori v. United States*, 367 U.S. 364, 368 (1961). "In deciding whether to declare a mistrial, the district court should take all relevant circumstances into account rather than apply an abstract formula." *United States v. Sommerstedt*, 752 F.2d 1494, 1498 (9th Cir. 1985).

Larez contends that a mistrial is warranted on two grounds, namely that: (1) he has been deprived of his Sixth Amendment right to effective counsel; and (2) the government's indictment

3

on one set of facts and prosecution at trial on another set of facts amounts to a constructive amendment, or a variance, of the indictment. The Court considers these arguments in turn:

First, with respect to his Sixth Amendment argument, Larez contends he was forced to switch his defense strategy mid-way through trial, denying him effective representation of counsel. *See Sheppard v. Rees*, 909 F.2d 1234, 1237-38 (9th Cir. 1990). In Larez's view, the "very specific" narrative of the Chacon murder presented to the grand jury encompassed not only the murder itself but also Larez's alleged role in the *Nuestra Familia* and his relationship to other members of the *Nuestra Familia.* Irrespective of the government's opening statement, government witness Joseph O'Hara testified that the fatal shot to Chacon came from a .25 caliber gun. (6/9/2016 Transcript at 4882:13-17.) Larez's cross-examination of O'Hara was premised on the notion that the government was pursuing the same theory it presented to the grand jury. Said otherwise, counsel for Larez crafted his cross-examination of O'Hara to dismantle the government's theory before the grand jury that Larez fired the "fatal" shot from the .25 caliber gun. Because that cross-examination was complete before he learned that Cruz admitted to firing the shot from the .25 caliber gun, Larez argues he has been deprived of his Sixth Amendment right to have a satisfactory opportunity to respond to the "nature and cause of the accusation." *Sheppard*, 909 F.2d at 1236.

*Sheppard* is readily distinguishable. In *Sheppard*, petitioner sought habeas relief from a conviction by California, on grounds that he was deprived of the right to prepare a proper defense to a felony-murder charge. *Id*. at 1235. Specifically, the State proceeded for the first after the close of evidence and immediately before closing arguments, on a theory of felony murder. On reconsideration before the Ninth Circuit, the State even conceded that there was "a pattern of government conduct affirmatively misle[ading] the defendant, denying him an effective opportunity to prepare a defense." *Id*. at 1237 (emphasis removed). The Ninth Circuit agreed, finding a violation of the petitioner's Sixth Amendment rights. *Id*. Here, by contrast, Larez was put on notice by the 3SI (and, previously, the second superseding indictment) that the government intended to pursue, at a minimum, a theory of aiding and abetting against Larez for the murder of Chacon. Larez was not denied his right to respond to the charges against him.

Next, with respect to Larez's constructive amendment and variance arguments, he contends the government's current aiding and abetting theory of liability is in effect an alteration of the charging terms of the indictment. "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)). A variance occurs "when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* A constructive amendment always mandates reversal by the appellate court, while reversal of a conviction based on a variance is appropriate "only if [the variance] prejudices a defendant's substantial rights." *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014). Larez acknowledges that the language of the indictment itself explicitly supports the aiding and abetting theory now pursued by the government, but argues that the new theory is an alteration because the grand jury based its findings on the facts presented through Special Agent Nimmo. As such, Larez argues that the charging terms and factual allegations have changed.

Larez primarily relies on *Ward* to support his argument that a constructive amendment has occurred. The Court finds that *Ward* is distinguishable on these facts. In *Ward*, the operative indictment charged the defendant with, *inter alia*, aggravated identity theft of two victims specified in the indictment by their initials. *Ward*, 747 F.3d at 1186-87. The government presented proof at trial that included various victims, including but not limited to the two identified in the indictment. *Id.* at 1187-88. The district court's instruction to the jury did not specify that to find the defendant guilty on the aggravated identity theft charge, it must do so with respect to the two victims named in the indictment only. *Id.* at 1188. On appeal, the Ninth Circuit concluded that the district court's failure to so specify amounted to a constructive amendment of the indictment, because it was possible the jury convicted based on evidence of the other victims not named in the indictment. *Id.* at 1191-92. Here, however, there is no risk that the jury will convict Larez on conduct not charged.

The charging document – the 3SI – specifically includes a theory that Larez aided and abetted in the murder of Chacon.   The Court concludes there has been no amendment of the 3SI.[3]

As to variance, the relevant inquiry is whether there is a "divergence between the allegations set forth in the indictment and the proof offered at trial." *Ward*, 747 F.3d at 1189. Larez concedes that the allegations in the 3SI do not differ on their face from the facts offered at trial, instead arguing there has been the "functional equivalent of a variance" in this case given his view that the allegations in the 3SI are "very vague."  The Court cannot agree.  Variances are prohibited, in part, to protect a defendant's due process right "to know what he is accused of doing in violation of the criminal law, so that he can prepare his defense, and be protected against another prosecution for the same offense." *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997).  For example, an impermissible variance was found where the indictment alleged that a crime occurred "on or between June 1992 and July 1992," but the evidence at trial supported, at most, the same crime committed in 1994.  *Id.* at 989-92.  Because a reasonable juror could not have concluded the charged crime occurred in June or July 1992, the Ninth Circuit concluded that "there was a fatal variance between what was charged and what was proved." *Id.* at 990-91.  Here, by contrast, the 3SI alleges that Larez "together with others known and unknown" murdered Chacon, including an explicit reference to the lesser included charge for aiding and abetting, 18 U.S.C. section 2.  The government's proof at trial has thus been consistent with the allegations in the 3SI, and as such, there has been no violation of Larez's right to prepare a defense.  The Court concludes no prejudicial variance has occurred in this case. *See Ward*, 747 F.3d at 1190.

Accordingly, Larez's motion for mistrial is **DENIED**.

### III.     MOTION TO DISMISS

In the alternative, Larez moves to dismiss the counts related to the murder of Chacon based on the prosecution's conduct in presenting a false theory to the grand jury that Larez shot Chacon. A court may dismiss an indictment as a result of prosecutorial conduct in two circumstances, either: (A) "as an exercise of the court's inherent supervisory power," or (B) "to protect a defendant's

---

[3] The Court will separately address any related issues affecting jury instructions.

constitutional due process rights." *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir. 1986). Larez claims that both circumstances are present here to warrant dismissal of the relevant counts. The Court now considers these two bases for dismissal.

### A. Supervisory Power

Under the supervisory power analysis, a district court must first be convinced that "there exist[s] a clear basis in fact and law for the court to exercise supervisory power." *De Rosa*, 783 F.2d at 1406. "[E]ven if the prosecutor's actions constituted misconduct, [a defendant] must demonstrate a reasonable inference of bias on the part of the grand jury resulting from those actions." *Id*. Only if this threshold question is answered in the affirmative should the district court go on to "determine whether dismissal of an indictment is appropriate by considering the egregiousness of the prosecutor's misconduct and the availability of less drastic sanctions." *Id*. "The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked. Courts are rightly reluctant to encroach on the constitutionally-based independence of the prosecutor and grand jury. The Court 'will not interfere with the Attorney General's prosecutorial discretion unless it is abused to such an extent as to be arbitrary and capricious and violative of due process.'" *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979) (quoting *United States v. Welch*, 572 F.2d 1359, 1360 (9th Cir. 1978)). "The facts of each case determine when Government conduct has placed in jeopardy the integrity of the criminal justice system." *Id*. at 884.

Here, Larez asserts that the prosecution acting improperly in two ways during the grand jury presentation: first, by failing to present the grand jury with a statement Jesse Cervantes made that Chacon was alive when Larez exited his car; and second, by allowing Special Agent Nimmo to testify that it was "very likely" that Larez shot Chacon despite the inconsistent physical evidence. Larez additionally asserts that the government should have supplemented or amended its presentation to the grand jury when it presented the 3SI to the grand jury in September 2015. Larez contends that this prosecutorial misconduct collectively leaves no doubt that false testimony presented to the grand jury substantially influenced its decision to indict. Without the false

Case 4:12-cr-00792-YGR   Document 1362   Filed 07/05/16   Page 8 of 9

testimony, Larez contends the Court cannot know whether there was any credible evidence to support the aiding and abetting charges related to the Chacon murder.

The government denies that any misconduct occurred. The Court agrees. Dismissal is not warranted based on conflicting exculpatory evidence because "prosecutors simply have no duty to present exculpatory evidence to grand juries." *United States v. Isgro*, 974 F.2d 1091, 1092 (9th Cir. 1992). Nor is there any reason to find misconduct in the presentation of Special Agent Nimmo's theory of the murder. Finally, the government had no basis on which to supplement the presentation in September 2015, as Cruz did not confess until June 2016. More importantly, Larez has not shown any prejudice. *Id*. at 1094 (before a district court may invoke its supervisory powers "a court must first find that the defendant is actually prejudiced by the misconduct"). Jesse Cervantes has always maintained that Larez planned and ordered the murder of Chacon. This alone provided the grand jury with sufficient probable cause to return a true bill on the basis that Larez conspired to murder Chacon and ordered his murder. The Court concludes that Larez's claim of misconduct, and resulting prejudice, lacks merit.

### B. Constitutional Violation

Under the constitutional analysis, "dismissal is warranted only if the misconduct has significantly infringed upon the grand jury's ability to exercise its independent judgment." *De Rosa*, 783 F.2d at 1405. The constitutional inquiry "focuses on the impact of the prosecutor's misconduct on the grand jury's impartiality, not on the degree of the prosecutor's culpability." *Id*. In this Circuit, "an indictment may be dismissed only in flagrant cases of prosecutorial misconduct." *Id*. Thus, the Ninth Circuit found no constitutional violation even where the prosecutor in front of the grand jury expressed his personal views about the evidence and allowed testimony that included irrelevant and potentially prejudicial statements of a patriotic nature. *See United States v. Sears, Roebuck & Co., Inc.*, 719 F.2d 1386 (9th Cir. 1983). Finding the prosecutor's conduct did not "undermine the grand jury's ability adequately to perform its constitutional function," the court reversed the district court's dismissal of the indictment. *Id*. at 1393-94.

8

For the reasons discussed above, the Court concludes no prosecutorial misconduct occurred here. Even if there were evidence of prosecutorial misconduct, Larez has not presented any basis upon which the Court can conclude that the grand jury was deprived of its "ability to exercise its independent judgment" as a result thereof. *De Rosa*, 783 F.2d at 1405. Therefore, the Court concludes that Larez's constitutional rights have not been infringed.

***

Based upon the foregoing, Larez has not shown prosecutorial conduct that would warrant dismissal of the relevant counts in the 3SI. The motion to dismiss is **DENIED.**

### IV. CONCLUSION

For the reasons set forth above Larez's motion (Dkt. No. 1288) is **DENIED**. The joinders by all other defendants (Dkt. Nos. 1291, 1292, 1293) are similarly **DENIED**.

This Order terminates Docket Numbers 1288, 1291, 1292, and 1293.

**IT IS SO ORDERED**.

Date: July 5, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**